# EXHIBIT 1

2024 WL 16828
Only the Westlaw citation is currently available.
United States Court of Appeals, Ninth Circuit.

Jane DOE, on behalf of herself and all
others similarly situated, Plaintiff-Appellant,

v.

WEBGROUP CZECH REPUBLIC, A.S.; WGCZ
Holding, A.S.; WGCZ Limited, s.r.o.; NKL Associates,
s.r.o.; Traffic F, s.r.o.; GTFlix TV, s.r.o.; FTCP,
s.r.o.; VS Media, Inc.; HC Media, s.r.o.; HC
Multimedia LLC; FBP Media, s.r.o.; Stephane Michael
Pacaud; Deborah Malorie Pacaud; Serverstack,
Inc.; Digital Ocean Holdings, Inc.; Digital Ocean,
LLC, fka Digital Ocean, Inc., Defendants-Appellees.

No. 22-55315
|
Argued and Submitted December
9, 2022 Pasadena, California
|
Filed January 2, 2024

**Synopsis**
**Background:** Childhood sex trafficking victim, who had
videos and images of her sexual abuse sold and/or distributed
on pornography websites, brought putative class action
against Czech website operators and other foreign-based
defendants alleging violations of federal sex trafficking
and child pornography laws and a violation of California's
prohibition on unauthorized distribution of private sexually
explicit images. The United States District Court for the
Central District of California, Virginia A. Phillips, J., 2022
WL 982248, dismissed for lack of personal jurisdiction
and denied reconsideration, 2022 WL 982245. Victim
appealed.

**Holdings:** The Court of Appeals, Collins, Circuit Judge, held
that:

[1] operators purposefully directed websites at United States,
as required by due process for specific personal jurisdiction;

[2] victim's claims arose out of or related to operators' forum-
related activities; and

[3] exercise of specific jurisdiction would be reasonable.

Reversed in part, vacated in part, and remanded.

Lee, Circuit Judge, filed concurring opinion.

**Procedural Posture(s):** On Appeal; Motion to Dismiss for
Lack of Personal Jurisdiction.

West Headnotes (20)

**[1]** **Federal Courts** 👉 Premature appeal
Premature nature of notice of appeal filed
after district court's non-final order dismissing
action against foreign-based defendants for lack
of personal jurisdiction, but granting leave to
amend complaint, was cured by the court's
subsequent formal dismissal order and final
judgment after plaintiff failed to file amended
complaint, in action seeking civil redress for
violations of federal sex trafficking and child
pornography laws. 🚩28 U.S.C.A. § 1291; Fed.
R. Civ. P. 4(k)(2).

**[2]** **Constitutional Law** 👉 Non-residents in
general
**Federal Courts** 👉 Actions by or Against
Nonresidents; "Long-Arm" Jurisdiction
**Federal Courts** 👉 Personal jurisdiction
A district court may exercise personal
jurisdiction over a nonresident defendant if such
jurisdiction is authorized by applicable law and
the exercise of that jurisdiction does not violate
federal due process. U.S. Const. Amend. 5.

**[3]** **Constitutional Law** 👉 Non-residents in
general
A district court's exercise of personal jurisdiction
over a non-U.S. defendant comports with due
process if that defendant has certain minimum
contacts with the relevant forum such that
the maintenance of the suit does not offend

traditional notions of fair play and substantial justice. U.S. Const. Amend. 5; Fed. R. Civ. P. 4(k)(2).

**[4]  Constitutional Law** 🔑 Non-residents in general

**Federal Courts** 🔑 Actions by or Against Nonresidents; "Long-Arm" Jurisdiction

In the context of the federal long-arm statute, in which no individual state has personal jurisdiction over the nonresident defendant and the claim is based on federal law, the relevant forum for assessing whether due process minimum contacts exist is the United States as a whole. U.S. Const. Amend. 5; Fed. R. Civ. P. 4(k)(2).

**[5]  Federal Courts** 🔑 Unrelated contacts and activities; general jurisdiction

To support a claim of general personal jurisdiction, a plaintiff must show that the nonresident defendant's contacts with the forum are so continuous and systematic as to render them essentially at home in the forum state.

**[6]  Constitutional Law** 🔑 Non-residents in general

Specific personal jurisdiction may be exercised over a non-U.S. defendant consistent with due process if: (1) the defendant performed some act or consummated some transaction by which it purposefully directed its activities toward the United States or purposefully availed itself of the privilege of conducting business in the United States; (2) the claim is one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable. U.S. Const. Amend. 5; Fed. R. Civ. P. 4(k)(2).

**[7]  Constitutional Law** 🔑 Due process

**Constitutional Law** 🔑 Non-residents in general

The plaintiff bears the burden of satisfying the first two prongs of test for whether specific personal jurisdiction may be exercised over a non-U.S. defendant consistent with due process, namely, purposeful availment and relatedness, and if the plaintiff establishes that those two prongs are satisfied, the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable. U.S. Const. Amend. 5; Fed. R. Civ. P. 4(k)(2).

**[8]  Federal Courts** 🔑 Personal jurisdiction

Court of Appeals reviews a dismissal for lack of personal jurisdiction de novo.

**[9]  Constitutional Law** 🔑 Non-residents in general

When analyzing the purposeful availment or purposeful direction prong of test for whether specific personal jurisdiction may be exercised over a nonresident defendant consistent with due process, a court generally focuses its inquiry on purposeful availment when the underlying claims sound in contract and on purposeful direction when they arise from alleged tortious conduct committed outside the forum. U.S. Const. Amend. 5.

**[10]  Constitutional Law** 🔑 Services and service providers

**Federal Courts** 🔑 Particular Entities, Contexts, and Causes of Action

Putative class action of childhood sex trafficking victim against Czech operators of pornography websites alleging violations of federal sex trafficking and child pornography laws and seeking redress for harms caused by the publication of videos of her sexual abuse sounded in tort, and therefore the court would focus on purposeful direction rather than purposeful availment in analyzing first prong of test for whether specific personal jurisdiction could be exercised over operators consistent

with due process. U.S. Const. Amend. 5; 🚩18
U.S.C.A. §§ 1591(a)(2), 1595(a), 🚩2252A(f),
🚩2255(a), 🚩2260(b); Fed. R. Civ. P. 4(k)(2).

