Colin R. Kass (*pro hac vice*)
PROSKAUER ROSE LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 416-6890
ckass@proskauer.com

Robert C. Goodman (Bar No. 111554)
Lauren Kramer Sujeeth (Bar No. 259821)
ROGERS, JOSEPH, O'DONNELL, PC
311 California Street, 10th Floor
San Francisco, CA 94104
(415) 956-2828
rgoodman@rjo.com
lsujeeth@rjo.com

*Attorneys for Defendant Bright Data Ltd.*
*Additional counsel listed on signature page*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| X Corp.,<br><br>                         Plaintiff,<br><br>                    v.<br><br>BRIGHT DATA LTD.<br><br>                         Defendant | Case No.  23-cv-03698-WHA<br><br>Judge: Hon. William Alsup |

## BRIGHT DATA'S SUPPLEMENTAL BRIEF ON COPYRIGHT PRE-EMPTION

# TABLE OF CONTENTS

I.      INTRODUCTION. ........................................................................................................... 1

II.     COPYRIGHT PRE-EMPTION IS BOTH EXPLICIT AND BROAD. ........................... 2

III.    X'S CLAIMS FALL WITHIN THE "GENERAL SCOPE OF COPYRIGHT." ............... 3

        A.      Copyright Pre-emption Extends beyond Copyrighted Works. ................................3

        B.      The Information at Issue Falls Within the General Scope of Copyright. ................4

IV.     X'S TORT CLAIMS SEEK TO VINDICATE RIGHTS THAT ARE
        FUNCTIONALLY EQUIVALENT TO COPYRIGHT PROTECTIONS ........................ 7

V.      THE HOT NEWS EXCEPTION. ................................................................................. 12

VI.     CONCLUSION............................................................................................................. 12

# TABLE OF AUTHORITIES[1]

**Page(s)**

**CASES**

*Alaskasland.Com, LLC v. Cross*,
   357 P.3d 805 (Alaska 2015)...................................................................................9

*Associated Gen. Contractors of Cal., Inc. v. Carpenters*,
   459 U.S. 519 (1983)...............................................................................................9

*Barclays Cap. Inc. v. Theflyonthewall.com, Inc.*,
   650 F.3d 876 (2d Cir. 2011)................................................................................6, 8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................2, 5

*Best Carpet Values, Inc. v. Google, LLC*,
   2024 WL 119670 (9th Cir. 2024) ................................................................. *passim*

*Blue Nile, Inc. v. Ice.com, Inc.*,
   478 F. Supp. 2d 1240 (W.D. Wash. 2007)..............................................................8

*Craigslist Inc. v. 3Taps Inc.*,
   942 F. Supp. 2d 962 (N.D. Cal. 2013) .................................................................11

*Computer Assocs. Int'l, Inc. v. Altai, Inc.*,
   982 F.2d 693 (2d Cir. 1992)...................................................................................8

*Doe I v. GitHub, Inc.*,
   2023 WL 3449131 (N.D. Cal. 2023) ......................................................................9

*Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*,
   307 F.3d 197 (3d Cir. 2002)...................................................................................6

*G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*,
   958 F.2d 896 (9th Cir. 1992) .................................................................................3

*Harper & Row Publishers, Inc. v. Nation Enters.*,
   471 U.S. 539 (1985)...............................................................................................6

*Harper & Row Publishers, Inc. v. Nation Enters.*,
   723 F.2d 195 (2d Cir. 1983), *rev'd on other grounds*, 471 U.S. 539 (1985)...........6

[1] Unless otherwise specified, all emphasis added, initial capitalizations conformed without brackets, and internal citations and quotation marks omitted.

*hiQ Labs, Inc. v. LinkedIn Corp.*,
    31 F.4th 1180 (9th Cir. 2022) ....................................................................8

*In re Jackson*,
    972 F. 3d 25 (2d Cir. 2020) ..................................................................8, 10

*Media.net Advert. FZ-LLC v. Netseer, Inc.*,
    198 F. Supp. 3d 1083 (N.D. Cal. 2016) ....................................................3

*ML Genius Holdings LLC v. Google LLC*,
    2022 WL 710744 (2d Cir. 2022) ....................................................... *passim*

*Montz v. Pilgrim Films & Television, Inc.*,
    649 F.3d 975 (9th Cir. 2011) (*en banc*) ..................................................3, 4

