DAVID H. HARPER*
*david.harper@haynesboone.com*
JASON P. BLOOM*
*jason.bloom@haynesboone.com*
**HAYNES AND BOONE, LLP**
2801 N. Harwood Street, Suite 2300
Dallas, Texas 75201
Telephone: (214) 651-5000
Facsimile: (214) 651-5940
**Admitted Pro Hac Vice*

JASON T. LAO, SBN 288161
*jason.lao@haynesboone.com*
ANDREA LEVENSON, SBN 323926
*andrea.levenson@haynesboone.com*
**HAYNES AND BOONE, LLP**
600 Anton Boulevard, Suite 700
Costa Mesa, California 92626
Telephone: (949) 202-3000
Facsimile: (949) 202-3001

*Attorneys for Plaintiff*
*X Corp.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

X CORP., a Nevada corporation,

Plaintiff,

vs.

BRIGHT DATA LTD., an Israeli corporation,

Defendant.

Case No. 3:23-cv-03698-WHA

**X-CORP.'S SUPPLEMENTAL BRIEF RE COPYRIGHT PREEMPTION**

Honorable William H. Alsup

Original Hearing: January 10, 2024
No Additional Hearing Scheduled

*Complaint Filed: September 26, 2023*

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ........ 1
II. INTRODUCTION AND BACKGROUND ........ 1
III. ANALYSIS ........ 4
A. Legal Standard ........ 4
B. X Corp.'s Claims are Not Preempted ........ 4
IV. CONCLUSION ........ 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079 (9th Cir.2005) ....................5, 6, 8, 9

*Batra v. PopSugar, Inc.*, No. 18-cv-03752-HSG, 2019 WL 482492 (N.D. Cal. Feb. 7, 2019)....................7, 9

*Best Carpet Values, Inc. v. Google LLC*, No. 5:20-CV-04700-EJD, 2021 WL 4355337 (N.D. Cal. Sept. 24, 2021)....................7

*Bowers v. Baystate Tech., Inc.*, 320 F.3d 1317 (Fed. Cir. 2003)....................5

*Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163 (1999) ....................8

*Coupons, Inc. v. Stottlemire*, No. CV 07-03457 HRL, 2008 WL 3245006 (N.D. Cal. July 2, 2008)....................10

*Craigslist Inc. v. 3Taps Inc.*, 942 F. Supp. 2d 962 (N.D. Cal. 2013) (Judge Charles R. Breyer) ....................2, 5, 9

*Craigslist, Inc. v. Autoposterpro, Inc.*, No. 08-cv-05069-SBA, 2009 WL 890896 (N.D. Cal. Mar. 27, 2009) ....................5

*Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152 (9th Cir. 2012) ....................8

*Ebay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058 (N.D. Cal. 2000) ....................8, 9, 10

*Facebook, Inc. v. ConnectU LLC*, 489 F. Supp. 2d 1087 (N.D. Cal. 2007) ....................11

*Genius Media Grp. Inc. v. Google LLC*, No. C 19-07279 MKB, 2020 WL 5553639 (E.D.N.Y. Aug. 10, 2020), *aff'd sub nom. ML Genius Holdings LLC v. Google LLC*, No. 20-3113, 2022 WL 710744 (2d Cir. Mar. 10, 2022), *cert. denied*, 143 S. Ct. 2658 (2023)....................3, 6

*Grosso v. Miramax Film Corp.*, 383 F.3d 965 (9th Cir. 2004) ....................4

*hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180 (9th Cir. 2022) ....................9

*International News Serv. v. Associated Press*,
248 U.S. 215 (1918)....................10

*Kabehie v. Zoland*,
102 Cal. App. 4th 513, 125 Cal.Rptr.2d 721 (2002)....................5

*Kantemirov v. Goldine*,
No. C05-01362 HRL, 2005 WL 1593533 (N.D. Cal. June 29, 2005)....................7

*Laatz v. Zazzle, Inc.*,
No. 22-CV-04844-BLF, 2023 WL 4600432 (N.D. Cal. July 17, 2023)....................4

