UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

X CORP.,

        Plaintiff,

  v.

BRIGHT DATA LTD.,

        Defendant.

No. C 23-03698 WHA

**ORDER RE PERSONAL JURISDICTION**

Thanks to all counsel for the supplemental briefing requested at the hearing on the motion to dismiss. A forthcoming order will take up the merits of that motion. This order dispenses with its jurisdictional challenge. For the following reasons, the motion to dismiss plaintiff's tort claims for lack of personal jurisdiction is **DENIED**.

Plaintiff X Corp. owns and operates the social media platform X, formerly known as Twitter. It is organized under the laws of Nevada with its principal place of business in California, just a few blocks away at 1355 Market Street in San Francisco (FAC ¶ 4). Defendant Bright Data Ltd. sells data it scrapes from websites and social media platforms, as well as tools and services to help its customers scrape that data themselves, *i.e.*, use automated means to collect data from such websites and platforms (FAC ¶¶ 6, 28). Bright Data is incorporated in Israel, where its principal place of business is located, though it has maintained and advertised a sales office at L415 Mission Street in San Francisco, about a mile and a half away (FAC ¶¶ 5, 10–11 (citing Exhs. A–B)).

1         In July 2023, X Corp. filed this lawsuit against Bright Data. According to X Corp.,
2    Bright Data scrapes and sells millions of records from X in violation of the Terms of Service to
3    which Bright Data is bound as an X user (FAC ¶ 1). X Corp. alleges that Bright Data also
4    facilitates and induces other X users to violate their agreements with X Corp. by selling them
5    tools and services that target data on X, and that Bright Data has committed a series of torts
6    (*ibid.*). X Corp. asserts claims for (I) breach of contract, (II) tortious interference with
7    contract, (III) unjust enrichment, (IV) trespass to chattels, (V) violation of California Business
8    and Professions Code Section 17200, and (VI) misappropriation.

         Bright Data broadly counters that its actions are lawful because the data that it scrapes
and provides tools and services for others to scrape is entirely public, which neither subjects it
to personal jurisdiction in California nor impinges on X Corp.'s property rights (Br. 1). It
moves to dismiss X Corp's tort claims, counts II–VI, for lack of personal jurisdiction under
Rule 12(b)(2) and for failure to state a claim under Rule 12(b)(6).

         Again, only personal jurisdiction will be addressed herein. This order follows full
briefing and oral argument.

         As our court of appeals has explained:

> Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate. Where, as here, the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. In such cases, we only inquire into whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction. Although the plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (cleaned up).
Here, where the plaintiff has supplied no affidavits, we look to the plaintiff's pleadings.

         In its first amended complaint, X Corp. asserts two bases for personal jurisdiction over its
tort claims: (1) Bright Data's agreement to a forum-selection clause that ostensibly waived any
personal jurisdiction challenge when it agreed to X Corp.'s Terms of Service and registered an
account on X; and (2) intentional acts by Bright Data that were ostensibly aimed at California

2

and this district, and that Bright Data knew would cause harm in California and this district (FAC ¶¶ 8–9; Opp. 6). Perhaps reasonable minds could disagree over whether Bright Data, in assenting to such a contract, waived a personal jurisdiction challenge to the tort claims at issue, which do not presuppose a contractual relationship between the parties and are, according to Bright Data, insufficiently related to such a contract. But that discussion is not called for. There is no question that Bright Data has sufficient contacts with California and this district such that these claims should proceed in this district court. Bright Data is hardly the non-resident defendant that specific personal jurisdiction aspires to insulate.

In brief, a district court applies a three-part test to assess whether a non-resident defendant has sufficient contacts with the forum state for showing specific personal jurisdiction. For claims sounding in tort: (1) the defendant must purposefully direct activities at the forum or a resident thereof; (2) the claims must be ones that arise out of or relate to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice. *See Picot v. Weston*, 780 F.3d 1206, 1211–12 (9th Cir. 2015) (citing *Schwarzenegger*, 374 F.3d at 802–03). All three parts are satisfied here.

With respect to purposeful direction, a district court applies a nestled three-part test, considering whether a non-resident defendant (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Id*. at 1214 (citing *Schwarzenegger*, 374 F.3d at 803). Our defendant indisputably scrapes and provides tools and services for others to scrape plaintiff's social media platform, among others. As such, Bright Data has undertaken numerous intentional acts, such as selling scraped data (that it scrapes), scraping tools (that enable customers to scrape), and IP address proxies (that enable customers to use stand-in IP addresses to evade anti-scraping measures). *See, e.g.*, *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1091 (9th Cir. 2023) (observing that selling products on an interactive website is an intentional act); *see also Will Co. v. Lee*, 47 F.4th 917, 922 (9th Cir. 2022) (observing that operating a website and purchasing a domain name and domain privacy services are intentional acts).

