1    Colin R. Kass (*pro hac vice*)
     PROSKAUER ROSE LLP
2    1001 Pennsylvania Ave., N.W.
     Washington, D.C. 20004
3    (202) 416-6890
     ckass@proskauer.com
4
5    David A. Munkittrick (*pro hac vice*)
     PROSKAUER ROSE LLP
     Eleven Times Square
6    New York, New York 10036
     (212) 969-3000
7    dmunkittric@proskauer.com
8    *Attorneys for Defendant Bright Data Ltd.*
     *Additional counsel listed on signature page*
9

10              **UNITED STATES DISTRICT COURT**
               **NORTHERN DISTRICT OF CALIFORNIA**
11

12   X Corp.,                          Case No.  23-cv-03698-WHA

13                  Plaintiff,

14          v.                         Hon. William H. Alsup
                                       Courtroom 12 – 19th Floor
15   BRIGHT DATA LTD.                  March 28, 2024, 8:00 a.m.

16
                    Defendant
17

18

19         **BRIGHT DATA'S MOTION FOR INTERLOCUTORY APPEAL OF**
               **THE COURT'S PERSONAL JURISDICTION ORDER**
20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION

PLEASE TAKE NOTICE that the hearing on Bright Data's Motion for Interlocutory Appeal of the Court's Personal Jurisdiction Order (ECF 67) will take place on March 28, 2024 at 8:00 am.

The motion seeks certification of the Court's February 5, 2024 Order Regarding Personal Jurisdiction (ECF 67) ("Order") for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether *Briskin v. Shopify, Inc.*, 87 F.4th 404 (9th Cir. 2023), established a new test or framework for assessing personal jurisdiction over global internet service providers in diversity cases.

2. Whether, under *Shopify*'s new jurisdictional test, a court must first narrow the jurisdictional allegations under consideration to those "forum-specific" facts that bear a "direct nexus" to the specific claims asserted, and then determine whether those facts exhibit a "prioritization" of the forum, or whether it suffices to find that the plaintiff has alleged "something more" than merely passively operating a website accessed by California residents.

3. Whether resolution of this controlling issue will materially advance the ultimate termination of the litigation because the facts, circumstances, and legal issues relating to X's tort claims are materially different from its breach of contract claim.

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION. ........................................................................................................... 1

II.   *SHOPIFY* ESTABLISHED A NEW TWO-PART TEST GOVERNING A
      DIVERSITY COURT'S PERSONAL JURISDICTION OVER GLOBAL
      INTERNET PROVIDERS........................................................................................... 3

      A.    *Shopify*'s New Two-Part Test ......................................................................3

      B.    X's Tort Claims Do Not Satisfy *Shopify*'s Two-Part Test........................7

III.  THE COURT'S ORDER SATISFIES ALL THE REQUIREMENTS FOR
      INTERLOCUTORY APPEAL ................................................................................. 11

      A.    There are Substantial Grounds for Difference of Opinion on the
            Implications of *Shopify*. ..............................................................................11

      B.    An Immediate Appeal Would Materially Advance the Ultimate
            Termination of the Litigation.......................................................................13

IV.   CONCLUSION........................................................................................................... 15

1

**TABLE OF AUTHORITIES**[1]

2

CASES                                                                    PAGES

3

*Al Maqaleh v. Gates*,
4      620 F. Supp. 2d 51 (D.D.C. 2009) ...................................................................13

5  *Alhathloul v. DarkMatter Grp.*,
        2024 WL 493630 (D. Or. 2024).......................................................................1

6
   *Ass'n of Irritated Residents v. Fred Schakel Dairy*,
7       634 F. Supp. 2d 1081 (E.D. Cal. 2008)............................................................13

8  *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
        874 F.3d 1064 (9th Cir. 2017) ............................................................................7
9

10 *Bikram Yoga Coll. of India & Fitness, L.P. v. Raiz*,
        2012 WL 13012446 (C.D. Cal. 2012)...............................................................13

11
   *Briskin v. Shopify, Inc.*,
12      87 F.4th 404 (9th Cir. 2023) ................................................................... *passim*

13 *Bryan v. UPS., Inc.*,
        307 F. Supp. 2d 1108 (N.D. Cal. 2004), (Alsup, J.) ........................................11
14

15 *Doe v. Fullstory, Inc.*,
        2024 WL 188101 (N.D. Cal. 2024) ..........................................................1, 5, 12
16
   *Doe v. WebGroup Czech Republic, A.S.*,
17      2024 WL 609500 (9th Cir. 2024) ......................................................................6

18 *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
        592 U.S. 351 (2021)............................................................................................6
19

20 *Gilmore v. Jones*,
        2019 WL 4417490 (W.D. Va. 2019) .................................................................13

21
   *Herbal Brands, Inc. v. Photoplaza, Inc.*,
22      72 F.4th 1085 (9th Cir. 2023) ...........................................................................12

23 *Jaco v. WinCo Holdings, Inc.*,
        2019 WL 2615739 (E.D. Cal. 2019).............................................................13, 14
24

25 *Kauffman v. Home Depot, Inc.*,
        2024 WL 221434 (S.D. Cal. 2024) ..............................................................1, 4, 12

26

27

28

---

[1] Unless otherwise specified, all emphasis added, initial capitalizations conformed without brackets, and internal citations and quotation marks omitted.

*Moda Assurance Co. v. New Life Treatment Ctr.,*
    2024 WL 181830 (D. Alaska 2024).......................................................................13

*Reese v. BP Expl. (Alaska) Inc.,*
    643 F.3d 681 (9th Cir. 2011) .....................................................................12, 13

*Sessa v. Ancestry.com Operations Inc.,*
    2024 WL 195995 (D. Nev. 2024) .............................................................1, 10, 11

*Silbersher v. Allergan Inc.,*
    2021 WL 292244 (N.D. Cal. 2021) .....................................................................13

*United States v. Cath. Health Sys. of Long Island Inc.,*
    521 F. Supp. 3d 265 (E.D.N.Y. 2021) ..................................................................14

*United States v. Woodbury,*
    263 F.2d 784 (9th Cir. 1959) .............................................................................13

*Walden v. Fiore,*
    571 U.S. 277 (2014)..........................................................................................7, 8

**STATUTES**

28 U.S.C. § 1292(b) ..................................................................................3, 11, 13

**OTHER AUTHORITIES**

2 Fed. Proc., L. Ed. § 3:219 (2023)..............................................................................13

Wright & Miller, 16 Fed. Prac. & Proc. Juris. § 3930 *Criteria for Permissive
    Appeal* (3d ed. 2022) .............................................................................11, 12, 13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.   INTRODUCTION.

Bright Data respectfully requests that the Court certify for immediate appeal its Order denying Bright Data's motion to dismiss X's tort claims for lack of personal jurisdiction (ECF 67). Since the Ninth Circuit's landmark decision in *Briskin v. Shopify, Inc*., 87 F.4th 404 (9th Cir. 2023) there has been a growing split among the District Courts concerning its application to global internet providers like Bright Data.   While this Court asked whether "Bright Data has done 'something more' than passively operate a website accessed by California residents," ECF 67 at 4, a number of courts have held that *Shopify* fundamentally changed the personal jurisdiction analysis, imposing significant limits on power of diversity courts to regulate interstate internet providers.   As one court observed a few weeks ago:

> "The Ninth Circuit's reasoning in [*Shopify*] '***creates a significant shift***' in the Court's analysis because [*Shopify*] describes a personal jurisdiction test to be applied in scenarios such as this one…"

> "Plaintiffs respond that [*Shopify*] is not a change in controlling law because it merely applies existing law to it a matter of first impression…. [But] the Court finds that [*Shopify*] did not merely clarify or confirm existing law.  Rather, the Court agrees with Defendants that [*Shopify*] expanded on the application of personal jurisdiction jurisprudence as it applies to website-based contacts and established a clear test."

*Sessa v. Ancestry.com Operations Inc.*, 2024 WL 195995, *2-3 (D. Nev. 2024) (granting motion to reconsider, and finding, contrary to its pre-*Shopify* decision, that it did not have personal jurisdiction over Ancentry.com); *see also Kauffman v. Home Depot, Inc.,* 2024 WL 221434, *2 (S.D. Cal. 2024) (finding that there is no jurisdiction over Home Depot noting that *Shopify* limited prior precedent dealing with the sale of products through "interactive website[s]" to the sale of "***physical***" products); *Doe v. Fullstory, Inc.*, 2024 WL 188101, *11 (N.D. Cal. 2024) (holding the argument that defendant was "expressly aiming [its] conduct to California because [it] processed and analyzed … data collected from Class Members in California, and returned that data … to Favor, who Fullstory knew was based in California" was "foreclosed" by *Shopify*); *cf. Alhathloul v. DarkMatter Grp.*, 2024 WL 493630, *3 (D. Or. 2024) (limiting jurisdictional discovery to the "facts relevant to the purposeful direction framework outlined in [*Shopify*]," which is "perhaps the

first federal appellate opinion in this country addressing the personal jurisdiction inquiry in cases ... based on the extraction of ... data.").

Specifically, under *Shopify*'s new, two-part test, courts are directed to first narrow the focus on only those facts that bear a direct nexus (*i.e.*, give rise to) the tort claim, and then determine whether those facts exhibit a "forum-specific focus," by distinguishing the defendants' forum-related activities from its general activities in other jurisdictions.  87 F.4th at 419.  As we discussed in our underlying motion, and below, most of the facts X relies on fail the first test, and the remaining facts fail the second.  Respectfully, we believe the Court did not read *Shopify* as imposing a new jurisdictional test.

We believe this is a controlling question of law for which there may be substantial difference of opinion – specifically:

> Whether, under *Shopify*'s new jurisdictional test, a court must first narrow the jurisdictional allegations under consideration to those "forum-specific" facts that bear a "direct nexus" to the specific claims asserted, and then determine whether those facts exhibit a "prioritization" of the forum, or whether it suffices to find that the plaintiff has alleged "something more" than merely passively operating a website accessed by California residents.

Resolution of this issue, at this time, will materially advance the litigation, and avoid potentially wasteful litigation.  If *Shopify*'s new test does apply to X's tort claims, it has the potential for substantially streamlining this case because X's tortious interference claims focus largely on different facts, namely Bright Data's provision of proxy services to its customers, rather than Bright Data's own scraping activities, which is the focus of X's breach of contract claim. Resolution of the effect of *Shopify* is also an important question that warrants the Ninth Circuit's guidance because – fundamentally – the issue concerns the power of a diversity court to dictate what general purpose internet services a global internet provider can offer, not just in California, but potentially worldwide.[2]

---

[2] In its Order, the Court expressed concern about the fairness of requiring X to sue in Israel, though it too operates everywhere.  Bright Data notes that Bright Data also has a U.S. subsidiary, Bright Data, Inc., which is incorporated in Delaware and has a New York office.  Bright Data did not raise BDI at the hearing because BDI is not itself a defendant, and Bright Data does not believe

For these reasons, the Court should certify its Order denying Bright Data's motion to dismiss for immediate appeal pursuant to 28 U.S.C. § 1292(b).  Below, we discuss *Shopify*'s new, two-part test, followed by application of the § 1292(b) factors.

**II.     *SHOPIFY* ESTABLISHED A NEW TWO-PART TEST GOVERNING A DIVERSITY COURT'S PERSONAL JURISDICTION OVER GLOBAL INTERNET PROVIDERS.**

>   ***A.     Shopify's New Two-Part Test***

In a decision of "first impression," *Shopify* held that, "[w]hen a company operates a nationally available e-commerce payment platform and is indifferent to the location of end-users, the extraction and retention of consumer data [the alleged unlawful activity], without more, does not subject the defendant to specific jurisdiction in the forum where the online purchase was made."  87 F.4th at 409.  The Ninth Circuit said:

>   "Driving our decision-making in this area has been the need to draw some lines to avoid subjecting web platforms to personal jurisdiction everywhere.  Were it otherwise, every time a seller offered a product for sale through an interactive website, the seller would be subjecting itself to specific jurisdiction in every forum in which the website was visible….  That result … would be too broad to comport with due process."  *Shopify*, 87 F.4th at 417.

There is no daylight between *Shopify* and this case.  Like Bright Data, Shopify is a global e-commerce platform.  Headquartered in Canada, Shopify operates virtual storefronts, shopping carts, and ordering infrastructure that many merchants in California and elsewhere use when selling their wares online.  A class of California plaintiffs accused Shopify of collecting and disseminating their personal information in violation of California's privacy laws.  Though the alleged tortious data extraction occurred in California, the Ninth Circuit held that "as a matter of due process, web-based platforms cannot be subject to specific jurisdiction in any forum from which they are accessible."  *Id.* at 421.  In reaching this conclusion, the Court followed a rigorous two-step process, analyzing each of Shopify's forum contacts through that lens, and found them all wanting.

---

that it is an appropriate target of X's suit.  It is, however, the employer of all the California employees X relies on for jurisdictional purposes.

1    *Step 1: The "Direct Nexus" Test.*   The Court began by first "narrowing [the] allegations
2    to the conduct relevant to the specific jurisdiction inquiry." *Id*. at 410-16.  As the Court explained,
3    specific jurisdiction is a "claim-tailored inquiry," requiring the court to hone in on the "suit-
4    related" conduct giving rise to plaintiff's claims.  *Id*.  Because the "'arising out of' portion of the
5    specific jurisdiction formula asks about causation," the Court must look to the defendant's forum-
6    related activities to determine if there is a "***direct nexus***" between the conduct and the claim.  *Id*.
7    Only conduct that bears "***strong, direct connection*** between the defendant's forum-related
8    activities and the plaintiff's claims" can be considered.  *Id*.  If the California-related conduct did
9    not "***cause*** [plaintiff's] harm," it is irrelevant.  *Id*.  This is so even if the defendant's forum-related
10   conduct "set the wheels in motion" to "eventually inflict" injury because "such a ***butterfly effect***
11   ***theory*** of specific jurisdiction would be far too expansive to satisfy due process." *Id*.

12         In applying this framework, the Court declined to consider Shopify's "broader California
13   business contacts," ***including any facts relating to its maintenance of its e-commerce platform***
14   ***in California*** (independent of the alleged data extraction) because such activities "did not cause"
15   plaintiff's harm.  *Id*.; *see also Kauffman*, 2024 WL 221434, at *2 (finding fact that "Home Depot
16   operates numerous retail stores in California and integrates the website with those stores"
17   insufficient to establish specific personal jurisdiction).  This was so, even though a quarter of
18   Shopify's 900-person U.S. workforce was located in California.  Shopify also operated a physical
19   store in California "to expand its access to the California market and enhance relationships with
20   Shopify's over ***80,000 merchant-customers*** in the state."  *Shopify*, 87 F.4th at 410.

21         Despite "***extensive***" California contacts, the Ninth Circuit found them ***irrelevant***.  *Id*. at
22   413-14.  As the court explained:

23         "Although [the plaintiff] does not argue that these contacts are so pervasive as to
24         create all-purpose general jurisdiction, he does suggest they are at least relevant to
             the specific jurisdiction analysis.  That is not correct."  *Id.*

25   Because evidence of Shopify's "brick-and-mortar operations in the state" and its "contracts with
26   merchants in California" were too far removed from the "extraction of … personal information"
27   on the Shopify platform (the alleged tortious activity), it excluded them from consideration.  *Id.*
28

*Step 2: The "Forum-Specific Prioritization" Test.*  After limiting the field to Shopify's data extraction activities (the alleged tortious conduct), the Court proceeded to the second step of its analysis: determining whether the "*pertinent*" tortious activity exhibited a "*forum-specific focus*" that creates a "*substantial connection*" with the forum.  *Id.* at 410-22.  Shopify's allegedly tortious conduct occurred in California: Shopify operated its platform in California and collected private information from California end-users by "generating payment forms," "requiring" them to reveal personal information, connecting directly to their browsers, "installing cookies" on their computers, "executing code on [their] devices," and storing and transmitting their information.  *Id.* Far from passive, Shopify "shared [this information] with its merchant and other business partners" in California and elsewhere.  *Id.*

This evidence, however, was not enough to subject Shopify to the jurisdiction of a California diversity court.  As the Ninth Circuit held,

> "What is needed … is some prioritization of the forum state, some differentiation of the forum state from other locations, or some focused dedication to the forum state which permits the conclusion that the defendant's suit-related conduct 'create[s] a substantial connection' with the forum….
>
> And that 'substantial connection' must be something substantial beyond the baseline connection that the defendant's internet presence already creates with every jurisdiction through its universally accessible platform." *Id.* at 420-22.

Shopify's platform did not satisfy the "prioritization" test.  Its "platform is accessible across the United States," and "the platform is indifferent to the location of either the merchant or the end consumer."  *Id.*  The harm suffered would be identical whether the plaintiff was located in California or another state, and "would follow him wherever he might choose to live."  *Id.* at 416.

To subject a "broadly accessible web platform" to a diversity court's jurisdiction in such circumstances, the court held, would "lead[] to due process concerns" because the "implication" would be that it is "subject to specific jurisdiction in ***every*** state."  *Id.* at 419-23; *see also FullStory*, 2024 WL 188101, at *11 ("The requisite forum-specific focus for a broadly accessible web platform like FullStory cannot be established solely by allegations that FullStory knew it was processing the data of California-based consumers for a California-based merchant, here Favor.

Something more is required.").

The Ninth Circuit recognized that, "by this logic, [an internet platform] will be able to direct its activities to all fifty states and yet be free from specific jurisdiction in each of them." *Shopify*, 87 F.4th at 421. Nonetheless, "as a matter of due process, web-based platforms cannot be subject to specific jurisdiction in any forum from which they are accessible" because that "would lead to the eventual demise" of all due process constraints on states' power to regulate national internet platforms.[3]

A diversity court's lack of power to regulate a national platform contrasts with the court's jurisdictional power when applying federal law. While diversity courts can only entertain claims against non-resident platforms where its *forum-specific* aspects "give rise" to the plaintiff's claim, federal question courts exercise the full scope of Congressional authority and can reach any internet platform that does business in the United States. The Ninth Circuit clarified this distinction just weeks after *Shopify* in a case that is otherwise factually indistinguishable.

In *Doe v. WebGroup Czech Republic, A.S.*, 2024 WL 609500, *5 (9th Cir. 2024), the Court held that a court exercising federal question jurisdiction could exercise specific jurisdiction over a global internet platform, even though no state court could. The plaintiff was a California resident, part of the tortious conduct (the underlying abuse) occurred in California, and the defendant contracted with California-based entities to provide its services. The plaintiff conceded that these facts did not confer diversity court personal jurisdiction. That did not end the inquiry, however, because a federal court may exercise specific jurisdiction over claims that "***arise[] under federal law***" based on a platform's U.S. contacts even where it is not "subject to jurisdiction in any state's courts." *Id.* (quoting Fed. R. Civ. P. 4(k)(2)). A different rule, the Court explained, applied to plaintiff's state law claims. Even though most of the defendant's U.S. contacts were actually California contacts, the Court could only exercise *pendant* jurisdiction over the state law claims.

---

[3] *Id.* The Court distinguished the "sale of physical items," which are subject to "a different set of legal rules" based on "long-held understandings about the jurisdictional significance of physical shipments into a forum." *Id*. at 422; *see also Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 366 n.4 (2021) (distinguishing physical sales from "internet transactions").

1    *Id.* at n.5.  That is, it lacked original diversity jurisdiction over the global internet platform.

2         Taken together, *Shopify* and *Doe* establish new rules for personal jurisdiction in data

3    extraction cases involving global internet platforms: a defendant may be subject to specific

4    jurisdiction for claims arising under federal law if they do business in the United States, but they

5    are not subject to the jurisdiction of diversity courts unless the claims arise *directly* out of some

6    unique forum-specific aspect of their platform.  Here, Meta invokes only the Court's diversity

7    jurisdiction.  Thus, *Shopify* controls, not *Doe*.

8         **B.      X's Tort Claims Do Not Satisfy Shopify's Two-Part Test.**

9         X presents four jurisdictional allegations: (i) X's own domicile and California operations;

10   (ii) Bright Data's general California contacts, including its (now closed) temporary sales office

11   and its few California employees; (iii) Bright Data's California proxies; and (iv) unnamed

12   California domiciled customers of Bright Data.  FAC (ECF 36) ¶¶ 10-14.  None satisfy *Shopify*.

13   This is because Bright Data provides the same services everywhere regardless of customer or

14   website location, and X's injuries would be exactly the same absent any California contact.

15   *Shopify*, 87 F.4th at 414 (no jurisdiction where plaintiff "would have suffered the same injury

16   regardless of whether he purchased items from a California merchant or was physically present in

17   California when he did so").  X's claims, therefore, do not arise out of any forum-specific focus.

18        *X Cannot Base Specific Jurisdiction on Its Domicile or California Operations.*  X's

19   own "principal place of business" and servers in California are no basis for personal jurisdiction

20   over Bright Data.  FAC ¶¶ 9, 14.  "Mere injury to a forum resident is not [] sufficient" because the

21   "focus" of the jurisdictional inquiry is on where the "relevant conduct" took place, not just the fact

22   that the "conduct affected plaintiffs with connections to the forum State." *Walden v. Fiore*, 571

23   U.S. 277, 290-91 (2014).  Indeed, the Ninth Circuit long ago overruled prior cases deeming

24   "individualized targeting" of a forum plaintiff sufficient to establish jurisdiction. *Axiom Foods,*

25   *Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1070 (9th Cir. 2017).

26        X has no answer to this.  Instead, it seeks to prop up its deficient allegation with more of

27   its own California contacts: its own "servers in California."  FAC ¶ 14.  But the location of X's

28

1    servers is irrelevant because "it is the defendant, not the plaintiff or third parties, who must create

2    the contacts with the forum State." *Walden*, 571 U.S. at 291.  Put simply, X's own choices about

3    how it interacts with the Internet cannot subject Bright Data to the jurisdiction of a California

4    diversity court.

5          Moreover, X's injuries do not depend on the location of X's servers or its primary place of

6    business.  X's purported injury comes from scraping data that is available worldwide.  *Shopify*

7    again controls.  There, the plaintiff was "physically located" in California when Shopify connected

8    to his device. 87 F.4th at 414-15.  Did this "California connection matter to the analysis of whether

9    Shopify expressly aimed its activities toward California?  The answer is no." *Id.*  The plaintiff

10   "would have suffered the same injury regardless" of his location. *Id.*  X's injury is also the same

11   whether its server is in California, Alabama, or China.

12   *X Cannot Base Specific Jurisdiction on Bright Data's "Broader Business Activities."*

13   Bright Data's former sales office is also irrelevant to the personal jurisdiction analysis.  The Ninth

14   Circuit rejected the same argument when considering Shopify's "extensive" California operations.

15   And Bright Data's contacts pale in comparison to Shopify's.  Shopify's predecessor was "based in

16   California;" a quarter of its U.S. workers were there; it had a separate physical sales office in Los

17   Angeles that it opened as a "hub" to expand its California presence; and it had a California

18   fulfillment center to serve its local merchants and end-users. *Id.* at 410.

19         In contrast, X alleges no facts relating to this workspace, besides that Bright Data listed the

20   address on its website.  FAC ¶¶ 10-11, Figs. 1-2.  X makes no allegations that its injuries were

21   affected by the presence or absence of this office.  Bright Data's few remote California employees

22   are similarly irrelevant.  X alleges no facts that the Bright Data employees X identifies were in any

23   way involved in the injury causing conduct. *Id.* ¶ 12.  X does nothing more than point to the

24   employee's LinkedIn pages and say that they are located in California. *Id.* ¶ 12, Ex. C.  Put simply,

25   there is nothing about Bright Data's offices or employees that suggests Bright Data specifically

26   targeted or aimed its "suit-related" activities at California.

27

28

1    *X Cannot Base Specific Jurisdiction on Bright Data's Proxy Infrastructure.*  Bright

2    Data's network operates the same way everywhere.  X argues that Bright Data targets California

3    because it offers IP addresses everywhere, including California.  FAC ¶¶ 9, 13.  But under *Shopify*,

4    these resources form the "baseline connection [Bright Data] creates with every jurisdiction" to

5    provide a "universally accessible platform."  *See Shopify*, 87 F.4th at 420.  If that sufficed, Bright

6    Data would be subject to jurisdiction everywhere in the world.  Due process does not extend so

7    far.  *Id.* (noting the need to "draw some lines to avoid" the "implication" that a "broadly accessible

8    web platform" would be "subject to specific jurisdiction in every state.").

9        If a customer affirmatively selects a California proxy, the request will be routed through

10    the chosen proxy.  FAC ¶ 13, Fig. 3.  But then, any prioritization is the customer's choice, not

11    Bright Data's.  That does not count against Bright Data.  As the Ninth Circuit explained, "[a]ctions

12    of third parties that the defendant does not control" do not dictate jurisdiction because of the

13    "greater … attenuation between the plaintiffs' injuries and the defendant's jurisdictional contacts."

14    *Shopify*, 87 F.4th at 420.  A contrary ruling, the Court explained, would "effectively tie personal

15    jurisdiction to the unilateral activity" of the defendant's customers.  *Id.* at 423.

16    *X Cannot Base Specific Jurisdiction on Bright Data's Unnamed California Customers.*

17    In *Shopify*, the defendant "effectively 'reached into' California (electronically) and inserted itself

18    (technologically) into a transaction between a California consumer and a California merchant,"

19    acting tortiously while it did so.  *Id.* at 415.  Yet, this was not enough to subject it to jurisdiction

20    over claims relating to those transactions because the platform did not exhibit any forum-specific

21    focus or prioritization.  X's allegations are insufficient for the same reason.  X does not allege that

22    Bright Data targets or prioritizes California customers; nor does it matter where customers choose

23    to live and work.  They can place their computers anywhere in the world.  It makes no difference

24    to Bright Data.  And it makes no difference to X.

25        Even if discovery reveals that Bright Data does have California customers, they are

26    irrelevant to the jurisdictional analysis.  FAC ¶¶ 9, 10, 14.  Shopify had 80,000 California

27    customers, and millions of California end-users from whom it unlawfully extracted personal

28

1    information.  If that didn't suffice, neither will Bright Data's California customers.

2        As the Ninth Circuit recognized, because California is a "large market," any nationally-

3    accessible web platform is "no doubt" bound to have a "sizable … base" of California customers.

4    *Shopify*, 87 F.4th at 423.  Yet, the fact that a defendant "benefits" from serving these customers

5    "does not answer the purposeful direction question because a defendant foreseeably profiting from

6    persons making online purchases in California does not demonstrate express aiming."  *Id.*  There

7    must be "something more" distinguishing the California market from other areas of the country,

8    and it must do so in a way that the claim "arises out of" that "forum-specific focus."  *Id.* at 413,

9    417-18.

10        Whether a "defendant's suit-related conduct" exhibits a forum-specific focus depends on

11    the nature of the claim.  If the claim involves copyright, defamation, or other harm dependent upon

12    the extent of publication, evidence that the defendant "actively target[ed]" the forum with special

13    content "appealing to [the local] audience" may suffice.  *Cf. Sessa v. Ancestry.com Operations

14    Inc.*, 2024 WL 195995, *2-5 (D. Nev. 2024) (no jurisdiction where ads were "widely"

15    disseminated, and plaintiffs' likeness were distributed based on familial relationships, but not

16    location per se).  If, as in *Shopify*, the claim involves defendant's data extraction, the data collection

17    activities must be geared toward California.  In contrast, there is no jurisdiction where the

18    defendant actively collects data from California end-users, but does not prioritize or "alter[] its

19    data collection activities based on the location of a given online purchaser."  87 F.4th at 419-22.

20    And, where the claim does not involve the defendant's own data collection, but the inducement of

21    it, the acts of inducement must be focused on California third-parties if not "to the exclusion of all

22    others," at least with special "dedication."  *Id.*

23        X argues that while "ha[ving]" California customers might not be enough, "target[ing]"

24    them is.  FAC ¶ 13.  This is semantics.  No one gets customers without "targeting" them.  Being

25    open for business means hanging out a shingle.  In any event, none of Bright Data's sales or

26    marketing activities go beyond those in *Shopify* and X does not allege otherwise.

27                              *    *    *

28

At its core, the jurisdictional test is simple.  Would X's claims be different absent the jurisdictional facts X presents?  To quote *Shopify*, "[t]he answer is no."  87 F.4th at 415.  X suffers the same injury when a user in Boise, Idaho scrapes Elon Musk's public X posts as when a user in San Bernadino does the same thing.  That defeats jurisdiction under *Shopify*.

## III.   THE COURT'S ORDER SATISFIES ALL THE REQUIREMENTS FOR INTERLOCUTORY APPEAL

District court judges may certify orders not otherwise appealable if the decision involves a controlling question of law with substantial grounds for differences of opinion, and immediate resolution of which may materially advance the ultimate termination of the litigation.[4]  *See* 28 U.S.C. § 1292(b).  The Court's Order is a prime candidate for interlocutory appeal because the lower courts are adopting divergent and varied views concerning whether *Shopify* adopted a new framework for assessing jurisdiction, and if so, how it should be applied.  At one end of the spectrum are courts that believe that *Shopify* merely applied existing law and requires only "something more" than passive operation of a website accessed by California residents.  At the other end, are courts that have held that *Shopify* adopted a new, two-part framework, which negates consideration of most of the jurisdictional facts that X relies on, and finds insufficient forum-prioritization as to the remainder.  Resolving how the Ninth Circuit intended its decision to apply is a controlling issue that is at the foundation of this Court's Order.  Resolving this question will also materially advance the litigation.

### A.   There are Substantial Grounds for Difference of Opinion on the Implications of *Shopify*.

Though *Shopify* is still new, many district courts have recognized it marks a sea-change in personal jurisdiction as applied to data extraction cases.  *See, e.g.*, *Sessa*, 2024 WL 195995, at *3 ("The Ninth Circuit's reasoning in [*Shopify*] 'creates a significant shift' in the Court's analysis

---

[4] *See also Bryan v. UPS., Inc.*, 307 F. Supp. 2d 1108, 1115 (N.D. Cal. 2004), (Alsup, J.) (certifying a question "of first impression"); Wright & Miller, 16 Fed. Prac. & Proc. Juris. § 3930 Criteria for Permissive Appeal (3d ed. 2022) ("Section 1292(b) is best used to inject an element of flexibility into the technical rules of appellate jurisdiction," requiring courts to "consider the probable gains and losses of immediate appeal.").

1    because [*Shopify*] describes a personal jurisdiction test to be applied in scenarios such as this one,

2    and the Court did not apply that test when it analyzed Defendant's Motion to Dismiss."); *Kauffman*

3    *v. Home Depot, Inc.*, 2024 WL 221434, *2 (S.D. Cal. 2024) (recognizing *Shopify* changed the

4    applicable test and analysis for data extraction cases); *Doe v. FullStory, Inc.*, 2024 WL 188101,

5    *11 (N.D. Cal. 2024) (*Shopify* "clarified the nature of the personal jurisdiction test to be applied

6    to a data processing platform").

7            This Court took a different tack.  It did not apply the *Shopify* two-part test, but instead,

8    sought to answer the question of whether Bright Data was the type of "the non-resident defendant

9    that specific personal jurisdiction aspires to insulate" by looking at whether "Bright Data has done

10   'something more' than passively operate a website accessed by California residents, as required."

11   ECF 67 at 3-4.  At least one other court has also applied a "something more" standard to personal

12   jurisdiction in the wake of *Shopify.  See Moda Assurance Co. v. New Life Treatment Ctr.*, 2024

13   WL 181830, *5 (D. Alaska 2024).  But *Shopify*'s test is more rigorous because it requires first the

14   exclusion of evidence that does not directly give rise to plaintiffs' claims, and then imposes a

15   "prioritization" test to the remaining facts.  Applying the "something more" test, without going

16   through *Shopify*'s two-part test, risks basing jurisdiction on the same type of contacts and

17   "intentional acts" rejected in *Shopify* but described in cases like *Herbal Brands, Inc. v. Photoplaza,*

18   *Inc.*, 72 F.4th 1085, 1091 (9th Cir. 2023).  ECF 67 at 3.  As courts have held, however, *Shopify*

19   "expressly limited *Herbal Brands* to claims arising from 'defendant's sale of a physical product to

20   a consumer in the forum state via an interactive website.'" *Kauffman*, 2024 WL 221434, at *2.

21           Such divergent approaches among district courts show this is a "novel legal issue[] … on

22   which fair-minded jurists might reach contradictory conclusions" and creates the substantial

23   grounds for differences of opinion warranting interlocutory review.  *See Reese v. BP Expl. (Alaska)*

24   *Inc.*, 643 F.3d 681, 688 (9th Cir. 2011); *see also* Wright & Miller, § 3930 (3d ed.) ("The level of

25   uncertainty required to find a substantial ground for difference of opinion should be adjusted to

26   meet the importance of the question in the context of the specific case.  If proceedings that threaten

27   to endure for several years depend on an initial question of jurisdiction, limitations, or the like,

28

certification may be justified at a relatively low threshold of doubt.").

The personal jurisdiction question is a particularly compelling candidate for immediate review because its resolution could not only affect this litigation, but also other cases where *Shopify* may apply.  *See* Wright & Miller, § 3930 ("The opportunity to achieve appellate resolution of an issue important to other cases may provide an additional reason for certification."); *Al Maqaleh v. Gates*, 620 F. Supp. 2d 51, 55 (D.D.C. 2009) ("[I]nterlocutory appeal is warranted where the jurisdictional determination will impact numerous cases."); *Ass'n of Irritated Residents v. Fred Schakel Dairy*, 634 F. Supp. 2d 1081, 1093 (E.D. Cal. 2008) ("The opportunity to achieve appellate resolution of an issue important to other similarly situated [parties] can provide an additional reason for certification.").

### B.      An Immediate Appeal Would Materially Advance the Ultimate Termination of the Litigation.

Resolution of the appropriate personal jurisdiction test would materially advance this litigation.  *Reese*, 643 F.3d at 688; 2 Fed. Proc., L. Ed. § 3:219 ("The determination of whether an interlocutory appeal may materially advance the ultimate termination of litigation properly turns on pragmatic considerations, assessed by reviewing the procedural and substantive status of the case with respect to the progress or completion of discovery, the disposition of pretrial motions, the extent of the parties' preparation for trial, and the nature and scope of the requested relief.").  Because personal jurisdiction represents a threshold legal issue, significant expense will be saved should the Ninth Circuit find *Shopify* applicable here.  *See Bikram Yoga Coll. of India & Fitness, L.P. v. Raiz*, 2012 WL 13012446, *5 (C.D. Cal. 2012) ("Should the Ninth Circuit Court of Appeals find that this Court does not have personal jurisdiction over Evans, she will avoid incurring additional expenses, costs, and time litigating in this district.").[5]

---

[5] Questions need not be dispositive of the entire lawsuit to be "controlling."  *United States v. Woodbury*, 263 F.2d 784, 787 (9th Cir. 1959); *Silbersher v. Allergan Inc.*, 2021 WL 292244, *2 (N.D. Cal. 2021) (same); *Gilmore v. Jones*, 2019 WL 4417490, *6 (W.D. Va. 2019) ("Contrary to Plaintiff's contention, FSS Defendants' Motion for Certification is not defeated because the Plaintiff's case would not be entirely terminated by a reversal on this Court's personal jurisdiction determination on appeal.  The standard is 'materially advance termination' of the litigation, not simply 'termination' of the litigation.").  Instead, certification is warranted where, as here,

1    *First*, if the Ninth Circuit ultimately concludes that jurisdiction is lacking, then the case

2    will be limited to a mere breach of contract claim, which implicates materially different facts and

3    circumstances.  *See United States v. Cath. Health Sys. of Long Island Inc.*, 521 F. Supp. 3d 265,

4    279 (E.D.N.Y. 2021) ("While there may be some overlap between the discovery for both the

5    retaliation and [False Claims Act] claims, a dismissal of the FCA claims will streamline

6    discovery.").  X's contract claim focuses largely, if not exclusively, on Bright Data's own efforts

7    to scrape public data from the X platform.  It's tort claims, in contrast, focus largely on scraping

8    activities of third-parties.  Discovery into such facts and circumstances is likely to be both broad

9    and burdensome, and implicate the interests of numerous third-parties.[6]  Resolving whether a

10   diversity court can regulate third-party use of Bright Data's network, therefore, has the potential

11   to significantly streamline the case.  Indeed, because Bright Data has separately moved for

12   summary judgment on X's forward-looking contract claim, dismissal of its tort claims for lack of

13   jurisdiction would eliminate X's forward-looking claims entirely.

14      *Second*, even if the Ninth Circuit concludes that personal jurisdiction exists for some of

15   X's tort claims, it may conclude that jurisdiction is lacking for others.  For example, the Ninth

16   Circuit could conclude that claims – like the tortious interference claim – that depend on the acts

17   of third-parties do not satisfy *Shopify*.  As just noted, eliminating this claim would substantially

18   narrow discovery, essentially eliminating the need for any customer-specific evidence.  The court

19   might also conclude, that even if there is jurisdiction over the tortious interference claim, it does

20   not extend to claims involving non-California users.  That would eliminate the need for discovery

21   relating to Bright Data's customers worldwide.  As such, clarification of the appropriate legal

22

23   immediate resolution of the question presented would "clarify the issues at [an] early stage of the
     litigation (*i.e.*, prior to discovery)" and "resolve whether plaintiff could proceed with claims." *Jaco*
24   *v. WinCo Holdings, Inc*., 2019 WL 2615739, *5 (E.D. Cal. 2019) (granting § 1292(b) motion).

25   [6] Even before X amended its complaint to add three new tort claims, X had served 57 document
     requests, 12 interrogatories, and 22 requests for admission.  Over a third of these requests relate
26   solely to its tortious interference claim, dealing with customers' use of Bright Data's services,
     rather than Bright Data's own scraping activities.  (*See* RFP Nos. 4, 12, 15, 17-22, 30-32, 36, 41,
27   45, 46, 56; Interrogatory Nos. 3, 7, 8; RFAs 1-12).  These requests would be obviated if there is
     no personal jurisdiction over X's tort claims.
28

1    standards would substantially streamline the case if the Ninth Circuit views its *Shopify* decision

2    expansively.

3    **IV.      CONCLUSION.**

4          For the foregoing reasons the Court should certify its Order (ECF 67) for immediate appeal.

1   Dated: February 22, 2024                    Respectfully submitted,

2

3                                               /s/ Colin Kass

4                                               Colin R. Kass*
                                                PROSKAUER ROSE LLP
5                                               1001 Pennsylvania Ave., N.W.
                                                Washington, D.C. 20004
6                                               (202) 416-6890
                                                ckass@proskauer.com
7
                                                David A. Munkittrick*
8                                               PROSKAUER ROSE LLP
                                                Eleven Times Square
9                                               New York, New York 10036
                                                (212) 969-3000
10                                              dmunkittrick@proskauer.com

11                                              Robert C. Goodman (Bar No. 111554)
                                                Lauren Kramer Sujeeth (Bar No. 259821)
12                                              ROGERS JOSEPH O'DONNELL, PC
                                                311 California Street, 10th Floor
13                                              San Francisco, CA 94104
                                                (415) 956-2828
14                                              rgoodman@rjo.com
                                                lsujeeth@rjo.com
15
                                                Sehreen Ladak (Bar No. 307895)
16                                              PROSKAUER ROSE LLP
                                                2029 Century Park East, Suite 2400
17                                              Los Angeles, CA 90067-3010
                                                (310) 284-5652
18                                              sladak@proskauer.com
19
                                                *Attorneys for Defendant Bright Data Ltd.*
20                                              *Admitted Pro Hac Vice*

21

22

23

24

25

26

27

28