**[11]   Constitutional Law** 🔑 Non-residents in
general

Effects test used in tort cases to determine
whether a nonresident defendant purposefully
directed its activities at the forum, as required
for the exercise of specific personal jurisdiction
consistent with due process, requires the
defendant to have: (1) committed an intentional
act, (2) expressly aimed at the forum state, (3)
causing harm that the defendant knows is likely
to be suffered in the forum state. U.S. Const.
Amend. 5.

**[12]   Constitutional Law** 🔑 Services and service
providers

**Federal Courts** 🔑 Particular Entities,
Contexts, and Causes of Action

Czech entities' operation of their pornography
websites was expressly aimed at the United
States, as required, under purposeful direction
analysis, to support specific personal jurisdiction
over entities consistent with due process
in putative class action by childhood sex
trafficking victim alleging violations of federal
sex trafficking and child pornography laws
arising from videos and images of victim's sexual
abuse being sold and/or distributed on websites,
where entities actively targeted the United States
market by contracting with U.S.-based content
delivery network (CDN) service providers to
ensure that users viewing videos would have
an uninterrupted experience, websites earned
considerable revenue from the United States
market, and entities registered trademarks in the
United States. U.S. Const. Amend. 5; 🚩18
U.S.C.A. §§ 1591(a)(2), 1595(a), 🚩2252A(f),
🚩2255(a), 🚩2260(b); Fed. R. Civ. P. 4(k)(2).

**[13]   Constitutional Law** 🔑 Services and service
providers

Although a nonresident defendant's mere passive
operation of a website is insufficient to
demonstrate express aiming at forum as a
component of the "purposeful direction" prong
of the due process test for exercising specific
personal jurisdiction, the defendant's operating
even a passive website in conjunction with
conduct directly targeting the forum is sufficient.
U.S. Const. Amend. 5.

**[14]   Constitutional Law** 🔑 Services and service
providers

**Federal Courts** 🔑 Particular Entities,
Contexts, and Causes of Action

Czech entities' operation of their pornography
websites caused harm that the entities knew was
likely to be suffered in the United States, as
required, under purposeful direction analysis,
to support specific personal jurisdiction over
entities consistent with due process in putative
class action by childhood sex trafficking victim
alleging violations of federal sex trafficking
and child pornography laws arising from videos
and images of victim's sexual abuse being sold
and/or distributed on websites, where entities
targeted the United States market by using U.S.-
based content delivery network (CDN) service
providers, at least one video of victim attracted
more than 160,000 views worldwide before it
was taken down in response to a cease-and-
desist letter, and between 12% and 19% of
websites' users were in the United States. U.S.
Const. Amend. 5; 🚩18 U.S.C.A. §§ 1591(a)(2),
1595(a), 🚩2252A(f), 🚩2255(a), 🚩2260(b);
Fed. R. Civ. P. 4(k)(2).

**[15]   Constitutional Law** 🔑 Non-residents in
general

A nonresident defendant causes harm in a
particular forum, as a component of the
"purposeful direction" prong of test for whether
specific personal jurisdiction may be exercised

**[16]    Federal Courts** 🔑 Related contacts and activities; specific jurisdiction

When a nonresident defendant's tortious actions cause harm in multiple fora, specific personal jurisdiction is proper in any forum where a sufficient amount of harm occurs, even if that amounts to only a small percentage of the overall harm caused.

**[17]    Constitutional Law** 🔑 Services and service providers

**Federal Courts** 🔑 Particular Entities, Contexts, and Causes of Action

Childhood sex trafficking victim's claims arose out of or related to forum-related activities of Czech operators of pornography websites, thus satisfying second prong of test for whether specific personal jurisdiction could be exercised over operators consistent with due process, in putative class action alleging violations of federal sex trafficking and child pornography laws arising from videos and images of victim's sexual abuse being sold and/or distributed on websites, where the relevant contacts with the forum consisted of directing a content-sharing website at the United States market. U.S. Const. Amend. 5; 🚩 18 U.S.C.A. §§ 1591(a)(2), 1595(a), 🚩 2252A(f), 🚩 2255(a), 🚩 2260(b); Fed. R. Civ. P. 4(k)(2).

**[18]    Constitutional Law** 🔑 Services and service providers

**Federal Courts** 🔑 Particular Entities, Contexts, and Causes of Action

The exercise of specific personal jurisdiction over Czech operators of pornography websites would be reasonable, thus satisfying due process, in putative class action of childhood sex trafficking victim alleging violations of federal sex trafficking and child pornography laws

arising from videos and images of victim's sexual abuse being sold and/or distributed on websites, where operators purposely directed websites at the United States market using U.S.-based content delivery networks (CDN) service providers, operators garnered substantial and financially valuable web traffic in the United States, a United States forum was important to victim's interest in convenient and effective relief, a United States forum had a very powerful interest in adjudicating the dispute, and the most efficient judicial resolution of controversy would be in a United States forum. U.S. Const. Amend. 5; 🚩 18 U.S.C.A. §§ 1591(a)(2), 1595(a), 🚩 2252A(f), 🚩 2255(a), 🚩 2260(b); Fed. R. Civ. P. 4(k)(2).

**[19]    Constitutional Law** 🔑 Non-residents in general

Test for evaluating the reasonableness under the due process clause of the exercise of specific personal jurisdiction over a nonresident defendant balances: (1) extent of the defendant's purposeful interjection into the forum state's affairs; (2) burden on the defendant of defending in the forum; (3) extent of conflict with the sovereignty of the defendant's state; (4) forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) importance of forum to the plaintiff's interest in convenient and effective relief; and (7) existence of an alternative forum. U.S. Const. Amend. 5.

**[20]    Constitutional Law** 🔑 Non-residents in general

The "purposeful interjection" factor of test for evaluating the reasonableness of the exercise of specific personal jurisdiction over a nonresident defendant under the due process clause is analogous to the "purposeful direction" prong of the due process inquiry. U.S. Const. Amend. 5.

Doe v. WebGroup Czech Republic, A.S., --- F.4th ---- (2024)
2024 WL 16828

Appeal from the United States District Court for the Central District of California, Virginia A. Phillips, District Judge, Presiding, D.C. No. 2:21-cv-02428-VAP-SK

**Attorneys and Law Firms**

Mark B. Schoeller (argued), Kevin D. Kent, and Vanessa L. Huber, Clark Hill PLC, Philadelphia, Pennsylvania; Abbas Kazerounian and Mona Amini, Kazerouni Law Group APC, Costa Mesa, California; Benjamin W. Bull, Peter A. Gentala, and Dani B. Pinter, National Center on Sexual Exploitation, Washington, D.C.; Kimberly L. Adams, Levin Papantonio Rafferty Proctor Buchanan O'Brien Barr & Mougey PA, Pensacola, Florida; for Plaintiff-Appellant.

Derek Shaffer (argued), Quinn Emanuel Urquhart & Sullivan LLP, Washington, D.C.; Michael T. Zeller, Michael E. Williams, Diane Cafferata, and Dylan C. Bonfigli, Quinn Emanuel Urquhart & Sullivan LLP, Los Angeles, California; Victor Hao-Jan Jih, Wilson Sonsini Goodrich & Rosati Professional Corporation, Los Angeles, California; Brian M. Willen, Wilson Sonsini Goodrich & Rosati Professional Corporation, New York, New York; for Defendants-Appellees.

Before: Milan D. Smith, Jr., Daniel P. Collins, and Kenneth K. Lee, Circuit Judges.

Opinion by Judge Collins;

Concurrence by Judge Lee

**OPINION**

COLLINS, Circuit Judge:

**\*2** Plaintiff-Appellant, proceeding pseudonymously as "Jane Doe" (hereinafter, "Plaintiff"), brought this putative class action against numerous parties who allegedly violated federal and California law by participating in, or benefiting from, the distribution of videos on the internet that depicted the sexual abuse of Plaintiff and of other victims of childhood sex-trafficking. The district court dismissed all of the claims on various grounds, and on appeal Plaintiff challenges only the district court's dismissal, for lack of personal jurisdiction, of the claims asserted against 11 foreign-based defendants. We reverse in part, vacate in part, and remand.

**I**

**A**

Because the district court did not hold an evidentiary hearing on the question of personal jurisdiction and instead held that Plaintiff had failed to establish a prima facie case for personal jurisdiction against the relevant defendants, the applicable standard of review requires us to take the "uncontroverted allegations" in Plaintiff's complaint as true and to resolve any "conflicts between the facts contained in the parties' affidavits" in Plaintiff's favor. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002). Applying those standards, we take the following facts as true.

Doe is a California resident and U.S. citizen who, at the age of 14, was a victim of sex trafficking in the United States. Specifically, while Plaintiff "was still a minor, a sex trafficker forced [Plaintiff] to participate in the creation of videos of adults raping her." At least four such videos were uploaded to the pornography websites XVideos.com and Xnxx.com, which are "video hosting website[s], where registered users can upload adult videos" and visitors "can view those videos for free without creating an account." While they were hosted on these websites, the videos of Plaintiff's abuse were viewed, shared, and downloaded multiple times, with one video being viewed more than 160,000 times. Plaintiff claims that, beginning in 2017, she contacted these two websites several times to ask them to take down these videos, but she received no response until her attorney sent a cease-and-desist letter in the fall of 2020.[1] After the cease-and-desist letter was received, the videos were taken down.

Although both XVideos.com and Xnxx.com use English as their default language, the two websites are respectively operated by two related Czech entities, Defendants-Appellees WebGroup Czech Republic, a.s. ("WGCZ") and NKL Associates, s.r.o. ("NKL"). Both entities have their principal place of business in Prague, Czech Republic, and neither entity has offices, conducts business operations, or is registered to do business in the United States. As explained in a declaration provided by the person who serves as "administrative director" for both WGCZ and NKL, Xnxx.com "is similar to xvideos.com, and it displays basically the same video content as xvideos.com but through a different interface." XVideos.com and Xnxx.com are both hosted on servers located in the Netherlands that

are operated by ServerStack, Inc. ("ServerStack"), a U.S.-based company that is wholly owned and operated by its ultimate parent company, U.S.-based DigitalOcean Holdings, Inc. ("DigitalOcean"). WGCZ and NKL also contract with ServerStack to analyze "new [video] uploads," including for purposes of "flagging[ ] and deleting" child sexual abuse material.

In addition, WGCZ and NKL contract with various content delivery networks ("CDNs"), including U.S.-based CDN companies, that temporarily copy content from the Netherlands-based servers that host XVideos.com and Xnxx.com to additional servers, including servers in the United States. This temporary copying by CDNs helps to ensure that the websites' "high-definition video content" will be "efficiently and reliably stream[ed]" to users who are located closer to those CDN servers, thereby providing an "uninterrupted experience." In operating their websites, WGCZ and NKL use the services of several California-based companies, including Google, EPOCH, PayPal, and Twillio. Specifically, WGCZ and NKL contract with Google and Twillio to manage emails, and they contract with PayPal and EPOCH to manage payments in U.S. dollars to and from their users and advertisers. [2] WGCZ and NKL are also the owners of several registered U.S. trademarks for XVideos.com and Xnxx.com.

 **\*3**  Registered users who upload videos to either XVideos.com or Xnxx.com agree to similar standard "Terms of Service," which include a provision that users will not "submit material that depicts any person under 18 years of age (or the age of majority under the laws of [their] state or jurisdiction), whether real or simulated." After submitting suitable video verification "to prove that the content under [their] account is clearly [theirs]," registered users on XVideos.com have the option to create a "channel," which allows them to "promote [their] brand through various ads and links" and monetize their uploaded videos. [3] WGCZ "promotes and profits from these partner channels," including channels that distributed videos of Plaintiff's abuse.

As of July 2021, XVideos.com "was ranked the 7th most trafficked website globally" and "the 9th most trafficked website in the United States," and Xnxx.com "was ranked the 10th most trafficked website both in the world and in the United States." The United States is the largest market for both XVideos.com and Xnxx.com, with each website generally drawing "between 12 and 19 percent" of its traffic from users with U.S.-based IP addresses. Although

neither WGCZ nor NKL solicits video content for these two websites from particular countries or individuals, the websites' advertising includes geographically targeted and location-based ads that are arranged by a Czech website-advertising company (Traffic F, s.r.o.) that sells ad space to third parties.

**B**

On March 18, 2021, Plaintiff filed this putative class action against WGCZ, NKL, and nine additional foreign defendants (collectively, the "Foreign Defendants"), [4] and five U.S.-based defendants (including ServerStack and DigitalOcean). In her operative First Amended Complaint, Plaintiff sought to represent one or more classes of persons who were depicted in child pornography videos and images that were hosted on defendants' websites. She asserted, on her own and the putative classes' behalf, four causes of action.

First, Plaintiff asserted a claim under 18 U.S.C. § 1595, which creates a private civil cause of action for victims of violations of any provision of Chapter 77 of title 18 of the United States Code, including the prohibition in 18 U.S.C. § 1591(a)(2) on benefitting from participation in a venture that has engaged in sex trafficking. Plaintiff alleged that all of the defendants were liable under § 1595's civil remedy, which imposes liability not only on the "perpetrator" of the offense, but also on any person who "knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a).

Second, Plaintiff alleged that the distribution of child pornography depicting her and the class members violated the federal child pornography prohibitions in 18 U.S.C. § 2252A. Plaintiff asserted that, as a result, those involved in that distribution were liable for damages and other relief under the civil action subsection of that statute. *See* 18 U.S.C. § 2252A(f).

 **\*4**  Third, Plaintiff alleged that the defendants violated 18 U.S.C. § 2260(b), which generally prohibits persons outside the United States from trafficking in child pornography, "intending that the visual depiction will be imported into the United States." According to Plaintiff, the defendants were

therefore liable under the civil cause of action in 🚩18 U.S.C. § 2255(a) for "personal injury as a result of such violation."

Fourth, Plaintiff alleged that defendants were liable under California's statute creating a civil cause of action in favor of a person who suffers damages from the unauthorized distribution of private sexually explicit images of that person. *See* 🚩CAL. CIV. CODE § 1708.85.

The defendants filed various motions to dismiss, only one of which is at issue here. Specifically, the Foreign Defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. In an amended order issued on January 13, 2022, the district court granted that motion. In its order, the court held that Plaintiff had failed to establish personal jurisdiction over WGCZ and NKL. Because the remaining nine Foreign Defendants were only included in the lawsuit on the theory that they had an "alter ego relationship" with WGCZ and NKL, the court concluded that its lack of jurisdiction over WGCZ and NKL meant that the court "also lack[ed] personal jurisdiction over their potential alter-egos." Accordingly, the court held that Plaintiff's request for jurisdictional discovery "to prove the existence of an alter ego relationship" was moot and that the court did not need to decide whether any of these additional nine Foreign Defendants were in fact alter egos. On February 25, 2022, the court denied Plaintiff's motion for reconsideration concerning the dismissal of the Foreign Defendants, except that the court explicitly clarified that its dismissal of these defendants was without prejudice.

**[1]** The district court's January 13, 2022 order also dismissed the claims against the five remaining U.S.-based defendants for failure to state a claim, but the order granted leave to file a further amended complaint on or before February 15, 2022. Plaintiff, however, did not file an amended complaint and instead filed a notice of appeal on March 28, 2022. Shortly thereafter, the district court issued an order dismissing the case with prejudice. Construing its February 25, 2022 order on reconsideration as having granted leave to file an amended complaint against the Foreign Defendants as well, the court noted that Plaintiff had failed to file any amended complaint, and it therefore dismissed the action with prejudice and entered judgment accordingly. Under our decision in 🚩*Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 618–19 (9th Cir. 2022), the district court's subsequent formal dismissal order and final judgment, even though filed after the notice of appeal, cures any prematurity arising from the

fact that Plaintiff filed a notice of appeal at a time when she still had leave to amend the complaint. Accordingly, we have jurisdiction under 🚩28 U.S.C. § 1291 over Plaintiff's appeal.

## II

**[2]** A court may exercise personal jurisdiction over a defendant if such jurisdiction is authorized by applicable law and "the exercise of that jurisdiction does not violate federal due process." 🚩*Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). The only applicable law that Plaintiff contends authorizes personal jurisdiction over the Foreign Defendants here is Federal Rule of Civil Procedure 4(k)(2). That rule provides that, "[f]or a claim that arises under federal law," a court may assert "personal jurisdiction over a defendant" if (1) "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction" and (2) "exercising jurisdiction is consistent with the United States Constitution and laws." FED. R. CIV. P. 4(k)(2). Because the first three causes of action in Plaintiff's complaint expressly "arise[ ] under federal law," *id.*, the threshold requirement for invoking Rule 4(k)(2) is satisfied, at least with respect to those three claims.[5] Moreover, the parties agree that none of the Foreign Defendants are "subject to jurisdiction in any state's courts of general jurisdiction." FED. R. CIV. P. 4(k)(2)(A). With those requirements satisfied, the applicability of Rule 4(k)(2) here turns on the final requirement that "exercising" jurisdiction over the defendants would be "consistent with the United States constitution and laws." FED. R. CIV. P. 4(k)(2)(B). And because no party contends that some other federal law limits the applicability of Rule 4(k)(2) here, the reach of that rule in this case is co-extensive with the limits of the Due Process Clause of the federal Constitution.

**\*5** **[3]** **[4]** Accordingly, whether personal jurisdiction exists under Rule 4(k)(2) turns on whether the requirements of the Due Process Clause are satisfied here. A court's exercise of personal jurisdiction over a non-U.S. defendant comports with due process if that defendant has "certain minimum contacts" with the relevant forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " 🚩*Walden v. Fiore*, 571 U.S. 277, 283, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014) (quoting 🚩*Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). In the context of Rule 4(k)(2), in which no

individual state has personal jurisdiction over the defendants and the claim is based on federal law, the relevant forum for assessing whether minimum contacts exist is the United States "as a whole." *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1208 (9th Cir. 2020) (citation omitted).

**[5]** Plaintiff does not contend that the Foreign Defendants' contacts with the United States were sufficient to give rise to "general jurisdiction," which would allow the forum to "hear any and all claims against them." *Daimler AG v. Bauman*, 571 U.S. 117, 127, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014) (citation omitted). To support a claim of such general jurisdiction, Plaintiff would have to show that the defendant's contacts with the forum "are so 'continuous and systematic' as to render them essentially at home in the forum State." *Id.* (citation omitted). Plaintiff does not assert that that high standard could be met here. "Accordingly, the sole potential basis for personal jurisdiction is *specific* jurisdiction" over the particular matters at issue in this lawsuit. *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021) (emphasis added).

**[6]** **[7]** Specific jurisdiction may be constitutionally exercised over a non-U.S. defendant under Rule 4(k)(2) if three requirements are satisfied. First, the defendant must have "performed some act or consummated some transaction by which it purposefully directed its activities toward the United States or purposefully availed itself of the privilege of conducting business in the United States." *Ayla*, 11 F.4th at 979 (simplified). Second, "the claim must be one which arises out of or relates to the defendant's forum-related activities." *AMA Multimedia*, 970 F.3d at 1208 (citation omitted). Third, "the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*[,] it must be reasonable." *Id.* (citation omitted). "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Id.* (citation omitted). "The plaintiff bears the burden of satisfying the first two prongs of th[is] test." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (citation omitted). If the plaintiff establishes that those two prongs are satisfied, "the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Id.* at 1068–69 (citation and internal quotation marks omitted).

**[8]** As we noted earlier, Plaintiff's argument below was that (1) personal jurisdiction existed under this test against WGCZ and NKL; and (2) the remaining nine Foreign Defendants were alter egos of WGCZ and NKL, such that the court's personal jurisdiction over WGCZ and NKL extended to these additional defendants. *See supra* at ——. The district court concluded that Plaintiff's first premise failed and it therefore declined to address either the merits of Plaintiff's alter ego theory or Plaintiff's request for jurisdictional discovery concerning these additional defendants. Consequently, the only issue before us is whether the district court correctly held that, under the above-described three-prong test, a prima facie showing of specific personal jurisdiction against WGCZ and NKL had not been shown. We review a dismissal for lack of personal jurisdiction de novo. *Burri Law PA v. Skurla*, 35 F.4th 1207, 1213 (9th Cir. 2022).

### III

**\*6** We conclude that the district court erred in holding that it lacked specific personal jurisdiction against WGCZ and NKL under the three-part due process test set forth above.

### A

**[9]** **[10]** The first prong of the due process analysis examines whether the defendant either "[1] purposefully directed its activities toward the United States or [2] purposefully availed itself of the privilege of conducting business in the United States." *Ayla*, 11 F.4th at 979 (simplified). Although these two standards overlap to some extent, "[w]e generally focus our inquiry on purposeful availment when the underlying claims sound in contract and on purposeful direction when they arise from alleged tortious conduct committed outside the forum." *Id.*; *see also Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). We have held that the civil cause of action for victims of sex-trafficking in 18 U.S.C. § 1595(a) "sounds in tort," *Ditullio v. Boehm*, 662 F.3d 1091, 1094 (9th Cir. 2011), and the same reasoning extends equally to the causes of action established for victims of child pornography in 18 U.S.C. §§ 2252A(f) and 2255(a). We therefore "focus on purposeful direction here." *Ayla*, 11 F.4th at 979.

**[11]** The governing test for determining whether a defendant has purposefully directed its actions toward the forum is the so-called " 'effects' test, derive[d] from ⚑*Calder v. Jones*, 465 U.S. 783 [104 S.Ct. 1482, 79 L.Ed.2d 804] (1984)." ⚑*Axiom Foods*, 874 F.3d at 1069. Under that test, "[t]he defendant must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." ⚑*Id.* (citation and internal quotation marks omitted). WGCZ and NKL concede that they committed intentional acts by operating Xvideos.com and Xnxx.com, and so the first element of the ⚑*Calder* test is met. WGCZ and NKL contend, however, that the other two elements have not been satisfied, and we therefore address those elements in turn.

**1**

**[12]** We conclude that Plaintiff made a sufficient prima facie showing that WGCZ's and NKL's operation of their pornography websites was "expressly aimed" at the United States. ⚑*Axiom Foods*, 874 F.3d at 1069 (citation omitted).

**[13]** We have held that "maintenance of a passive website alone cannot satisfy the express aiming prong" of the ⚑*Calder* effects test. ⚑*Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1229 (9th Cir. 2011) (citation omitted). However, "operating even a passive website in conjunction with 'something more'—conduct directly targeting the forum —is sufficient." ⚑*Id.* (citation omitted). In determining whether a defendant's operation of a particular website has crossed the line between passively benefiting from U.S. users of its website and expressly aiming its website at such users, "we have considered several factors, including the interactivity of the defendant's website; the geographic scope of the defendant's commercial ambitions; and whether the defendant 'individually targeted' a plaintiff known to be a forum resident." ⚑*Id.* (citations omitted). Plaintiff does not contend that she was "individually targeted" in the sense that ⚑*Mavrix* describes. ⚑*Id.* (citation omitted). Rather, the question here is whether express aiming at the U.S. market has been shown by virtue of what the evidence reveals about (1) how WGCZ and NKL operate these particular websites and (2) the "geographic scope" of the companies' "commercial

ambitions" in doing so. ⚑*Id.* To establish the requisite "something more" based on these sorts of considerations, we have held that the plaintiff must show that the website operator "both actively appealed to and profited from an audience" in the U.S. forum. ⚑*Will Co., Ltd. v. Lee*, 47 F.4th 917, 922–23 (9th Cir. 2022) (simplified). Here, as in ⚑*Will*, that showing has been sufficiently made.

**\*7** ⚑*Will* concerned a Japanese pornographer's U.S. copyright infringement claims against the defendant operators of an adult "video-hosting site based in Hong Kong." *See* ⚑47 F.4th at 919. In concluding that the defendants operated their website in a way that was expressly aimed at the United States, we emphasized that the defendants had taken two specific steps that "reduced the time it takes for the site to load in the United States." ⚑*Id.* at 924. Specifically, the defendants "acquired hosting services from an American company, Gorilla Servers, with servers in Utah," and they "purchase[d] content delivery network services for North America." ⚑*Id.* at 920, 924. The use of these measures, we held, showed that the defendants "chose to have the site load faster for viewers in the United States and slower for viewers in other places around the world." ⚑*Id.* at 925. Given that "[t]he time it takes for a site to load, sometimes referred to as a site's 'latency,' is critical to a website's success," we held that the defendants' adoption of measures that *differentially* favored the United States market was "good evidence" of the defendants' efforts to actively appeal specifically to the United States market, as opposed to passively offering a website to the world at large. ⚑*Id.* at 924–25.

Here, in contrast to ⚑*Will*, WGCZ and NKL did not contract to host their websites on physical servers in the United States. However, they did contract with U.S.-based content delivery network services ("CDNs") for their websites, and they did so for the conceded purpose of ensuring that "users viewing videos have [an] uninterrupted experience." As WGCZ and NKL acknowledge, "it is not ideal to efficiently and reliably stream high-definition video content to all users over the globe without using CDNs." According to WGCZ and NKL, its CDN providers " 'pull' certain content from [the companies'] servers in Amsterdam onto the CDN providers' regional facilities based upon local user clicks and videos." That content "is temporarily cached on, and served from,

the CDN facilities and subsequently deleted." By using U.S.-based CDNs to improve the viewing experience of persons near those CDNs, and by allowing CDN providers to pull content onto the U.S.-based CDNs' servers to do so, WGCZ and NKL have differentially targeted U.S. visitors in a way that, under *Will*, constitutes express aiming at the U.S. market. *See Briskin v. Shopify, Inc.*, 87 F.4th 404, 420 (9th Cir. 2023) (noting that, under *Will*, express aiming is shown when there is "some differentiation of the forum state from other locations").

On this point, our decision in *Ayla* is also instructive. In *Ayla*, a U.S.-based beauty company sued an Australian skincare company for trademark infringement and related torts. 11 F.4th at 976–77. In holding that the Australian defendant was subject to personal jurisdiction in the United States under Rule 4(k)(2) for these claims, we held that the defendant had "done more than merely place its products into the stream of commerce, running the risk that its products might randomly or serendipitously arrive in the United States." *Id.* at 981. In particular, we noted that the Australian defendant had contracted with "Dollar Fulfillment," a third-party Idaho fulfilment center, in order to ensure that it could "ship its products quickly within the United States." *Id.* at 984. We noted that "[b]y contracting with a distribution center in the United States, [defendant] could offer two-to four-day shipping within the United States, whereas delivery to most other parts of the world would take five to ten days." *Id.* at 982. WGCZ's and NKL's purchase of U.S.-based CDN services to ensure faster website loading times and a more seamless viewing experience for U.S. users is the digital analogue of contracting with a U.S. fulfilment center to enable faster product delivery for U.S. customers. Here, as in *Ayla*, the use of such a U.S.-based operation to facilitate quick delivery of product to nearby consumers demonstrates the sort of differential targeting that constitutes express aiming at the U.S. market.

In arguing for a contrary conclusion, WGCZ and NKL rely on *AMA Multimedia*, in which we declined to find that a Polish pornography website had expressly aimed at the U.S. market merely by using a U.S.-based "domain name server ('DNS')" company. 970 F.3d at 1205. As we explained, a DNS company "allows users to access [a website] more efficiently by translating its domain names [*i.e.*, webpage addresses] into Internet Protocol addresses." *Id.* We held that, even if the use of a U.S.-based company to perform this basic threshold step for locating a webpage resulted in faster speeds for U.S. users, such a contract for DNS services was nonetheless insufficient to show a differential "desire to appeal to the U.S. market or generate more U.S. users, as opposed to more users globally." *Id.* at 1212. But unlike the mere use of a U.S.-based company in *AMA Multimedia* for the basic threshold step of translating webpages into IP addresses, the use of CDNs in *particular* locations to pull content onto local servers in those locations (including specifically the United States), and for the express purpose of improving *nearby* users' viewing experience, demonstrates differential targeting of the U.S. market. *See id.* at 1212 n.8 (distinguishing *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 354 (4th Cir. 2020), on the ground that, *inter alia*, the defendant in *UMG*, who was alleged to have infringed the plaintiff's copyrights, had "relied on U.S.-based servers" (citation omitted)).

**\*8** The fact that WGCZ and NKL may have *also* differentially targeted other particular locations does not detract from the fact that their use of U.S.-based CDNs shows that they expressly aimed their websites at the U.S. market. Indeed, in *Will*, we found express aiming due to the use of U.S.-based CDNs, even though the defendant also used other CDNs in Asia. *See* 47 F.4th at 920, 925. Likewise, in *Ayla*, we held that the Australian defendant's use of advertising that was targeted "specifically at Americans" showed express aiming at the U.S. market, even though the defendant "addressed much of its advertising to an international or Australian audience." *Id.* at 980–81. As we explained, the existence of other advertising specifically directed at other markets did "not alter the jurisdictional effect of marketing targeted specifically at the United States, the relevant forum." *Id.* at 981.

Moreover, as in *Will*, WGCZ and NKL not only actively appealed to a U.S.-based audience, but they also "profited from an audience in that forum." 47 F.4th at 922–23 (simplified). Users in the United States account for between 12% and 19% of the traffic on both XVideos.com and Xnxx.com, and so those websites "earned considerable

revenue from that market." *Id.* at 924 (explaining that the defendant made money by selling website advertising space and that the defendant made more money from advertisers when more visitors accessed its website).

We recognize that, as WGCZ and NKL correctly contend, Plaintiff did not make a prima facie showing that the specific advertising structure used by XVideos.com and Xnxx.com would *itself* be sufficient to show express aiming at the United States. In *AMA Multimedia*, we held that the use of a "third-party advertising company" to provide "geo-located advertisements" that are "*always* directed" at *whatever* forum happens to be the source of that particular visit by a website user does not constitute express aiming. 970 F.3d at 1211 (emphasis in original). Put another way, *AMA Multimedia* held that tailoring ads to the particular geographic source of every particular user who visits a page is effectively the same as passively offering the webpage to any visitor from anywhere in the globe, and it is therefore the antithesis of differential aiming at a subset of particular locations. By contrast, we clarified in *Will* that, under our decision in *Mavrix*, an advertising structure that entails more advertising revenue based on a greater number of clicks in a particular jurisdiction shows "something more" than the mere use of generic geo-located advertising. *See Will*, 47 F.4th at 924 (citation omitted). Here, the record does not contain sufficient evidence to say whether WGCZ's and NKL's advertising falls on the *AMA Multimedia* side of the line or the *Mavrix*/*Will* side, and we therefore cannot say that the companies' advertising, standing alone, demonstrates express aiming at the United States. However, we have already concluded that WGCZ's and NKL's use of U.S.-based CDNs to improve the viewing experience of U.S. visitors shows that WGCZ and NKL actively targeted the U.S. market. Therefore, the substantial financial success that the companies achieved from those efforts is a relevant additional factor in confirming that the companies expressly aimed their websites at the United States. As in *Will*, the record here shows that WGCZ and NKL "both actively appealed to and profited from an audience in that forum." 47 F.4th at 922–23 (simplified). [6]

**\*9** Accordingly, we conclude that WGCZ's and NKL's operation of their websites was "expressly aimed" at the

United States and that this element of the *Calder* test for determining purposeful direction has been satisfied.

**2**

[14] We turn, then, to the remaining prong of the *Calder* test, which asks whether WGCZ's and NKL's operation of their websites "caus[ed] harm that the defendant[s] know[ ] is likely to be suffered in the forum state." *Axiom Foods*, 874 F.3d at 1069 (citation omitted); *AMA Multimedia*, 970 F.3d at 1209 (citation omitted). The answer to that question is yes.

[15] [16] "A defendant causes harm in a particular forum when the 'bad acts' that form the basis of the plaintiff's complaint occur in that forum." *Will*, 47 F.4th at 926 (citing *Mavrix*, 647 F.3d at 1231). Here, the harm on which Plaintiff's complaint is based is the publication of videos of her childhood sexual abuse on WGCZ's and NKL's websites. At least one of those videos attracted more than 160,000 views worldwide before it was taken down in response to a cease-and-desist letter from Plaintiff's attorney. And given that between 12% and 19% of the relevant websites' users are in the United States, it is clear that a substantial volume of the widespread publication of the videos of Plaintiff's abuse occurred in the United States. These facts more than suffice to bring this case squarely within the rule that, where "a Defendant's actions cause harm in multiple fora, jurisdiction is proper in any forum where a 'sufficient' amount of harm occurs, even if that amounts to only a small percentage of the overall harm caused." *Id.* (citing *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006) (en banc)). Indeed, in *Will*, we held that sufficient publication-related harms (*i.e.*, copyright infringement) had been suffered in the United States when U.S. viewers made up only 4.6% of the viewership of a foreign website. *Id.* at 926–27; *see also Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 780–81, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) (holding that jurisdiction was proper in New Hampshire for publication-based defamation torts, even though the defendant magazine publisher sold most of its magazines elsewhere and that, as a result, "the bulk of the harm done to [the plaintiff] occurred outside New Hampshire"); *see also Keeton v. Hustler*

*Mag., Inc.*, 682 F.2d 33, 33 (1st Cir. 1982) (noting, in the decision subsequently reviewed by the Supreme Court, that the percentage of the defendant's magazines that were sold in New Hampshire was "less than one percent").

Moreover, this U.S.-based publication harm was clearly foreseeable, given the facts described earlier concerning WGCZ's and NKL's targeting of the U.S. market and the inferences that may reasonably be drawn in Plaintiff's favor. Here, as in *Will*, the relevant defendants "actively appealed to a U.S. audience, knew that a significant number of people in the United States were actually viewing the website[s], and were put on notice that they were hosting [the offending material] when [Plaintiff] sent them a takedown notice." 47 F.4th at 927. Given these facts, it is "hard to see how [WGCZ and NKL] could have failed to anticipate the harm that occurred in the forum." *Id.*

**\*10** Because Plaintiff has met all the requirements of the *Calder* effects test, she has established a prima facie case that WGCZ and NKL purposefully directed their websites at the United States, and she has therefore satisfied the first prong of the due process analysis.

**B**

 **[17]**  The second prong of the due process analysis requires Plaintiff to show that her claims "arise out of or relate to" WGCZ's and NKL's "contacts with the forum." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 141 S. Ct. 1017, 1026, 209 L.Ed.2d 225 (2021) (citation and emphasis omitted). Where, as here, the relevant contacts with the forum consist of directing a content-sharing website at the U.S. market, we have little difficulty concluding that the Plaintiff's publication-based harms arise out of those forum-related activities.

As we held in *Mavrix*, where a defendant published copyrighted photographs "on a website accessible to users in the forum state," the copyright owner's "claim of copyright infringement arises out of [that] publication," thereby satisfying the second prong of the due process analysis. 647 F.3d at 1228. And in *Keeton*, in which the forum-related activities consisted of distributing magazines in New Hampshire, the Supreme Court held that a plaintiff's

claim that she was defamed in those magazines "arises out of the very activity being conducted, in part, in New Hampshire." 465 U.S. at 780, 104 S.Ct. 1473. We reached the same conclusion with respect to a defamation claim based on "libelous articles" contained in "international medical journals" that were distributed in California: such "libel claims clearly 'arose out' of the publication of the articles." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1485 (9th Cir. 1993). Based on these precedents, it is clear that Plaintiff's claims seeking redress for harms caused by WGCZ's and NKL's publication of the videos of her abuse arise from those companies' forum-related activities in targeting those websites towards the U.S. market.

**C**

 **[18]**  The only remaining question concerns the third prong of the due process analysis, under which "the exercise of jurisdiction ... must be reasonable." *Axiom Foods*, 874 F.3d at 1068 (citation omitted). Where, as here, the plaintiff has satisfied the first two prongs, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would *not* be reasonable.' " *Id.* at 1068–69 (emphasis added) (citation omitted). WGCZ and NKL have not carried that burden.

 **[19]**  In evaluating the reasonableness of an exercise of personal jurisdiction, we "use a seven-factor balancing test that weighs":

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

Doe v. WebGroup Czech Republic, A.S., --- F.4th ---- (2024)

2024 WL 16828

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law. Grp.*, 905 F.3d 597, 607 (9th Cir. 2018). Consideration of these factors here confirms the reasonableness of exercising personal jurisdiction over WGCZ and NKL.

**\*11  [20]**  As we reaffirmed in *Ayla*, the "purposeful interjection factor in the reasonableness analysis is 'analogous to the purposeful direction' " prong. 11 F.4th at 984 (quoting *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988)). Here, WGCZ and NKL have purposely directed their websites at the U.S. market, using U.S.-based CDN service providers, and they thereby garnered substantial and financially valuable web traffic in the United States. Given these "ongoing ties to the forum," this "factor weighs in favor of jurisdiction." *Id.*

Given WGCZ's and NKL's "extensive contacts with the United States," their argument that it would be unduly burdensome to "have to travel to the United States for court appearances is entitled to little weight." *Ayla*, 11 F.4th at 984. That remains true even though, as a general matter, "litigation in a distant forum is inconvenient" and there are " 'unique burdens placed upon one who must defend oneself in a foreign legal system.' " *Id.* (quoting *Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 114, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)). As the Supreme Court recognized in *Asahi*, "[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." 480 U.S. at 114, 107 S.Ct. 1026. Here, a U.S. forum is important to Plaintiff's "interest in convenient and effective relief." *Freestream*, 905 F.3d at 607. Further, a U.S. forum has a very powerful interest in adjudicating a dispute involving alleged dissemination of child pornography depicting the rape of a 14-year-old U.S. citizen who was subjected to sex trafficking. *See Ayla*, 11 F.4th at 984 (holding that the United States has an interest in protecting, and providing redress to, its citizens). By contrast, there is no unreasonable interference with the sovereignty of the Czech Republic, given that there is and can be no contention that hosting videos of 14-year-olds being raped is lawful under Czech law. And the "most efficient judicial resolution" of this controversy concerning claims made by a U.S. citizen

under U.S. law about the website publication of materials made available in the United States would be in a U.S. forum. *Freestream*, 905 F.3d at 607; *see also Ayla*, 11 F.4th at 984.

Finally, we have held that the remaining factor—namely, "the existence of an alternative forum"—is relevant only when, under the other factors, a U.S. forum "is shown to be unreasonable." *Ayla*, 11 F.4th at 984 (citations omitted). As we have explained, WGCZ and NKL have "not made that showing." *Id.* at 985 (citation omitted).

Taking all these considerations together, we conclude that WGCZ and NKL have failed to make a compelling showing that the exercise of personal jurisdiction here would be unreasonable.

## IV

For the foregoing reasons, we conclude that Plaintiff sufficiently established a prima facie case for exercising personal jurisdiction over WGCZ and NKL, and those defendants failed to show that the exercise of such jurisdiction would be unreasonable. We therefore reverse the district court's dismissal of this action against WGCZ and NKL for lack of personal jurisdiction. Because, as we explained earlier, the district court dismissed the remaining nine Foreign Defendants solely on the ground that there was no personal jurisdiction over WGCZ and NKL, we vacate the dismissal of those additional defendants. On remand, the district court should address the remaining unresolved issues concerning whether personal jurisdiction may be asserted against those additional defendants.

**\*12  REVERSED IN PART, VACATED IN PART, and REMANDED.**

LEE, Circuit Judge, concurring.

I largely agree with Judge Collins' excellent opinion. But I write separately because it would have been prudent for the district court to have ordered very limited jurisdictional discovery here. Such discovery would have tethered the district court's analysis more tightly onto our circuit's personal jurisdiction framework.

**Doe v. WebGroup Czech Republic, A.S., --- F.4th ---- (2024)**
2024 WL 16828

For example, it would have helped to know the extent of WGCZ's and NKL's use of content delivery network services (CDNs) in the United States—and elsewhere around the globe —to improve the viewing experience of their users. That, in turn, would have aided us in determining whether WGCZ and NKL differentially targeted the United States and thus expressly aimed at our market. *Will Co., Ltd. v. Lee*, 47 F.4th 917, 922–26 (9th Cir. 2022).

But even without such jurisdictional discovery, other evidence and common sense strongly suggest that WGCZ and NKL expressly aimed at the United States market. And it makes little sense to insist on a remand on that issue and further delay this case involving allegations of underaged sex trafficking. *Cf. Gundy v. United States*, 588 U.S. ——, 139 S.Ct. 2116, 204 L.Ed.2d 522 (2019) (Alito, J., concurring in the judgment) (noting that it would be "freakish to single out" the provision at issue, given the circumstances). But in other less obvious cases, it may behoove a district court to allow jurisdictional discovery, especially if the pleadings are imprecise.

**All Citations**

--- F.4th ----, 2024 WL 16828

## Footnotes

1    The website operators assert that they have been unable to locate any records of any such requests prior to the cease-and-desist letter.

2    The operative complaint suggests that the companies ended their relationship with PayPal in April 2021, but the October 2021 declaration of the companies' administrative director refers to the companies' relationship with PayPal in the present tense.

3    Although the operative complaint does not explicitly address the point, the apparent inference is that Xnxx.com offers the same ability to monetize uploaded videos as does XVideos.com.

4    The nine additional Foreign Defendants consist of seven additional Czech entities—namely, (1) WGCZ Holding, a.s.; (2) WGCZ Limited, s.r.o.; (3) Traffic F, s.r.o.; (4) GTFlix TV, s.r.o.; (5) FTCP, s.r.o.; (6) HC Media, s.r.o.; and (7) FBP Media, s.r.o.—and two natural persons (Stephane Michael Pacaud, a "tax resident" of the Czech Republic, and his sister Deborah Malorie Pacaud, a citizen of France).

5    Although Rule 4(k)(2) does not itself provide for personal jurisdiction against foreign defendants with respect to state law claims, we assumed in *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972 (9th Cir. 2021), that the jurisdiction provided by that rule would also allow for jurisdiction over any pendent state law claims against the same defendants. *See id.* at 984 (noting that our upholding of jurisdiction under Rule 4(k)(2) in that case would allow for resolution of both the plaintiff's state law claims and its federal claims in a U.S. forum). That assumption was consistent with the holdings of other circuits that have concluded that, when federal law allows for personal jurisdiction against a particular defendant with respect to federal claims, pendent or supplemental jurisdiction may be asserted over related state law claims against the same defendant. *See Laurel Gardens, LLC v. McKenna*, 948 F.3d 105, 123–24 (3d Cir. 2020); *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 628–29 (4th Cir. 1997); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056– 57 (2d Cir. 1993); *see also Canaday v. Anthem Cos.*, 9 F.4th 392, 401 (6th Cir. 2021) (distinguishing, on this point, between "pendent claim and pendent party personal jurisdiction"). Accordingly, if Rule 4(k)(2) authorizes personal jurisdiction against any of the defendants here with respect to the federal claims, then the

2024 WL 16828

district court may also assert personal jurisdiction against those same defendants with respect to Plaintiff's related state law claims.

6      Similarly, while WGCZ's and NKL's mere act of registering trademarks in the United States might not by itself be sufficient to show express aiming at the United States, it is a consideration that further confirms the companies' efforts to differentially protect their ability to reach, and profit from, U.S.-based users of their websites. *See* *Ayla*, 11 F.4th at 982 n.4 (noting that a foreign defendant's action in registering a trademark in the United States "might be considered compelling evidence that [it] has satisfied the purposeful availment or direction test"). By contrast, we attach little weight to the fact that WGCZ and NKL used U.S.-based companies for generic email and payment services involving its user base generally. At least on the current record, Plaintiff has not shown that WGCZ's and NKL's use of these services shows a differential aiming at the U.S. market.

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.