*Nat'l Basketball Ass'n (NBA) v. Motorola, Inc.*,
    105 F.3d 841 (2d Cir. 1997) ..............................................................2, 4, 6

*ProCD, Inc. v. Zeidenberg*,
    86 F.3d 1447 (7th Cir. 1996) .....................................................................4

*Ritchie v. Williams*,
    395 F.3d 283 (6th Cir. 2005) .....................................................................3

*Ryoo Dental, Inc. v. Han*,
    2015 WL 4208580 (C.D. Cal. 2015) ..........................................................5

*Salt Optics, Inc. v. Jand, Inc.*,
    2011 WL 13055856 (C.D. Cal. 2011) .....................................................1, 7

*Sleep Sci. Partners v. Lieberman*,
    2010 WL 1881770 (N.D. Cal. 2010) ..................................................2, 5, 10

*Spear Mktg., Inc. v. BancorpSouth Bank*,
    791 F.3d 586 (5th Cir. 2015) .....................................................................4

*Stromback v. New Line Cinema*,
    384 F.3d 283 (6th Cir. 2004) .....................................................................9

*Ticketmaster Corp. v. Tickets.Com, Inc.*,
    2000 WL 525390 (C.D. Cal. 2000) ...........................................................6, 9

*U.S. Golf Ass'n. v. Arroyo Software Corp.*,
    69 Cal. App. 4th 607 (1999) ......................................................................7

*U.S. v. Univ. of Ala.*,
    104 F.3d 1453 (4th Cir. 1997) ...................................................................2

*Wrench Ltd. Liab. Co. v. Taco Bell Corp.*,
    256 F.3d 446 (6th Cir. 2001) ...................................................................11

*Yellowcake, Inc. v. Morena Music, Inc.*,
   522 F. Supp. 3d 747 (E.D. Cal. 2021) ................................................................5, 8

*Yu v. ByteDance Inc.*,
   2023 WL 5671932 (N.D. Cal. 2023) ...................................................................10

*Zito v. Steeplechase Films, Inc.*,
   267 F. Supp. 2d 1022 (N.D. Cal. 2003) ................................................................9

**STATUTES**

U.S. Const. Article 1 .......................................................................................2

17 U.S.C. § 106 .......................................................................................2, 7, 8

17 U.S.C. § 301 .................................................................................1, 3, 7, 10

**RULES**

Fed. R. Civ. P. 8 ..........................................................................................5

**OTHER AUTHORITIES**

H.R. Rep. 94-1476(1976) .................................................................................3

*Nimmer on Copyright*, § 1.15 (2023) ...............................................................7, 8, 9

# I.    INTRODUCTION.

X bills itself as a virtual public town square, inviting users from around the world to express their opinion, voice their thoughts, and engage in creative discourse.  This information does not exist in the ether, but has been reduced to tangible form and squarely falls within the scope of copyright.  But X has no copyright interests to speak of.  It may host this content on its site, but in doing so, it is nothing more than a mere distributor or publisher of information created by others.  X does not claim ownership in this information.  Instead, it concedes that the users own the information they create, meaning whatever protections may exist with respect to the copying or publishing of this information vests ***exclusively*** in third-parties.

Recognizing that X does not have a federal copyright claim (for it has not brought one), it seeks to nonetheless exert dominion over this information through state law.  But Congress has pre-empted all state laws that seek to encroach upon the "general scope" and "subject matter of copyright."  17 U.S.C. § 301.  Put simply, where the "gravamen of [the] claim" is that the defendant "copied portions of Plaintiff's website" and engaged in the "unauthorized publication" of that information, the claim will be pre-empted.  *ML Genius Holdings LLC v. Google LLC*, 2022 WL 710744, *3 (2d Cir. 2022); *Salt Optics, Inc. v. Jand, Inc.*, 2011 WL 13055856, *6 (C.D. Cal. 2011).

This principle disposes of X's claims.  Indeed, just days ago, the Ninth Circuit held that "preemption by federal copyright law" precluded "website owners" from "invok[ing] state law" to prevent Google from scraping plaintiffs' websites and republishing them with its own replacement advertisements.  As the Court explained, "[d]isplaying and reproducing a copy of a copyrighted work (Plaintiffs' website) falls squarely within the scope" of federal copyright pre-emption.  *Best Carpet Values, Inc. v. Google, LLC,* 2024 WL 119670, *7 (9th Cir. 2024).  *Best Carpet* controls here.  X alleges that Bright Data scraped – that is, copied – information from X's websites, and sold – that is, published – that information to others.  That conduct is no different from Google's, and does not infringe any rights that are qualitatively different from those enumerated in the Copyright Act.

Nor can X avoid *Best Carpet* by arguing that Bright Data just scrapes "data."  As an initial

matter, data is not categorically excluded from the general scope and subject matter of copyright. While some information – like facts – may not be subject to *protection*, the "shadow actually cast by the Act's preemption is notably broader than the wing of its protection." *U.S. v. Univ. of Ala.*, 104 F.3d 1453, 1463 (4th Cir. 1997). Accordingly, where facts are scraped from broader works of copyrightable material – that contain both copyrightable and non-copyrightable elements – the the "subject matter" prong of the pre-emption test is met, even if the defendant only scrapes the latter. *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 850 (2d Cir. 1997).

Here, X's failure to allege that any information it seeks to assert dominion over falls outside the scope of federal pre-emption dooms its tort claims. Under *Twombly*, it is not enough to vaguely assert that Bright Data scrapes "information," and then speculate that some unspecified portion of it may escape pre-emption. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). As master of its claims, X "must identify the conduct of [Bright Data] that is actionable under a theory of liability … that avoids pre-emption;" "vague allegations" that "fail to give [Bright Data] adequate notice of the nature of any unpreempted element of [X's] claim do not suffice." *Sleep Sci. Partners v. Lieberman*, 2010 WL 1881770, *10 (N.D. Cal. 2010). X has not done so.

This failure requires dismissal of each of X's tort claims (other than trespass to chattels) because each of these claims is premised on the copying and publishing of information scraped from X's site. Because such claims are the "functional equivalent" – and seek to vindicate the same exclusive rights covered by the Act – they are pre-empted.

## II.   COPYRIGHT PRE-EMPTION IS BOTH EXPLICIT AND BROAD.

The United States Constitution vests Congress with the power to "promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const. Art. 1, § 8. Pursuant to this authority, Congress enacted the federal Copyright Act of 1976, which affords copyright owners "the *exclusive* rights" to display, perform, reproduce, or distribute copies of a copyrighted work. *see* 17 U.S.C. § 106. In doing so, Congress intended to exercise its full Constitutional authority to create a uniform federal regime for the protection of literary works reduced to "tangible form,"

pre-empting any state law that purports to offer protection against the copying or publishing of such information.  *Best Carpet*, 2024 WL 119670, at *5.[2]  As the Ninth Circuit held, "Copyright preemption is both explicit and broad."  *Media.net Advert. FZ-LLC v. Netseer, Inc.*, 198 F. Supp. 3d 1083, 1087 (N.D. Cal. 2016) (quoting *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 904 (9th Cir. 1992)).

Under Section 301(a) of the Copyright Act, "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 … are governed exclusively by this title." 17 U.S.C. § 301(a).  Accordingly, the Ninth Circuit "ha[s] adopted a two-part test to determining whether a state law claim is preempted," asking first, "whether the subject matter of the state law claim falls within the subject matter of copyright;" and second, "whether the rights asserted under state law are equivalent to the rights" protected by copyright law.  *Best Carpet*, 2024 WL 119670, at *6.  Here, both elements are met.

## III.   X'S CLAIMS FALL WITHIN THE "GENERAL SCOPE OF COPYRIGHT."

### A.     Copyright Pre-emption Extends beyond Copyrighted Works.

In expressly pre-empting state law, Congress did not just pre-empt state laws that conflict with the protections afforded by the Copyright Act; it pre-empted any state law that reaches "subject matter" falling with the "***general scope***" of the Act.  17 U.S.C. § 301(a); *Montz v. Pilgrim Films & Television, Inc.*, 649 F.3d 975, 979 (9th Cir. 2011) (*en banc*) ("The scope of the subject matter of copyright law is broader than the protections it affords."); *Spear Mktg., Inc. v.*

---

[2] *See Ritchie v. Williams*, 395 F.3d 283, 286 (6th Cir. 2005) ("The Copyright Act is **unusually broad** in its assertion of federal authority.  Rather than sharing jurisdiction with the state courts as is normally the case, the statute expressly withdraws from the state courts any jurisdiction to enforce the provisions of the Act and converts all state common or statutory law 'within the general scope of copyright' into federal law to be **uniformly applied** throughout the nation."); *see also* H.R. Rep. 94-1476 at 129 (1976) ("By substituting a single Federal system for the present anachronistic, uncertain, impractical, and highly complicated dual system, the bill would greatly improve the operation of the copyright law and would be much more effective in carrying out the basic constitutional aims of uniformity and the promotion of writing and scholarship.").

*BancorpSouth Bank*, 791 F.3d 586, 596 (5th Cir. 2015) ("Scope and protection are not synonyms."). As the Seventh Circuit explained:

> "One function of § 301(a) is to prevent states from giving special protection to works of authorship that Congress has decided should be in the public domain, which it can accomplish only if 'subject matter of copyright' includes all works of a type covered by sections 102 and 103, even if federal law does not afford protection to them."

*ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1453 (7th Cir. 1996) (Easterbrook, J); *NBA*, 105 F.3d at 850 (same). Accordingly, while facts and even ideas if reduced to tangible form fall outside the protections granted by the Copyright Act, they fall within the scope of state law pre-emption. *Id*.

As highlighted by this Court in its recent order (ECF 54), the Second Circuit's decision in *Genius Holdings* is directly on point. There, the plaintiff published transcriptions of song lyrics on its website, which Google scraped and republished on its own site. Rejecting plaintiffs' argument – that its state law claims were not pre-empted because "transcriptions are … not copyrightable" – the Second Circuit "squarely held that section 301 prevents the States from protecting [a work] even if it fails to achieve Federal statutory copyright because it is too minimal or lacking in originality to qualify." *Genius Holdings*, 2022 WL 710744, at *2. As *Genius Holdings* demonstrates, even if none of the information at issue is copyrightable, it is still subject to pre-emption.

Here, X's tort claims involve information that falls within the general scope of copyright.

### B.   The Information at Issue Falls Within the General Scope of Copyright.

X seeks to prevent Bright Data from scraping ***any*** information that appears on its website. The Complaint does not specifically distinguish between different types of content, such as user-generated content, non-user-generated content, creative works, or facts and figures. Instead, it argues either that all such information is protected by state law, or that the Court cannot dismiss the X's claim because it is possible that its claims may involve some unspecified information that survives pre-emption. Neither argument has merit.

X's first argument – that none of the information scraped from its site falls within the general scope of copyright – is easily dispatched. X alleges that its site contains "written

comments, images and videos, known as posts, and to share, like and comment on other users' posts." FAC ¶ 19.  X does not dispute that at least some of this user-generated information, which X does not own, falls within the general scope of copyright.  *See Ryoo Dental, Inc. v. Han*, 2015 WL 4208580, *2 (C.D. Cal. 2015) (plaintiff "copied elements from [defendant's] website including text, photograph[s] ... and artwork," thus the "state-law claims clearly falls within the subject matter of copyright.").  As such, this precludes any claim premised on the notion that scraping of information automatically falls outside the scope of copyright.

X's fallback argument – that fact issues preclude dismissal – similarly fails.  Procedurally, a plaintiff cannot survive dismissal by arguing that there may be some information that falls outside the scope of copyright without identifying what that information is.  Ever since the Supreme Court overruled the "no set of facts" pleading standard, it is no longer "proper to assume that [the plaintiff] can prove facts that it has not alleged or that the defendants have violated the … laws in ways that have not been alleged."  *Twombly*, 550 U.S. at 563 n.8 (quoting *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 526 (1983)).  X has not done so.  Though X certainly knows what information appears on its website, it has chosen not to describe it with any specificity.  Such artful pleading does not comport with Rule 8, which requires the plaintiff to allege "enough factual matter" to show that the alleged conduct falls within ambit of state law protection.  *See Sleep Sci.*, 2010 WL 1881770, at *10 ("Plaintiff's vague allegations fail to give Sleeping Well adequate notice of the nature of any unpreempted element of this claim.  Plaintiff must identify the conduct of Sleeping Well that is actionable under a theory of liability that applies the UCL in a manner that avoids preemption."); *Yellowcake, Inc. v. Morena Music, Inc.*, 522 F. Supp. 3d 747, 773 (E.D. Cal. 2021) (rejecting misappropriation claim where plaintiff failed to identify anything that would fall outside the scope of copyright pre-emption).

Substantively, X's argument fails because the general scope of copyright includes more than just the creative works of X's users; it extends to all information scraped from X's website. Indeed, even purely factual information – such as the number of followers – falls within the scope of pre-emption because it was extracted from broader works that are subject to copyright.  The

Second Circuit's *NBA* decision, which pre-empted state law claims based on the extraction of statistics from broadcasts of NBA games, is dispositive.  As the court explained:

> "Copyrightable material often contains uncopyrightable elements within it, but Section 301 preemption bars state law misappropriation claims with respect to uncopyrightable as well as copyrightable elements....
>
> Adoption of a partial preemption doctrine – preemption of claims based on misappropriation of broadcasts but no preemption of claims based on misappropriation of underlying facts – would expand significantly the reach of state law claims and render the preemption intended by Congress unworkable.  [That] turns [pre-emption] on its head by allowing state law to vest exclusive rights in material that Congress intended to be in the public domain."

*NBA*, 105 F.3d at 849; *see also Harper & Row Publishers, Inc. v. Nation Enters.*, 723 F.2d 195, 200 (2d Cir. 1983), *rev'd on other grounds*, 471 U.S. 539 (1985) (claims involving copying of "purely factual" information from President Ford's memoirs pre-empted); *Barclays Cap. Inc. v. Theflyonthewall.com, Inc.*, 650 F.3d 876, 892 (2d Cir. 2011) ("It is not determinative that the plaintiff seeks redress with respect to a defendant's alleged misappropriation of uncopyrightable material – *e.g.*, facts – contained in a copyrightable work … if the work as a whole satisfies the subject matter requirement.").

In *Best Carpet*, the Ninth Circuit embraced this view, citing Second Circuit precedent to hold that "[a] work need not consist entirely of copyrightable material in order to meet the subject matter requirement, but instead need only fit into one of the copyrightable categories in a broad sense."[3]  *Best Carpet*, 2024 WL 119670, at *6; *Ticketmaster Corp. v. Tickets.Com, Inc.*, 2000 WL 525390, *4 (C.D. Cal. 2000) (dismissing misappropriation and trespass claim because, "[t]o the extent that state law would allow protection of factual data (not clear at all), this cannot be squared with the Copyright Act.").  Here, X does not dispute that X's website falls within the general scope of copyright.  In fact, X itself asserts copyright over it.  As the Ninth Circuit explained, "commercial websites are copyrightable" because they "possess copyrightable literal elements …,

---

[3] The principle – that scraping facts from broader copyrightable works is subject to pre-emption – distinguishes cases where the information exists, and was obtained independently from, a broader copyrightable work.  *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 218 (3d Cir. 2002) (customer lists).

non-literal elements …; and dynamic non-literal elements." *Best Carpet*, 2024 WL 119670, at *6. As such, the fact that some specific elements scraped from X's website may, or may not, be independently copyrightable does not remove it from the ambit of pre-emption.[4]

## IV. X'S TORT CLAIMS SEEK TO VINDICATE RIGHTS THAT ARE FUNCTIONALLY EQUIVALENT TO COPYRIGHT PROTECTIONS

X's tort claims (other than trespass) are pre-empted because each claim seeks to vindicate its purported right to prohibit others from copying and publication of information appearing on its website. That right is the functional equivalent of the exclusive rights protected by the Copyright Act, and thus, X's state law claims are pre-empted.

Congress preempted "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright" arising under the "common law or statutes of any State." 17 U.S.C. § 301(a). The exclusive rights protected by the Act include the right to "display, perform, reproduce, or distribute copyrighted work, to authorize others to do those things, and to prepare derivative works based" on such work." *Best Carpet*, 2024 WL 119670, at *7 (citing 17 U.S.C. § 106). Accordingly, where the "unauthorized publication is the gravamen of [the] claim," it will be deemed "coextensive with an exclusive right already safeguarded by the Act." *Genius Holdings*, 2022 WL 710744, at *3; *Salt Optics, Inc. v. Jand, Inc.*, 2011 WL 13055856, *6 (C.D. Cal. 2011) ("The gravamen of the action here is … that Defendants copied portions of Plaintiff's website. The Copyright Act thus limits the available causes of action."); *Blue Nile, Inc. v. Ice.com*,

---

[4] X misplaces reliance on the intermediate California court's decision in *U.S. Golf Ass'n v. Arroyo Software Corp.*, 69 Cal. App. 4th 607 (1999), which is neither binding on the question of federal pre-emption nor applicable. *See Nimmer on Copyright* § 1.15, n.293 (2023) (expressing skepticism of *U.S. Golf*). There, the defendant "used" the plaintiff's golf handicap formulas to create a competing handicap system. While the defendant also used the plaintiffs' trademarks in its marketing materials, there was no allegation that it copied the formulae from broader works of copyrightable information, or that republished the formulas (as opposed to making internal use of them). As the court explained, "the Handicap System and Formulas could not be made to fit within any of the eight specific categories of 'original works of authorship' enumerated in [the Act]," in part, because the Act specifically excludes "processes and systems." *U.S. Golf*, 69 Cal. App. 4th at 622. Here, in contrast, X is not seeking to protect processes and systems, or Bright Data's internal use of information; it is seeking to prevent the reproduction and sale of data scraped from its site. It, therefore, falls squarely within the scope of copyright pre-emption.

*Inc.*, 478 F. Supp. 2d 1240, 1250 (W.D. Wash. 2007) (same).

Here, X does not dispute that its tort claims seek to prohibit the unauthorized copying and sale of information on its website. It seeks an injunction prohibiting Bright Data from "unauthorized scraping of data from X," and the "selling or offering for sale" of any such data. FAC at 22. But, as the Ninth Circuit has noted, scraping merely "involves extracting data from a website and ***copying*** it into a structured format." *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1186 n.4 (9th Cir. 2022). And the selling of such information simply involves the display or republication of such information. As such, the rights X seeks to protect falls squarely within the Act. *Best Carpet*, 2024 WL 119670, at *7 ("Displaying and reproducing a copy of a copyrighted work (Plaintiffs' website) falls squarely within the scope of 17 U.S.C. § 106.").

Nor can X avoid pre-emption by claiming that its state law claims involve "extra elements." To determine whether a state law claim is the functional equivalent of copyright, courts conduct a claim-by-claim analysis, looking at "what the plaintiff seeks to protect, the theories in which the matter is thought to be protected, and the rights sought to be enforced." *In re Jackson*, 972 F. 3d 25, 44, 49 n.31 (2d Cir. 2020) (quoting *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 716-17 (2d Cir. 1992)). Not "every extra element" will save a claim from pre-emption. *Id.* For example, elements focused on intent or awareness may limit the scope of a defendant's liability, but they do create rights *beyond* those protected by the Act. *In re Jackson*, 972 F.3d at 44 ("An action will not be saved from preemption by elements ... which alter the action's scope but not its nature."). Here, none of X's tort claim involve disqualifying extra elements.

***Misappropriation.*** As the leading treatise explains, "legions of cases" have held that the Copyright Act preempts state law misappropriation claims. *See Nimmer on Copyright*, § 1.15 (2023); *see, e.g.*, *Yellowcake.*, 522 F. Supp. 3d at 773 ("the only alleged conduct that could readily be considered appropriation are the acts of reproducing, displaying, and performing, all of which are exclusive rights that belong to a copyright owner under § 106."); *Theflyonthewall.com,* 650 F.3d at 892 (pre-empting claim for misappropriating facts in investment reports). X's allegation that it "invested substantial time, labor, skill, and financial resources into the creation and

1   maintenance of X" is "not an extra element that saves [its] claim from preemption."  FAC ¶ 108;

2   *Stromback v. New Line Cinema*, 384 F.3d 283, 302 (6th Cir. 2004); *see also Alaskasland.Com,*

3   *LLC v. Cross*, 357 P.3d 805, 814 (Alaska 2015) ("[T]he misappropriation of 'sweat equity'

4   expended in the creation and advertisement of a copyrightable work is precisely the type of

5   misconduct the copyright laws are designed to guard against."); *Ticketmaster*, 2000 WL 525390,

6   at *4 ("The [misappropriation and trespass claims] are preempted [since the] essence of each claim

7   is the invasion and taking of factual information compiled by Ticketmaster.").

8       ***Unjust Enrichment.***   As the Ninth Circuit held "a state-law cause of action for unjust

9   enrichment or quasi contract should [generally] be regarded as an 'equivalent right' and, hence

10  preempted."  *Best Carpet*, 2024 WL 119670, at *8 (quoting *Nimmer on Copyright*, § 1.15(G)); *see*

11  *also Zito v. Steeplechase Films, Inc.*, 267 F. Supp. 2d 1022, 1027 (N.D. Cal. 2003) ("claims for

12  unjust enrichment are also generally preempted."); *Doe I v. GitHub, Inc.*, 2023 WL 3449131, *11

13  (N.D. Cal. 2023) (same).   Here, X claims that Bright Data was unjustly enriched because it

14  "scrap[ed] data from the X platform," and "receive[d] benefits in the form of profits from [the]

15  unauthorized scraping of X Corp. data."  FAC ¶¶ 89, 90.   But in *Best Carpet*, the Ninth Circuit

16  held that any alleged "financial benefit" derived from unlawful copying is not "an extra element"

17  because it "maps neatly onto the damages requirement for any successful copyright claim."  2024

18  WL 119670, at *8.  Nor can X save its claim by tacking on allegations that Bright Data was able

19  to "evade X Corp.'s anti-scraping technology."  *Id.* ¶¶ 2, 13.  Such allegations just address how

20  Bright Data allegedly accomplished the copying of information.  As the Ninth Circuit explained,

21  the pre-emption analysis focuses on the *rights* the plaintiff seeks to vindicate, not the manner in

22  which those rights were violated.   *Best Carpet*, 2024 WL 119670, at *7 ("the district court

23  improperly focused on the nature of the complained of action when … the pre-emption analysis

24  … must focus on the nature of the right at issue.").

25      ***The UCL Claim.***   Unfair competition claims based on the unauthorized scraping of website

26  information are routinely pre-empted.  *See Genius Holding,* 2022 WL 710744, at *4 ("Unfair

27  competition and misappropriation claims grounded solely in the copying of a plaintiff's protected

28

expression are preempted.").   As this Court explained in *ByteDance*, while the UCL has three different prongs, each of which must be separately analyzed, "to the extent [plaintiff's claim] is premised on allegations that ByteDance scraped social media content … and subsequently posted [on its owns websites], that claim is preempted by the Copyright Act." *Yu v. ByteDance Inc.*, 2023 WL 5671932, *6 (N.D. Cal. 2023).   Here, as Bright Data explained in its motion to dismiss, X has not pled any "extra element" relating to fraud or any incipient violation of the antitrust laws. Instead, it has only alleged that scraping of publicly available information itself unfair or immoral. But that is not enough to escape pre-emption.   *See Genius Holding*, 2022 WL 710744, at *5 ("Genius alleges that [defendants] accessed its lyrics transcriptions through Genius's **public website**," but "argues that it has alleged that Defendants 'intentionally tried to conceal their misappropriation' after the fact…. [T]hat argument only underscores that Genius has not alleged that Defendants accomplished the alleged misappropriation 'through fraud or deception.'"); *Sleep Sci*, 2010 WL 1881770, at *10 (dismissing claim as pre-empted because plaintiff did not plead fraud "with particularity").

    ***Tortious Interference.***  X's tortious interference claim is also pre-empted to the extent it is based on interference with any alleged *browser-wrap* contract.  X's tortious interference claim requires X to prove that a third-party breached a valid and enforceable contract with X.  If the underlying contract is not enforceable because it is pre-empted by the Copyright Act, then so is any claim based on interference with the pre-empted contract.  *See In re Jackson*, 972 F.3d 25, 44 (2d Cir. 2020) ("we have upheld § 301 preemption as to a variety of state law claims that included an 'extra element,'… including claims of unfair competition, unjust enrichment, conversion, ***tortious interference with contractual relations***, and commercial misappropriation.").  Here, as Bright Data explained, X's tortious interference claim depends on finding that any visitor to its site is automatically bound by browser-wrap.  Such a contract claim is functionally indistinguishable from copyright.

    Where the plaintiff's claim centers on the copying or publication of information, pre-emption applies because the user's "promise" is nothing more than the promise not to violate right

covered by copyright. As the Sixth Circuit explained, "[i]f the promise [in a contract] amounts only to a promise to refrain from reproducing, performing, distributing or displaying the work, then the contract claim is preempted." *Wrench Ltd. Liab. Co. v. Taco Bell Corp.*, 256 F.3d 446, 457–58 (6th Cir. 2001); *see also Genius Holdings*, 2022 WL 710744, at *4 (claim that Google "breache[d] Genius's Terms of Service regarding the copying and reproduction of Genius [c]ontent" is "not qualitatively different from a copyright claim."). Here, visitors to X's site are merely searching the public web. If they are bound by the Terms, their promise amounts to nothing more than a promise not to scrape and sell X's data, exactly the rights governed by copyright.

This stands in direct contrast to *Craigslist Inc. v. 3Taps Inc*., 942 F. Supp. 2d 962, 966-67 (N.D. Cal. 2013). There, the defendants were not bound by browser-wrap, but instead were registered users with accounts and had "affirmatively accepted and agreed to be bound" by the Terms. *Id*. In return, the defendants were given rights *in addition* to mere copying and use of information; they were granted the right to "submit" and "post" classified ads. As the court explained, "[i]f Craigslist alleged a breach of contract based solely on the reproduction of copyrighted content, the claim might be preempted," but Craigslist also provided registered users with additional services "including but not limited to classified advertising, forums, and email forwarding." *Id*. Here, in contrast, at least as it applies to members of the public who are accused merely of copying and republishing public information, there is no additional consideration supporting the contract, and thus, no extra element that removes the claim from pre-emption.

Moreover, even if some browser-wrap claims could escape pre-emption, claims based solely on constructive notice cannot. As Bright Data explained in its separate browser-wrap brief, browser-wrap contracts come in two varieties: (i) those "implied in fact" based on the user's actual knowledge of terms; and (ii) those "implied-in-law" based on the *constructive knowledge* of the user. Regardless of whether the former are pre-empted, the latter clearly are. As the Ninth Circuit explained, in *Best Carpet*, an "implied-in-law contract [] claim … is not materially different from a claim for copyright infringement that requires a plaintiff to prove that the defendant, used, reproduced, copied, or displayed a copyrighted work." 2024 WL 119670, at *8. And as such,

1    "constructive notice" browser-wrap contract claims – and by extension tortious interference with

2    such contracts – are pre-empted.

3    **V.        THE HOT NEWS EXCEPTION.**

4            As explained in Bright Data's Reply brief, a content creator can bring a hot news

5    misappropriation claim if the public "information is highly time-sensitive;" the defendant "is in

6    direct competition with" the plaintiff; it has "free-rid[en] on plaintiff's costly efforts;" and such

7    free-riding would "reduce the incentive of [the plaintiff] to produce the product [such that] its

8    existence or quality would be substantially threatened." ECF 49 at 22 (citing cases). Courts have

9    "repeatedly emphasized the 'narrowness' of the 'hot news' tort exception from preemption."

10   *Genius Holdings*, 2022 WL 710744, at *6 (citing cases). As Bright Data explained, X has not

11   alleged the elements of this doctrine, and as such, cannot avoid pre-emption.

12   **VI.    CONCLUSION.**

13           For the foregoing reasons, in addition to the reasons included in Bright Data's Motion to

14   Dismiss the Amended Complaint, the Court should dismiss X's claims.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: January 17, 2024                    Respectfully submitted,

                                           /s/ *Colin Kass*

                                           Colin R. Kass*
                                           PROSKAUER ROSE LLP
                                           1001 Pennsylvania Ave., N.W.
                                           Washington, D.C. 20004
                                           (202) 416-6890
                                           ckass@proskauer.com

                                           David A. Munkittrick*
                                           PROSKAUER ROSE LLP
                                           Eleven Times Square
                                           New York, New York 10036
                                           (212) 969-3000
                                           dmunkittrick@proskauer.com

                                           Robert C. Goodman (Bar No. 111554)
                                           Lauren Kramer Sujeeth (Bar No. 259821)
                                           ROGERS JOSEPH O'DONNELL, PC
                                           311 California Street, 10th Floor
                                           San Francisco, CA 94104
                                           (415) 956-2828
                                           rgoodman@rjo.com
                                           lsujeeth@rjo.com

                                           Sehreen Ladak (Bar No. 307895)
                                           PROSKAUER ROSE LLP
                                           2029 Century Park East, Suite 2400
                                           Los Angeles, CA 90067-3010
                                           (310) 284-5652
                                           sladak@proskauer.com

                                           *Attorneys for Defendant Bright Data Ltd.*
                                           *Admitted Pro Hac Vice*