*Martin v. Walt Disney Internet Grp.*,
2010 WL 2634695 (S.D. Cal. 2010)....................7

*MDY Indus., LLC v. Blizzard Entm't, Inc.*,
629 F.3d 928 (9th Cir. 2010)....................5

*Media.net Advert. FZ-LLC v. NetSeer, Inc.*,
156 F. Supp. 3d 1052 (N.D. Cal. 2016)....................8

*ML Genius Holdings LLC v. Google LLC*,
No. 20-3113, 2022 WL 710744 (2d Cir. Mar. 10, 2022)....................6

*Nat'l Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc.*,
991 F.2d 426 (8th Cir. 1993)....................5

*Perfect 10, Inc. v. Google, Inc.*,
No. CV 04-9484 AHM (SHX), 2008 WL 4217837 (C.D. Cal. July 16, 2008)....................10

*Pollstar v. Gigmania Ltd.*,
170 F. Supp. 2d 974 (E.D. Cal. 2000)....................11

*ProCD, Inc. v. Zeidenberg*,
86 F.3d 1447 (7th Cir. 1996)....................5

*Ryan v. Editions Ltd. W., Inc.*,
786 F.3d 754 (9th Cir. 2015)....................4

*Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*,
7 F.3d 1434 (9th Cir. 1993)....................8

*Sybersound Recs., Inc. v. UAV Corp.*,
517 F.3d 1137 (9th Cir. 2008)....................4, 8

*Taquino v. Teledyne Monarch Rubber*,
893 F.2d 1488 (5th Cir. 1990)....................5

*Ticketmaster v. Tickets.Com*,
No. CV-99-7654, 2000 WL 525390 (C.D. Cal. Mar. 27, 2000)....................10

*Utopia Provider Sys., Inc. v. Pro-Med Clinical Sys., LLC*,
596 F.3d 1313 (11th Cir. 2010) ....................5

*Valente-Kritzer Video v. Pinckney*,
881 F.2d 772 (9th Cir. 1989) ....................4

*Variant Displays, Inc. v. Absolute Exhibits, Inc.*,
No. SACV1501685CJCJCGX, 2016 WL 7486282 (C.D. Cal. May 31, 2016)....................9

*Wrench LLC v. Taco Bell Corp.*,
256 F.3d 446 (6th Cir. 2001) ....................5

*Yu v. ByteDance Inc.*,
No. 23-CV-03503-SI, 2023 WL 5671932 (N.D. Cal. Sept. 1, 2023) ....................3, 9

**Statutes**

17 U.S.C. § 301(a) ....................4

Cal. Bus. & Prof. Code § 17200 ....................8

Copyright Act....................1, 2, 3, 4, 5, 6, 7, 8, 9, 11

Federal Copyright Act....................8

**Other Authorities**

Cir. Local R. 32.1.1....................6

Report on Legal Protection for Databases 81-83 (August 1997)....................11

Rule 12(g)(2)....................1

## I. PRELIMINARY STATEMENT

X Corp. submits this supplemental brief pursuant to the Court's Order re Hearing on January 10, 2024 (Dkt. 54) and the Court's request at the January 10, 2024 hearing for the parties (*see* Dkt. 55) to address the applicability, if any, of copyright preemption to X Corp.'s claims.[1]

Putting aside the substantive discussion briefly, Bright Data also waived its opportunity to make arguments concerning copyright preemption as a procedural matter. Bright Data did not move to dismiss the FAC on the basis of copyright preemption, and indeed, only included a passing reference in footnotes to the issue of copyright preemption in its discussion of only two X Corp. claims—misappropriation and unjust enrichment.[2]

Notwithstanding waiver, Bright Data's violation of X Corp.'s Terms of Service, unauthorized access and use of the X platform, use of deceptive tools to evade X Corp.'s technical measures, and sale of tools designed to induce other X users to violate their own agreements with X Corp. are not rights contemplated by copyright law, and therefore constitute extra elements beyond the protections of the Copyright Act. In short, none of X Corp.'s claims are preempted by the Copyright Act.

## II. INTRODUCTION AND BACKGROUND

X Corp. filed this lawsuit to protect its X platform from large-scale scraping of information by Bright Data and its customers. This "scraping" involves bombarding X Corp.'s servers with millions of automated requests using deceptive tools to evade X Corp.'s technical measures—not only in clear violation of X Corp's Terms but also impairing the operation of the X platform for legitimate users. Bright Data expressly agreed to X Corp.'s Terms both when it repeatedly used the X platform and when it registered its X account, and is bound by those

---

[1] Although Bright Data only references copyright preemption in passing with respect to X Corp.'s misappropriation and unjust enrichment claim and does not seek dismissal of X Corp.'s breach of contract claim, X Corp. addresses the applicability of preemption to all claims asserted in the First Amended Complaint.

[2] Dkt. 42, fn. 18 ("Indeed, any misappropriation based on the underlying data would be pre-empted by Copyright.") (citing two Second Circuit cases); Dkt. 42, fn. 13 ("Copyright may provide a cause of action, but quasi-contract will not enforce the terms of this fictional (non) meeting of the minds.") Accordingly, Bright Data has waived that ground for dismissal under Rule 12(g)(2).

Terms.[3] Nevertheless, Bright Data offers X Corp. "data sets" for sale,[4] which include "millions of pages and tens of millions of data points" of: "# of followers, verified, account type, links, bio, brand affiliation, posts, images, tweets, shares, location, hashtags, and much more."[5] Bright Data also sells automation software that allows other users to scrape data directly from the X platform in violation of X Corp.'s Terms.[6] It touts its tools' abilities to evade detection, remain anonymous, and evade anti-scraping measures like those employed by X Corp.[7] And it advertises that its tools allow its customers to masquerade as legitimate users "to bot-detection system[s]," such as those used by X Corp.[8]

X Corp. invested substantially in developing its platform, including building out its physical infrastructure and attracting the participation of hundreds of millions of members.[9] But despite these efforts, Bright Data readily admits that much of the data it brazenly scrapes does not fall within the subject matter of copyright.[10] Indeed, X Corp. did not bring a copyright claim.[11] Instead, the majority of the data Bright Data scrapes is not protectable under the Copyright Act (i.e. # of followers, verified, account type, links, bio, brand affiliation, shares, location, and hashtags). And even if some portion of the data were protectable under the Copyright Act, X Corp. does not claim to own any copyright interest in such data (apart from the contents of X's own accounts) and therefore could not assert a copyright claim. This is significant and contrary to the pleadings at issue in:

- *Craigslist Inc. v. 3Taps Inc.*, 942 F. Supp. 2d 962, 976–77 (N.D. Cal. 2013) (Judge

---

[3] Dkt. 36, ¶¶ 39-41.

[4] Bright Data could only have obtained this data by prohibited scraping of the X platform. Dkt. 36, ¶ 52.

[5] Dkt. 36, ¶ 51.

[6] *Id.*, ¶ 55.

[7] Dkt. 36, ¶ 57.

[8] Dkt. 36, ¶ 62.

[9] Dkt. 36, ¶¶ 18. 108.

[10] Bright Data concedes that "[f]acts and figures in a database are not protected by copyright." Dkt. 42 at 30:15-16.

[11] *See e.g.* Dkt. 42 ("Motion to Dismiss") at 1:8-9 ("Nor does X assert any copyright or property interest in this information"); 3:23-24 ("X does not claim any copyright or other ownership interest in this information"); 17:18-19 ("Nor does X assert any copyright or other property interest that prevents public search.")

Charles R. Breyer) (complaint plainly pled a copyright claim, including a copyright interest in the material);

- *Genius Media Grp. Inc. v. Google LLC*, No. C 19-07279 MKB, 2020 WL 5553639 (E.D.N.Y. Aug. 10, 2020), *aff'd sub nom. ML Genius Holdings LLC v. Google LLC*, No. 20-3113, 2022 WL 710744 (2d Cir. Mar. 10, 2022), *cert. denied*, 143 S. Ct. 2658 (2023) ("Plaintiff concedes that the lyrics themselves fall under federal copyright law[.]")
- *Yu v. ByteDance Inc.*, No. 23-CV-03503-SI, 2023 WL 5671932, at *4 (N.D. Cal. Sept. 1, 2023) (Yu's reply brief only addresses the second prong of the test, effectively conceding that online videos fall within the subject matter of the Copyright Act.")

Here, as Bright Data acknowledges, X Corp. does not allege copyright ownership in any of the scraped data and could not because (i) it is largely uncopyrightable and (ii) the Terms do not provide for it. Instead, to protect its investment, X Corp. conditioned access to its platform on a promise not to use automated tools to collect and sell X Corp.'s content and use it for competing commercial purposes. Bright Data accepted that commitment, but then blatantly violated it by creating and selling tools that misrepresent Bright Data and its customers as legitimate X users and that can only be used to violate X Corp.'s Terms, scraping data in violation of those Terms, inducing X users to violate their contracts with X Corp., unjustly enriching Bright Data by violating those Terms, and entering upon and using X Corp.'s platform and servers to the detriment of X Corp. and its legitimate users.

In short, each of X Corp.'s claims contains an "extra element"—taking it outside the scope of copyright preemption, as each claim is premised on Bright Data's deceit and use of unlawful means to scrape X Corp.'s platform. Nothing in the text or history of the Copyright Act suggests that Congress intended to wipe out contract and tort remedies on which businesses have relied for decades to protect activities that are not the subject of copyright law.

## III. ANALYSIS

### A. Legal Standard

"The Copyright Act explicitly preempts state laws that regulate in the area of copyright, stating that all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 ... are governed exclusively by this title." *Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1150 (9th Cir. 2008) (quoting 17 U.S.C. § 301(a)). "Copyright law does not preempt state laws with respect to 'activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106.'" *Id.* (quoting § 301(b)(3)). "Under the Ninth Circuit's two-part test for determining whether a state law claim is preempted by the Copyright Act, the court 'consider[s] whether (1) the work at issue falls within the scope of copyright subject matter, and (2) the law at issue grants rights equivalent to any of the exclusive rights within the scope of copyright.'" *Laatz v. Zazzle, Inc.*, No. 22-CV-04844-BLF, 2023 WL 4600432, at *2 (N.D. Cal. July 17, 2023) (quoting *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 760 (9th Cir. 2015)). "To survive preemption, the state cause of action must protect rights that are qualitatively different from the rights protected by copyright: the complaint must allege an 'extra element' that changes the nature of the action." *Grosso v. Miramax Film Corp.*, 383 F.3d 965, 968 (9th Cir. 2004); *see, e.g., Valente-Kritzer Video v. Pinckney*, 881 F.2d 772, 776 (9th Cir. 1989) (holding fraud claim was not preempted because "misrepresentation is a necessary element of any fraud claim" and "[t]his is not substantially equivalent to a claim for copyright infringement.").

### B. X Corp.'s Claims are Not Preempted

**Breach of Contract**

Although Bright Data has not moved to dismiss X Corp.'s breach of contract claim, out of an abundance of caution in light of the Court's request, X Corp. notes that its breach of contract claim is not preempted by the Copyright Act. Indeed, the essence of X Corp.'s breach of contract claim is that Bright Data breached provisions of the Terms governing access to and permissible uses of the X platform. As the Ninth Circuit has noted, "[m]ost courts have held that

the Copyright Act does not preempt the enforcement of contractual rights." *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1089 (9th Cir.2005); *see also Bowers v. Baystate Tech., Inc.*, 320 F.3d 1317, 1324-25 (Fed. Cir. 2003) (noting that "most courts to examine this issue have found that the Copyright Act does not preempt contractual constraints on copyrighted articles"); *Craigslist, Inc. v. Autoposterpro, Inc.*, No. 08-cv-05069-SBA, 2009 WL 890896, at *2 (N.D. Cal. Mar. 27, 2009) (finding no preemption where "[t]he TOUs contain extra obligations beyond those imposed by the Copyright Act," such as terms stating that users "are not to . . . use automated posting devices"); *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 957 (9th Cir. 2010) (finding "anti-bot" provisions of video game website's terms of use, which prohibits use of automated robots to play the video game, were not preempted); Nimmer on Copyright § 1.15 (2022) (noting that so long as "a breach-of-contract cause of action alleges more than simply reproduction (or adaptation, distribution, etc.) of a copyrighted work" it should survive preemption).[12]

In *Craigslist Inc. v. 3Taps., Inc.*, the court found no preemption because, unlike the "bare substitute for copyright protection" in *Kabehie v. Zoland*, 102 Cal. App. 4th 513, 526, 125 Cal.Rptr.2d 721 (2002), the plaintiff alleged breach of terms "governing access to and permissible uses of [plaintiff's] website." *Craigslist Inc. v. 3Taps Inc.*, 942 F. Supp. 2d 962, 976-77 (N.D. Cal. 2013). Here, as in *Craigslist*, X Corp. alleges that Bright Data breached the Terms governing access and use of the X platform by circumventing technological safeguards, impersonating legitimate user accounts, and harvesting data through automated means that are

---

[12] Indeed, every federal court of appeals to have issued a published opinion on the subject has agreed that the Copyright Act does not preempt a contract claim because of the extra elements of contract formation and the making of a legally binding promise. *Utopia Provider Sys., Inc. v. Pro-Med Clinical Sys., LLC*, 596 F.3d 1313, 1327 (11th Cir. 2010); *Bowers v. Baystate Techs., Inc.*, 320 F.3d 1317, 1324-25 (Fed. Cir. 2003) (collecting cases); *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447 (7th Cir. 1996); *Nat'l Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc.*, 991 F.2d 426, 431 (8th Cir. 1993); *Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1501 (5th Cir. 1990). Even the Sixth circuit, which holds that a breach-of-contract claim is generally preempted if the only enforceable obligation imposed is to not copy material, makes an exception if the contract imposes some additional element that makes the contract claim qualitatively different from a copyright claim. *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 459 (6th Cir. 2001).

expressly prohibited. *See* Dkt. 36, ¶ 70 ("Defendant has repeatedly violated the Terms, including by (i) accessing the X platform through automated means without specific authorization from X Corp.; (ii) scraping data from the X platform without authorization; (iii) selling tools that enable others, including X users, to access the X platform by automated means and to scrape data; (iv) selling proxy services that enable others, including X users, to access the X platform by automated means and evade X Corp.'s anti-automation and anti-scraping tools; and (v) selling data that Defendant scraped from the X platform."); ¶¶ 73-75 ("Defendant has breached, and continues to breach, X Corp.'s Terms by [accessing the platform through unauthorized means and scraping data from the platform / selling tools that allow other X users to access the platform by automated means and scrape data, and by selling proxy services that allow the same / selling data that Defendant has scraped from X Corp.'s platform.]") Such allegations constitutes an "extra element" beyond the protections of the Copyright Act and are not preempted.

In *Genius Media Grp. Inc. v. Google, LLC*, the court found that copyrighted song lyrics the plaintiff compiled were essentially a derivative work covered by copyright, and notably, that the terms forming the basis of its breach of contract claim merely prohibited republishing those lyrics. *Genius Media Group Inc. v. Google LLC*, No. 19-CV-7279 (MKB), 2020 WL 5553639, at *9 (E.D.N.Y. Aug. 10, 2020), aff'd sub nom. *ML Genius Holdings LLC v. Google LLC*, No. 20-3113, 2022 WL 710744 (2d Cir. Mar. 10, 2022).[13] Unlike in *Genius*, the data at issue here is generally not copyrightable, and furthermore the Terms prohibit the use of automated means to bypass security features—an extra element. *See Altera*, 424 F.3d at 1090 (prohibition on specific use of software was an extra element). Thus, X Corp.'s breach of contract claim is not preempted.

**Tortious interference**

As with the breach of contract claim, Bright Data does not assert that X Corp.'s tortious interference claims are preempted by copyright law. And while preemption can bar some tortious interference claims, "to the extent that contract interference emerges from activity other

[13] *Genius Media* was affirmed by a summary order of no precedential effect. *See* 2d Cir. Local R. 32.1.1.

than unauthorized reproduction, distribution, performance, etc., then the elements are distinct and preemption should not lie." 1 Nimmer on Copyright § 1.15 (2023). Bright Data's interference with others' contracts by designing and selling products that enable other X users to violate their contracts with X Corp. is distinct from copyright claims for the same reasons as X Corp.'s breach of contract claim (i.e. the customers' breaches of the Terms governing access and use of the X platform by circumventing technological safeguards, impersonating legitimate user accounts, and harvesting data through automated means that are expressly prohibited is the "extra element" that takes this claim outside of the Copyright Act). Thus, the tortious interference claim is similarly not preempted. *See Batra v. PopSugar, Inc.*, No. 18-cv-03752-HSG, 2019 WL 482492, at *5 (N.D. Cal. Feb. 7, 2019) (finding UCL claim not preempted when based on contractual interference predicate offense).

**Unjust enrichment**

Without reasoning, Bright Data briefly mentions in a footnote of its motion to dismiss that X Corp. may have a copyright claim, but not an unjust enrichment claim. "Unjust enrichment claims are not categorically preempted by the Copyright Act." *Martin v. Walt Disney Internet Grp*., 2010 WL 2634695, at *7 (S.D. Cal. 2010). Unlike the Copyright Act, a claim of unjust enrichment requires a showing of: (1) a receipt of a benefit; and (2) unjustified retention of that benefit at another's expense. *Kantemirov v. Goldine*, No. C05-01362 HRL, 2005 WL 1593533, at *5 (N.D. Cal. June 29, 2005). And courts have rejected preemption over an unjust enrichment claim where "the content of Plaintiffs' websites and whether that content enjoys copyright protection are irrelevant to Plaintiffs' claim." *Best Carpet Values, Inc. v. Google LLC*, No. 5:20-CV-04700-EJD, 2021 WL 4355337, at *8 (N.D. Cal. Sept. 24, 2021). And here, in alleging the basis for its unjust enrichment claim (and indeed all claims), X Corp. did not rely on any copyright claim. Instead, X Corp.'s theory of relief is based on Bright Data's unauthorized access and use of X Corp.'s services, platform, and computer network without authorization to scrape data. Moreover, to be preempted, the "data" would have to refer to the copyrighted material, as opposed to the data at issue here. These allegations amount to an unjustified profiting scheme that is "qualitatively different from a copyright claim." *Best Carpet*

*Values, Inc*., 2021 WL 4355337, at * 8. X Corp.'s claim is not preempted by the Copyright Act.

**UCL**

Bright Data does not assert that X Corp.'s UCL claim is preempted by copyright law. And indeed, state law UCL claims are "not within the rights protected by the federal Copyright Act," and therefore are not preempted by the Copyright Act. *Altera Corp*., 424 F.3d at 1089. The UCL prohibits "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Unlawful acts are 'anything that can properly be called a business practice and that at the same time is forbidden by law ... be it civil, criminal, federal, state, or municipal, statutory, regulatory, or court-made,' where court-made law is, 'for example a violation of a prior court order.' " *Sybersound Records, Inc. v. UAV Corp*., 517 F.3d 1137, 1151-52 (9th Cir. 2008) (internal citations omitted). "Unfair acts among competitors means 'conduct that threatens an incipient violation of an antitrust law, or violates the spirit or policy of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.' " *Id.* at 1152 (quoting *Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co*., 20 Cal.4th 163, 187 (1999)). "Finally, fraudulent acts are ones where members of the public are likely to be deceived." *Id.* "Because the statute is written in the disjunctive, it is violated where a defendant's act or practice violates any of the foregoing prongs." *Davis v. HSBC Bank Nev., N.A*., 691 F.3d 1152, 1168 (9th Cir. 2012). "A determination of whether the Copyright Act preempts a UCL claim 'requires analysis of each theory of unfair competition to determine whether it contains the necessary qualitatively different extra element distinguishing it from copyright ... protection.' " *Media.net Advert. FZ-LLC v. NetSeer, Inc*., 156 F. Supp. 3d 1052, 1074 (N.D. Cal. 2016) (quoting *Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc*., 7 F.3d 1434, 1440 (9th Cir. 1993)).

Bright Data's conduct explicitly consists of data scraping, which courts have suggested constitutes an invasion of property rights, including trespass to chattel (as explained below). The property interest violated has nothing to do with copyrighted material, but rather the possessory interest in X Corp.'s computer systems and servers, which Bright Data violated. *See Ebay, Inc*., 100 F. Supp. 2d at 1070. Further, Bright Data's breach of the Terms constitutes a separate basis

for the UCL claim. *Yu v. ByteDance Inc.*, No. 23-CV-03503-SI, 2023 WL 5671932, at *5–6 (N.D. Cal. Sept. 1, 2023) ("the balance of the first cause of action – specifically the allegations about the bot scheme and the allegations that ByteDance scrapes content from competitor websites in violation of those competitors' terms of use – is not preempted because those allegations do not assert rights equivalent to an action for copyright infringement.") The FAC also alleges that Bright Data deceived X Corp. into providing it access to, and information from, the X Corp. computer network by deliberately misrepresenting the requests sent to the X platform, posing as legitimate X users, and selling IP proxies. Dkt. 36, ¶ 104. That theory involves the additional element of fraud or misrepresentation that is not a part of a copyright claim. *See Firoozye*, 153 F. Supp. 2d at 1131 (holding UCL claim not preempted to the extent it was based on misrepresentation); *see also Variant Displays, Inc. v. Absolute Exhibits, Inc.*, No. SACV1501685CJCJCGX, 2016 WL 7486282, at *3 (C.D. Cal. May 31, 2016) ("The Court is satisfied that the misrepresentations Variant alleges sufficiently state an "extra element" beyond the Copyright Act such that Variant's UCL claim is not preempted.") These are all "extra elements" that make the determination of the UCL claim "qualitatively different" than the rights protected by copyright law. *Altera Corp.*, 424 F.3d at 1089; *see also Batra v. PopSugar, Inc.*, No. 18-cv-03752-HSG, 2019 WL 482492, at *5 (N.D. Cal. Feb. 7, 2019) (finding UCL claim not preempted when based on contractual interference predicate offense). Accordingly, X Corp.'s UCL claim is not preempted.

**Trespass**

Bright Data also does not assert that X Corp.'s trespass claim is preempted by copyright law. And indeed, X Corp.'s trespass to chattels claim is not preempted. *See Craigslist Inc.*, 942 F. Supp. 2d at 976 (finding defendants' unauthorized use of Craiglist's website through automated data mining could constitute trespass to chattel); *Ebay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1070 (N.D. Cal. 2000) (granting preliminary injunction because "eBay has made a strong showing that it is likely to prevail on the merits of its assertion that [defendant's] use of eBay's computer system was an unauthorized and intentional interference with eBay's possessory interest."); *cf. also hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1201 n.21 (9th

Cir. 2022) ("[I]t may be that web scraping exceeding the scope of the website owner's consent gives rise to a common law tort claim for trespass to chattels, at least when it causes demonstrable harm."). Specifically, X Corp. asserts a right to exclude others from entering onto and using X Corp.'s technological infrastructure, including its software and servers in excess of the permissions given. This is not equivalent to any rights protected by copyright. *See Coupons, Inc. v. Stottlemire*, No. CV 07-03457 HRL, 2008 WL 3245006, at *6 (N.D. Cal. July 2, 2008) ("Coupons asserts its right not to have Stottlemire continue to engage in unauthorized interactions with its coupon printing system, and not to continue to obtain unauthorized coupon prints. The trespass claim is not preempted."); *see also eBay*, 100 F. Supp. 2d at 1072 ("[t]he right to exclude others from using physical personal property is not equivalent to any rights protected by copyright and therefore constitutes an extra element that makes trespass qualitatively different from a copyright infringement claim.") (rejecting *Ticketmaster v. Tickets.Com*, No. CV-99-7654, 2000 WL 525390 (C.D. Cal. Mar. 27, 2000)).[14] Accordingly, X Corp.'s trespass to chattels claim is not preempted.

**Misappropriation**

Bright Data makes a passing reference to copyright preemption as it relates to X Corp.'s misappropriation claim.[15] But X Corp.'s misappropriation claim is not preempted, as it seeks to protect content that is not the subject matter of copyright. *Perfect 10, Inc. v. Google, Inc.*, No. CV 04-9484 AHM (SHX), 2008 WL 4217837, at *9 (C.D. Cal. July 16, 2008). For example, courts have long held that misappropriation claims dealing with time-sensitive information, or "hot news," are not preempted. *See, e.g., International News Serv. v. Associated Press*, 248 U.S. 215, 240-41 (1918). And in California, the "hot news" doctrine applies more broadly to anything the "plaintiff invested substantial time, skill or money in developing." *U.S. Golf Ass'n*, 69 Cal. App. 4th at 618. In *U.S. Golf Association*, the "property" was a published system and formulas

---

[14] In *Ticketmaster Corp. v. Tickets.com, Inc.*, the court dismissed a claim for trespass as preempted. 2000 WL 525390, *2-4 (C.D. Cal.). After the decision in *eBay*, the court reconsidered its trespass ruling and allowed the claim to go forward. 2000 WL 1887522, *3 (C.D. Cal. 2000).

[15] *See* Dkt. 42 at fn. 18 ("Indeed, any misappropriation based on the underlying data would be pre-empted by Copyright.") (citing two Second Circuit cases).

for determining golf handicaps—not subject to patent, copyright, trademark, or trade secret protection. *See id.* at 618–19. The formulas were freely available to "any entity …, free of charge, for the purpose of providing handicap computation services or software to any authorized public or private golf club or association utilizing the USGA Handicap System," subject to conditions such as publicly posting scores and peer review of the results. *Id.* at 613. When the defendant took the formulas and built software to provide computational golf handicap services without meeting the conditions, the Court of Appeal found actionable misappropriation. *Id.* at 614–15.

Other courts have held that misappropriation claims are not preempted under similar circumstances. *See Pollstar v. Gigmania Ltd.*, 170 F. Supp. 2d 974, 979–80 (E.D. Cal. 2000) (plaintiff stated a claim for hot news misappropriation where it asserted that defendant "copied false concert information" from plaintiff's website for profit); *Facebook, Inc. v. ConnectU LLC*, 489 F. Supp. 2d 1087, 1092 (N.D. Cal. 2007) ("The fact that the Facebook website may contain works of authorship, however, does not automatically mean that the entire site is a work of authorship within the subject matter of the Copyright Act."); *see also* U.S. Copyright Office, Report on Legal Protection for Databases 81-83 (August 1997) (recognizing the "hot news" misappropriation doctrine as one method for the protection of database material). Accordingly, X Corp.'s misappropriation claim is not preempted.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, each of X Corp.'s claims are well-pled and fall outside of the purview of copyright law. Any tangential connections to copyrightable material are high fact-sensitive and should not be resolved on a motion to dismiss.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Dated: January 17, 2024

Respectfully submitted,

**HAYNES AND BOONE LLP**

By: /s/Jason T. Lao
David H. Harper*
david.harper@haynesboone.com
Jason P. Bloom*
jason.bloom@haynesboone.com
2801 N. Harwood Street
Suite 2300
Dallas, Texas 75201
Telephone: (214) 651.5000
Telecopier: (214) 651.5940
* *Admitted Pro Hac Vice*

Jason T. Lao
jason.lao@haynesboone.com
Andrea Levenson
andrea.levenson@haynesboone.com
600 Anton Boulevard, Suite 700
Costa Mesa, California 92626
Telephone: (949) 202-3000
Facsimile: (949) 202-3001

*Attorneys for Plaintiff X Corp.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this day, a true and correct copy of the foregoing document was served by filing the same via the Court's CM/ECF system, which will provide notice of the filing of same to all counsel of record.

Date: January 17, 2024

*/s/Jason T. Lao*
Jason T. Lao