1    Moreover, Bright Data has undertaken numerous intentional acts aimed at California and
2    this district. Of course, "mere passive operation of a website is insufficient to demonstrate
3    express aiming." *Will Co.*, 47 F.4th at 922. But that is not what we have here. Note that
4    Bright Data has directed potential customers interested in the data, tools, and services at issue
5    to a sales office in downtown San Francisco as recently as October 2022 (FAC ¶¶ 10–11
6    (citing Exhs. A–B)); has located many members of its business development and sales team in
7    the Bay Area, including its Chief Revenue Officer and Global Head of Presales (FAC ¶ 12
8    (citing Exh. C)); and has advertised and sold California IP address proxies that allow
9    customers to "[o]vercome all blocks all of the time in California" (FAC ¶ 13 (citing Exh. D)).
10   What's more, it has directly targeted a forum resident, plaintiff, by selling data scraped from
11   that forum resident's platform (FAC ¶¶ 50–51 (citing Exh. E)); a "Scraping Browser" that
12   Bright Data markets for scraping that forum resident's platform (FAC ¶ 60 (citing Exh. G)); as
13   well as tools specifically designed to scrape data from that forum resident's platform: "Twitter
14   Scraper," "Twitter Profile Scraper," "Twitter Image Scraper," and "Twitter Followers Scraper"
15   (FAC ¶ 58 (citing Exhs. F–I)). This order agrees with X Corp. that Bright Data was on notice
16   of X Corp.'s residency in California by virtue of agreeing to its Terms (to say nothing of Bright
17   Data being a sophisticated tech industry player with a neighboring sales office). Surely Bright
18   Data has done "something more" than passively operate a website accessed by California
19   residents, as required. *See Will Co.*, 47 F.4th at 922. It has "specifically 'appeal[ed] to . . . an
20   audience in a particular state'" and "'actively target[ed]' the forum state." *Briskin v. Shopify,*
21   *Inc.*, 87 F.4th 404, 419–20 (9th Cir. 2023) (quoting *Mavrix Photo, Inc. v. Brand Techs., Inc.*,
22   647 F.3d 1218, 1231 (9th Cir. 2011); *Will Co.*, 47 F.4th at 923). Here, there is a "strong, direct
23   connection between the defendant's forum-related activities and the plaintiff's claims." *Id*.
24   at 414.
25   And, X Corp. has made a prima facie case that Bright Data knew numerous intentional
26   acts it aimed at California caused X Corp. harm in California. Bright Data's own website has
27   explicitly advertised Bright Data's ability to circumvent X Corp.'s technological safeguards,
28   "[u]tiliz[ing] proprietary technology to unlock sites," including with "CAPTCHA solving" and

4

"automatically learn[ing] to bypass bot-detection systems as they adapt, saving you the hassle and cost" (FAC ¶¶ 59, 61).  Whether doing so actually confers liability on Bright Data or causes X Corp. harm are important questions for a later date.  For our purposes here, it is clear that the effect on X Corp. and the California location where it would be felt were foreseeable.  *See Burri Law PA v. Skurla*, 35 F.4th 1207, 1213, 1215–17 (9th Cir. 2022).

Bright Data does not appear to argue that the remaining second and third parts of the specific personal jurisdiction test are not satisfied.  They are.  Here, X Corp.'s tort (and contract) claims plainly arise out of Bright Data's sales of scraped data, scraping tools, and IP address proxies, a portion of which were deliberately made to California residents and conceivably harmed a California plaintiff.  And, it is only reasonable that a company whose very business is built on scraping data from California companies — as well as making sales to and impersonating California consumers — can be sued in California.  What would be unreasonable would be depriving those California companies of their opportunity to sue Bright Data outside of Israel, over 7,000 miles away, as Bright Data recommends.  As it stands, no such deprivation is necessary.  Bright Data correctly observes that this was a facial challenge and that, if discovery somehow alters the analysis, it may present a factual challenge (Br. 5 n.4).  This seems unlikely, however.

For the foregoing reasons, the motion to dismiss X Corp.'s tort claims for lack of personal jurisdiction is **DENIED**.  An order as to the remaining arguments in the motion to dismiss shall issue soon.

**IT IS SO ORDERED.**

Dated:  February 5, 2024.

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE