Colin R. Kass (*pro hac vice*)
PROSKAUER ROSE LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 416-6890
ckass@proskauer.com

David A. Munkittrick (*pro hac vice*)
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
(212) 969-3000
dmunkittric@proskauer.com

*Attorneys for Defendant Bright Data Ltd.*
*Additional counsel listed on signature page*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| X Corp.,<br><br>               Plaintiff,<br><br>        v.<br><br>BRIGHT DATA LTD.<br><br>               Defendant | Case No.  23-cv-03698-WHA<br><br>Hon. William H. Alsup<br>Courtroom 12 – 19th Floor<br>March 28, 2024, 8:00 a.m. |

## BRIGHT DATA'S REPLY TO ITS MOTION FOR INTERLOCUTORY APPEAL

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION. ...................................................................................................... 1

II.    BRIGHT DATA HAS SATISFIED THE 1292(B) REQUIREMENTS............................ 2

     A.    The Interpretation and Application of Shopify is a Controlling Legal Question. ..................................................................................................2

     B.    There are Substantial Grounds for Differences of Opinion Concerning the Proper Interpretation and Application of Shopify. ..................................................7

     C.    The Case Will Be Materially Advanced By Appellate Resolution of These Controlling Legal Questions. ...................................................................11

III.   THE COURT SHOULD REJECT X'S ATTEMPT TO GRAFT ONTO RULE 1292(B) ADDITIONAL NON-STATUTORY REQUIRMENTS. .................................. 13

     A.    No Companion Motion for Reconsideration is Required for Interlocutory Appeal. .......................................................................................................13

     B.    Exceptional Circumstances Beyond the 1292(b) Requirements are Not Required. ..................................................................................................14

IV.   CONCLUSION.......................................................................................................... 15

## TABLE OF AUTHORITIES*

CASES                                                                          PAGES

*Allen v. Conagra Foods, Inc.*,
   2013 WL 6000456 (N.D. Cal. 2013) ........................................................7

*Amaro v. City of Oakland*,
   2010 WL 669240 (N.D. Cal. 2010) (Alsup, J.)........................................5

*Ass'n of Irritated Residents v. Fred Schakel Dairy*,
   634 F. Supp. 2d 1081 (E.D. Cal. 2008)................................................12

*Briskin v. Shopify, Inc.*,
   87 4th 404 (9th Cir. 2023)..................................................... *passim*

*Bryan v. United Parcel Serv., Inc.*,
   307 F. Supp. 2d 1108 (N.D. Cal. 2004) (Alsup, J.) ................................5

*Chehalem Physical Therapy, Inc. v. Coventry Health Care, Inc.*,
   2010 WL 952273 (D. Or. 2010)..........................................................7

*Cooper-Standard Auto., Inc. v. SFC Sols. Czestochowa SP. Z.O.O.*,
   2023 WL 6850578 (E.D. Mich. 2023) ..................................................6

*Couch v. Telescope Inc.*,
   611 F.3d 629 (9th Cir. 2010) ..........................................................7, 8

*Dalie v. Pulte Home Corp.*,
   636 F. Supp. 2d 1025 (E.D. Cal. 2009).............................................4, 5

*Doe v. FullStory, Inc.*,
   2024 WL 188101 (N.D. Cal. 2024) ...................................................8, 11

*Dukes v. Wal-Mart Stores, Inc.*,
   2012 WL 6115536 (N.D. Cal. 2012) .................................................5, 12

*Go-Video, Inc. v. Akai Elec. Co.*,
   885 F.2d 1406 (9th Cir. 1989) .........................................................6, 7

*Ibrahim v. Dep't of Homeland Sec.*,
   2009 WL 10677242 (N.D. Cal. 2009) (Alsup, J.)...................................15

*ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*,
   2020 WL 2768683 (D. Or. 2020)....................................................4, 5, 6

---

* Unless otherwise noted, all emphasis added, initial capitalizations conformed without brackets, and internal citations and quotation marks omitted.

*In re Cement Antitrust Litig.*,
    673 F.2d 1020 (9th Cir. 1981) .........................................................................15

*In re LDK Solar Sec. Litig.*,
    584 F. Supp. 2d 1230 (N.D. Cal. 2008) (Alsup, J) .......................................14

*In re Text Messaging Antitrust Litig.*,
    630 F.3d 622 (7th Cir. 2010) (Posner, J.) .............................................1, 6

*Ins. Co. of N. Am. v. Marina Salina Cruz*,
    649 F.2d 1266 (9th Cir. 1981) ..........................................................................7

*Ji v. Naver Corp.*,
    2024 WL 251402 (N.D. Cal. 2024) ..................................................................6

*Johnson v. Serenity Transp.*,
    2017 WL 3168491 (N.D. Cal. 2017) .................................................................7

*K.H. by & through Humphrey v. Antioch Unified Sch. Dist.*,
    424 F. Supp. 3d 699 (N.D. Cal. 2020) (Alsup, J.) .........................................5

*Kauffman v. Home Depot, Inc.*,
    2024 WL 221434 (S.D. Cal. 2024) .............................................................8, 10

*Palmer v. Savona*,
    2013 WL 4478945 (D. Ariz. 2013) ...................................................................4

*Pharmacychecker.com LLC v. Legitscript LLC*,
    2024 WL 982784 (D.Or. 2024) .............................................................5, 7, 8

*Reese v. BP Expl. Inc.*,
    643 F.3d 681 (9th Cir. 2011) ....................................................2, 8, 12, 14

*Santa Clara v. Astra USA, Inc.*,
    2008 WL 5055395 (N.D. Cal. 2008) (Alsup, J.)..................................12, 13

*Sessa v. Ancestry.com Operations Inc.*,
    2024 WL 195995 (D. Nev. 2024) ...............................................................8, 10

*Sonos, Inc. v. Google LLC*,
    591 F. Supp. 3d 638 (N.D. Cal. 2022) (Alsup, J) .....................................5, 13

*Steering Comm. v. United States*,
    6 F.3d 572 (9th Cir. 1993) ...................................................................1, 3, 4, 7

*Sterk v. Redbox Automated Retail, LLC*,
    672 F.3d 535 (7th Cir. 2012) (Posner, J.) .....................................................12

*Taylor v. Oakland*,
    2007 WL 3287843 (N.D. Cal. 2007) (Alsup, J.)............................................13

*Integra Med Analytics LLC v. Providence Health & Servs.*,
 2019 WL 6973547 (C.D. Cal. 2019) ........................................................13

*U.S. v. Providence Health & Servs.*,
 2019 WL 6973547 (C.D. Cal. 2019) ....................................................3, 14

*U.S. v. Woodbury*,
 263 F.2d 784, 787 (9th Cir. 1959) ..........................................................12

**STATUTES**

28 U.S.C. § 1292(b) ............................................................................ *passim*

**RULES**

Fed. R. Civ. P. 12 .........................................................................................6

Civil L.R. 7-9(b) ........................................................................................14

**OTHER AUTHORITIES**

Wright & Miller, 16 Fed. Prac. & Proc. Juris. § 3930 (3d ed. 2022) ........8, 12

Wright & Miller, 2 Fed. Prac. & Proc. § 3:212 (3d ed. 2022) ....................15

1

## I.     INTRODUCTION.

2          X's Opposition is based on a faulty premise:  that Bright Data brought this motion to delay

3    discovery.  But interlocutory appeals do not automatically stay district court proceedings.  Nor has

4    Bright Data moved for such a stay.  So, the effect, if any, of appealing this Court's jurisdictional

5    order on discovery is not currently before the Court.

6          Bright Data's motion presents a more fundamental question.  It concerns a diversity court's

7    power to regulate global or interstate internet service providers.  In *Shopify*, the Ninth Circuit

8    sharply curtailed that power, in a case it described as a matter of "first impression."  *Shopify* may

9    have been the first word on this issue, but it is not the last.  In the few short months since it was

10   decided, the case has been applied to *four* other web-based platforms, with three finding no

11   jurisdiction and this Court standing alone to find the opposite.  Each decision claims support from

12   various snippets extracted from the Ninth Circuit's decision.  But it is not possible for all to have

13   correctly interpreted and applied *Shopify*.  This issue is, therefore, tailor-made for appellate review.

14         The time for that review is now.  In opposing interlocutory review, X first tries to reframe

15   the legal question Bright Data seeks to certify.  It says Bright Data is not really seeking clarification

16   of legal standards, but just challenging the "application" of "settled" principles.  Not true.  *Shopify*

17   is anything but settled.  Some courts have read *Shopify* as announcing a new **framework** for

18   evaluating the power of diversity courts to regulate global or interstate internet providers; others

19   have simply viewed it as an extension of existing precedent to the facts of that case.  This dispute

20   over the proper "articulation" of the governing legal standard is a pure question of law that falls

21   squarely within § 1292(b).  *Steering Comm. v. U.S.,* 6 F.3d 572, 575 (9th Cir. 1993).  But even if

22   the application of *Shopify* to the pleadings were the only issue, it would not bar appellate

23   jurisdiction because the interpretation of *Shopify* cannot be divorced from its application.  *In re*

24   *Text Messaging Antitrust Litig.*, 630 F.3d 622, 625 (7th Cir. 2010) (Posner, J.).

25         X next tries to stave off appeal by arguing that there is no conflict among the lower courts.

26   But it does not dispute the score:  Three post-*Shopify* cases found no jurisdiction over web-based

27   platforms, and one (this Court) reaching the opposite conclusion.  X does not say that any of these

28

cases are wrongly decided.  Nor does it attempt to distinguish these cases factually.  Instead, it says that all these cases correctly applied *Shopify*.  That is an impossibility.  Either this Court is right and the others are wrong, or the reverse.  And even if it were possible to reconcile all these cases, some new, never-before-announced legal test would be needed to perform that extraordinary feat.  No plain reading of *Shopify* can carry that load.  That alone demonstrates substantial grounds for differences of opinion in need of appellate court clarification.

Resolving this issue now is critical because dismissal of X's tort claims will fundamentally reshape this case.  The tort claims are not just additional theories of liability tacked on to the same facts and circumstances as the contract claim.  The tort claims challenge an entirely different aspect of Bright Data's business:  not just its own scraping, but third-parties' use of its communications network.  X does not dispute that dismissal of the tort claims will gut this aspect of the case and "avoid discovery" relating to it.  P. Br. 1.  It nonetheless says the Court should deny certification because an appeal would not terminate the *entire* case.  But that is not the standard.  "Neither § 1292(b)'s literal text nor controlling precedent requires that the interlocutory appeal have a final, dispositive effect on the litigation."  *Reese v. BP Expl. Inc.*, 643 F.3d 681, 688 (9th Cir. 2011).

With all three 1292(b) prongs satisfied, X instead tries to defeat appellate review by criticizing Bright Data for not seeking reconsideration of this Court's order or showing "exceptional circumstances."  But Bright Data satisfied the clear and unambiguous language of the statute.  It was not required to violate this Court's Local Rules by filing a Motion for Reconsideration.  Nor was it required to make some showing beyond the statutory factors.  Because those factors have been satisfied, the Court should certify the appeal.

## II.    BRIGHT DATA HAS SATISFIED THE 1292(B) REQUIREMENTS.

### A.    *The Interpretation and Application of Shopify is a Controlling Legal Question.*

X criticizes Bright Data for "never identif[ying] the purely legal question that would constitute a controlling issue in this case."  P. Br. 3.  But Bright Data *twice* set forth the specific question it sought to certify:

> "Whether, under *Shopify's* new jurisdictional test, a court must first narrow the jurisdictional allegations under consideration to those 'forum-specific' facts that bear a 'direct nexus' to the specific claims asserted, and then determine whether

those facts exhibit a 'prioritization' of the forum, or whether it suffices to find that the plaintiff has alleged 'something more' than merely passively operating a website accessed by California residents." D. Br. i., 1.

X does not deny that this is a controlling question, or that this Court's personal jurisdiction order turns on its resolution. Instead, X says this is not a "question of law" because, while personal jurisdiction pleading standards are "pure" questions of law, the "*application*" of those standards to the pleadings is a "mixed question of law and fact" for which no interlocutory appeal can ever be sought. P. Br. 3. X is wrong.

As an initial matter, Bright Data seeks to appeal the Court's framing of the applicable legal test. "Whether the district court failed to ***articulate*** the appropriate [legal] standard … is a question of law appropriate for interlocutory appeal." *Steering Comm.*, 6 F.3d at 575; *U.S. v. Providence Health & Servs.*, 2019 WL 6973547, *3 (C.D. Cal. 2019) ("a party presents a controlling legal question when it alleges that a court articulated an incorrect legal standard.").

In Bright Data's view, *Shopify* establishes a clear two-part test for evaluating whether a diversity court has personal jurisdiction over a global or interstate internet platform. In Section III.A of *Shopify*, the Ninth Circuit instructs lower courts to "*begin* [the analysis] by narrowing [the] allegations to the conduct relevant to specific jurisdiction," ***excluding*** any evidence relating to "broader business activities," including the creation and general operation of the platform that engaged in the unlawful data collection activities. *Shopify*, 87 F. 4th 404, 413-14 (9th Cir. 2023). In Section III.B, the court then analyzed whether the remaining forum contacts – those pertaining specifically to Shopify's data collection activities – involved "some prioritization of the forum state, some differentiation of the forum state from other locations." *Id*. at 420.

In its opposition, X does not dispute the existence of this two-part test, but it also does not argue that the Court *articulated* it. The Court did not "begin" its analysis by narrowing the facts to those that satisfy the Court's direct nexus test. Nor did it discuss the need to exclude from its consideration any forum contacts that merely "set the wheels in motion" for plaintiff's injuries. In fact, it did not exclude from consideration any of Bright Data's forum contacts, even where they had nothing to do with the X's claims. The Court also did not expressly address *Shopify*'s

"*prioritization*" requirement, or the need to find that the defendant's data extraction activities in the forum differed from its activities elsewhere.  In short, the Court did not articulate the two-part test that Bright Data claims is compelled by *Shopify* as a matter of law.

In response, X argues that the court must have *implicitly* applied *Shopify*'s two-part framework when it found "a strong, direct connection between the defendant's forum-related activities and the plaintiff's claims."  P. Br. 3.  But the Court was required to articulate the proper legal test, not just implicitly apply it.  It must show its work, not just announce the answer.  *Palmer v. Savona*, 2013 WL 4478945, *15 (D. Ariz. 2013) (noting the district court's prior decision was "reversed … on the basis that the Court did not show its work in analyzing the factors that are to 'guide' the court's decision….").  Nor is the test the Court articulated – whether Bright Data has "done 'something more' than passively operate a website accessed by California residents, as required" – the same as the two-part test that Bright Data believes *Shopify* compels.  ECF 67 at 4.

The question, then, is whether this Court articulated and applied the proper test.  If the Court disagrees that *Shopify* imposes a new two-part framework specifically tailored for evaluating diversity court power over global or interstate internet providers, the appeal will turn on that question of law.  *ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 2020 WL 2768683, *5 (D. Or. 2020) ("the proper **interpretation** of *Mead* … is a 'pure' question of law" and is "appropriate for certification.").  Similarly, if the Court agrees that *Shopify* imposes this two-part test, and that it implicitly applied it, any failure to *articulate* the test might be harmless, but the Court of Appeals would still have jurisdiction to determine whether *Shopify* was properly applied.

X's argument – that the latter is beyond appellate jurisdiction because a party can only appeal a non-final order if it involves a purely hypothetical legal question completely divorced from the facts of the case – is foreclosed by *Steering Comm.*, 6 F.3d at 576.  As the Ninth Circuit explained, because courts do not render advisory opinions, but always ground their decision based on some set of facts, Section 1292(b) confers jurisdiction over "**both** the [legal] standard of … **and** the application of the standard to the facts of the case."  *Id*.  Indeed, "the Ninth Circuit Court of Appeals has **never** embraced the rule that only pure legal questions are controlling questions of

law under § 1292(b)," and therefore, "mixed questions of law and fact are not categorically improper for certification for interlocutory review." *Dalie v. Pulte Home Corp.*, 636 F. Supp. 2d 1025, 1028 (E.D. Cal. 2009); *Pharmacychecker.com LLC v. Legitscript LLC*, 2024 WL 982784, *3 n.2 (D. Or. 2024) (collecting cases certifying mixed questions of law and fact); *Dukes v. Wal-Mart Stores, Inc.*, 2012 WL 6115536, *2 (N.D. Cal. 2012) ("the Ninth Circuit has accepted § 1292(b) certifications for mixed questions involving application of law to a particular set of facts where the attendant legal conclusion was sufficiently important."); *ICTSI*, 2020 WL 2768683, at *5 ("although applying whatever legal standard is ultimately found to be the correct legal standard to the facts of this case would involve consideration of the facts, decisions holding that the ***application*** of a legal standard is a controlling question of law … are numerous.").

This appeal does not involve application of unique or nuanced facts to settled law, but the application of facts common to all broad web-based platforms to unsettled law governing them. Thus, even if an appeal of mixed questions of fact and law must *sometimes* await final judgment, that rule would not apply here. We are not dealing with extensive – or even any – factfinding reviewed under a deferential standard. Rather, the issue is the sufficiency of a complaint's *allegations*, subject to *de novo* review. X's argument – that review of the sufficiency of pleading standards is beyond circuit court jurisdiction – would make it impossible to appeal any non-final ruling on a motion to dismiss. That cannot be the law, nor is it. *Sonos, Inc. v. Google LLC*, 591 F. Supp. 3d 638, 649 (N.D. Cal. 2022) (Alsup, J) (certifying for appeal non-final dismissal because "reasonable minds may differ" as to whether the complaint alleged "enough factual matter" for "pleading willfulness and indirect infringement").[1]

---

[1] This Court has certified many cases involving mixed questions of law and fact. *Bryan v. United Parcel Serv., Inc.*, 307 F. Supp. 2d 1108, 1115 (N.D. Cal. 2004) (Alsup, J.) ("The issue certified for interlocutory appeal is whether this record shows that plaintiffs are disabled in the major life activity of 'working' within the meaning of FEHA and Section 12926.1(c)."); *K.H. by & through Humphrey v. Antioch Unified Sch. Dist.*, 424 F. Supp. 3d 699, 700 (N.D. Cal. 2020) (Alsup, J.) (certifying appeal of summary judgment order regarding application of the theory of respondeat superior under the ADA); *Amaro v. City of Oakland*, 2010 WL 669240, *15 (N.D. Cal. 2010) (Alsup, J.) (certify appeal of denial of summary judgment order that turned on application of equitable estoppel based on the police's alleged misrepresentations).

*Shopify* is to Rule 12(b)(2) what *Twombly* was to Rule 12(b)(6).  In that regard, the Seventh Circuit's decision *In re Text Messaging*, 630 F.3d at 624-27, is directly on point.  There, Judge Posner granted interlocutory appeal to "clarif[y]" *Twombly*'s plausibility standard.  Though *Twombly* had been decided three years earlier, the court noted that it was still a relatively "recent decision" and, because its "scope [was] unsettled," "pleading standards in federal courts were in ferment."  *Id*.  The case, therefore, did not involve the "routine application of well-settled legal standards to facts alleged in a complaint," but instead involved both "interpretation, and not merely the application, of a legal standard."[2] *Id*.  Rejecting the argument that this would involve an appeal of a "'mixed question of fact and law' or an 'ultimate question of fact,'" the court explained that these "are not helpful labels" because evaluating the sufficiency of allegations "taken as true" does not involve "hunting through the record," a review of any "factfindings," or "an application of a legal standard to factfindings."  *Id*.

Here, too, Bright Data brought a "facial challenge" to the sufficiency of the Complaint's jurisdictional allegations, all of which the Court accepted as "true."  ECF 67 at 5.  The Court did not deny Bright Data's personal jurisdiction motion because X pled enough facts to warrant further discovery; it found the alleged facts themselves sufficient to trigger personal jurisdiction.  Indeed, while the Court noted that Bright Data could still challenge personal jurisdiction at trial, it said it "seems unlikely" that "discovery [would] somehow alter[] [its] analysis" in light of this Court's view of the applicable legal standard.  *Id*.  As such, the legal standard and its application to the allegations is a proper issue for interlocutory appeal.  *Cooper-Standard Auto., Inc. v. SFC Sols. Czestochowa SP. Z.O.O.*, 2023 WL 6850578, *2 (E.D. Mich. 2023) (where factual disputes in the parties' pleadings are not material, the question of whether the "purposeful availment prong has been satisfied" involves a "controlling question of law."); *Go-Video, Inc. v. Akai Elec. Co.*, 885

---

[2] X's citation to *Ji v. Naver Corp.*, 2024 WL 251402, *2 (N.D. Cal. 2024), misses the mark because it involved "application of **settled** law to *specific* alleged facts."  In contrast, the *Shopify* standard is novel and anything but settled.  *See ICTSI*, 2020 WL 2768683, at *5 (granting certification because the proper interpretation and application of controlling precedent did "not involve the 'routine application of a well-settled legal standard' because the standard is not well-settled.") (citing *Text Messaging*).

F.2d 1406, 1408 n.4 (9th Cir. 1989) (question of whether complaint suffices to establish personal jurisdiction is a "legal question" for purposes of 1292(b)); *Ins. Co. of N. Am. v. Marina Salina Cruz*, 649 F.2d 1266, 1274 (9th Cir. 1981) (analyzing whether exercise of personal jurisdiction would be "reasonable" under § 1292(b)).[3]

### B. There are Substantial Grounds for Differences of Opinion Concerning the Proper Interpretation and Application of Shopify.

X does not dispute that *Shopify* is controlling precedent. Instead, it says that *Shopify* – now just a few months old – is so clear and settled that there can be no substantial grounds for differences of opinion concerning its interpretation and application. But with lower courts reaching polar opposite decisions on virtually identical facts, each relying on different parts of the *Shopify* opinion to support disparate treatment of these defendants, the issue is tailor-made for clarification by the Ninth Circuit.

X first leads the court astray by suggesting that differences among the ***district*** courts within the Ninth Circuit is not enough to create substantial grounds for differences of opinion. That "settled law might be applied differently," it says, "does not establish substantial ground for difference of opinion" because such differences only arise "where the *circuits* are in dispute" on an issue never addressed by the Ninth Circuit, or "if novel and difficult questions of first impression are presented." P. Br. 4 (citing *Couch v. Telescope Inc.*, 611 F.3d 629, 634 (9th Cir. 2010)). But *Couch* did not say that disagreements among district courts were incapable of creating substantial grounds for differences of opinion. Indeed, the Ninth Circuit subsequently clarified

---

[3] X misplaces reliance on *Allen, Chehalem,* and *Johnson*, as none involved legal questions "stated at a high enough level of abstraction to lift the question out of the details of the evidence or facts of a particular case and give it general relevance to other cases in the same area of law." *Pharmacychecker.com*, 2024 WL 982784, at *3. In *Allen v. Conagra Foods, Inc.*, 2013 WL 6000456, **1-3 (N.D. Cal. 2013), the court expressly distinguished *Steering Comm.* because the dispute turned, not on legal standard, but on the factual determination of whether Parkay Spray should be considered a "spray type" fat or a "butter, margarine[, or] oil." In *Chehalem Physical Therapy, Inc. v. Coventry Health Care, Inc.*, 2010 WL 952273, **3-4 (D. Or. 2010), the summary judgment decision turned on the application of extensive Findings of Fact to the *specific* terms of a *specific* contract. In *Johnson v. Serenity Transp.*, 2017 WL 3168491, *1 (N.D. Cal. 2017), the dispute turned on the actual number of workers the defendant "supplied … at any given time" and the conditions of the specific workplace, not just the interpretation of labor statutes.

that there is no need for *any* split of authority because "interlocutory appellate jurisdiction does not turn on a prior court's having reached a conclusion adverse to that from which appellants seek relief." *Reese*, 643 F.3d at 688.

In any event, unlike in *Couch*, where the "defendants [had] not provided a single case" – at either the circuit or district court level – "that conflicts with the district court's construction or application" of the statute at issue, Bright Data has pointed to three cases – in addition to *Shopify* itself – that conflict with this Court's opinion.[4]  *See Pharmacychecker.com*, 2024 WL 982784, at *4 n.5 (distinguishing *Crouch*, and finding it "significant" that there is a "directly conflicting decision on the identical issue").  In response, X says these courts are not "in disarray."  P. Br. 4.  But "disarray" is not the standard.  The "substantial differences of opinion" standard is satisfied so long as the "appeal involves an issue over which reasonable judges might differ" and such "uncertainty provides a credible basis for a difference of opinion" on the issue.  *Reese*, 643 F.3d at 688; Wright & Miller, 16 Fed. Prac. & Proc. Juris. § 3930 (3d ed. 2022) ("certification may be justified [even] at a relatively low threshold of doubt").  That standard is satisfied.

There is a simple test this Court can use to determine if a difference of opinion exists: Faced with the allegations in these other cases would this Court conclude – like they did – that jurisdiction was lacking, or would it reach a different result?

The facts – side-by-side – are on the next page:

---

[4] 611 F.3d at 633; *see* D. Br. 1-2; *Sessa v. Ancestry.com Operations Inc.*, 2024 WL 195995 (D. Nev. 2024); *Kauffman v. Home Depot, Inc.*, 2024 WL 221434 (S.D. Cal. 2024); *Doe v. FullStory, Inc.*, 2024 WL 188101 (N.D. Cal. 2024).

| Factor | Shopify | Ancestry | Home Depot | FullStory | Bright Data |
|---|---|---|---|---|---|
| Plaintiffs Domiciled in Forum | Yes | Yes | Yes | No, but Class Members were. | Yes |
| Defendant has Forum Customers | Yes | Yes | Yes | Yes | Yes |
| Defendant Has Physical Offices and Operations in Forum | Yes | ? | Yes | ? | Yes |
| Defendant has California Employees | Yes | ? | Yes | ? | Yes |
| Defendant Operates Interactive, Not Passive, Internet Service | Yes | Yes | Yes | Yes | Yes |
| Defendant Accessed Plaintiffs' Devices in Forum | Yes | Yes | Yes | Yes | Yes |
| Data Extraction Occurred in Forum | Yes | Yes | Yes | Yes | Yes |
| Injury to Known Forum Residents | Yes | Yes | Yes | Yes | Yes |
| Platform Operates the Same Everywhere | Yes | Yes | Yes | Yes | Yes |
| *Jurisdiction?* | No | No | No | No | Yes |

In an effort to minimize the conflict among the lower courts, X argues that these other cases are distinguishable, essentially conceding that they are rightly decided under *Shopify*.  But its purported distinctions only *prove* the existence of a conflict.  X says *Ancestry* properly "limited itself to the defendants' forum-specific contacts related to [the] claims at issue."  P. Br. 4.  But that is precisely the point.  X does not identify any *factual* distinction between Ancestry.com and Bright Data, so the conflict must lie in the courts' differing interpretations of *Shopify*.  *Ancestry* expressly excluded facts – like plaintiffs' domicile and the existence of California customers – from consideration under Step 1 of *Shopify*, and concluded that the remaining *forum-specific* facts – like specifically scraping information about forum residents – did not exhibit "prioritization" under Step 2 of *Shopify*.  *See* 2024 WL 195995.  The *Ancestry* court, thus, engaged in a different mode of analysis, declined to consider facts this Court considered, and reached an opposite conclusion.

X's attempt to distinguish *Home Depot* fares no better.  X says *Home Depot* was properly decided because the "court declined to consider the shipment of a physical good to the forum."  P. Br. 4.  But the court *also* declined to consider or found insufficient the fact that Home Depot had thousands of California employees and numerous physical stores throughout the state, that Home Depot installed spyware on plaintiffs' physical devices in California, and that the data extraction occurred there.  *See* 2024 WL 221434, at **2-3.  In declining jurisdiction, the court held that Home Depot's physical operations did not bear a direct nexus to the claims (Step 1 of *Shopify*), even though the stores and the website were part of "coordinated efforts to maximize sales revenue in California."  *Id.*  This contrasts with this Court's Order, which relied on the allegation that "Bright Data has directed potential customers interested in the data, tools, and services at issue to a sales office in downtown San Francisco [and] located many members of its business development and sales team in the Bay Area."  ECF 67 at 4.  Similarly, the *Home Depot* court held that neither an internet provider's knowledge of "the whereabouts of customers through the data it collects from them and the tracking tools it deploys" nor the fact that plaintiff "resided [and] sustained his privacy-based injuries in that state" "move the needle" under *Shopify's* prioritization prong (Step 2) because Home Depot's website operates the same way everywhere.  2024 WL 221434, at *2.

This directly contrasts with this Court's order, finding jurisdiction lies because Bright Data was "on notice of X's residency" and, thus, it was "foreseeable" that some effects would be felt in California.  Again, X points to no factual distinctions between homedepot.com and Bright Data or their respective data extraction activities that would justify different outcomes in these cases.

X's effort to distinguish *FullStory* fails for similar reasons.  X says *FullStory* was rightly decided because the named plaintiff – in a nationwide class – was from Arizona, not California.  But the data extraction occurred in California, on a "California-based platform," from "users in California," causing injury to "Class members in California."  *See* 2024 WL 188101, at **9-11. As the court explained, these facts fail the "express aiming" requirement because the platform did not operate differently in California than elsewhere, and thus, did not exhibit the "prioritization" *Shopify* requires of a "broadly accessible web platform."  *Id*., at *11.  This directly contrasts with this Court's opinion that offering tools for the extraction of data from website operators, some of whom may be domiciled in California, suffices to establish jurisdiction.  ECF 67.

In short, the difference between this Court's Order and these other cases boils down to a difference of opinion concerning the interpretation and application of *Shopify*.  That satisfies the second prong of Section 1292(b).

### C.    The Case Will Be Materially Advanced By Appellate Resolution of These Controlling Legal Questions.

The third prong of Section 1292(b) is also satisfied.  As Bright Data explained, "resolution of the appropriate personal jurisdiction test would materially advance this litigation" because reversal could eliminate or substantially narrow the tort claims.  D. Br. 13-14.  In response, X does not deny that elimination of the tort claims would streamline the case in several ways.  *First*, dismissal of the tort claims would, in conjunction with Bright Data's motion for summary judgment on the browser-wrap claim, eliminate any forward-looking claim, effectively gutting the value of this case and mooting any injunctive relief.  *Second*, elimination of the tortious interference claims would eliminate any claim – past or future – relating to third-party usage of Bright Data's platform.  That would fundamentally alter the nature of the case.  It is one thing to stop Bright Data's own scraping; it is another to shut down third-party usage of the network

entirely. And even if the Ninth Circuit allowed some portion of the tortious interference claim to go forward, it might narrow the court's jurisdiction to claims relating to *California* users of the network, eliminating its ability to restrict usage by non-California users. *Third*, dismissal of the tort claims would substantially streamline discovery. Discovery into the identity of each third-party, their contractual status with X, Bright Data's knowledge of that status and their specific usage of the network to scrape X's website, X's own tracking of such usage, and any injury resulting therefrom would be unnecessary. Dismissal of the trespass claim would also obviate discovery into X's server capacity and performance.

Unable to contest these pragmatic considerations, X argues that an appeal would not materially advance the litigation because, even if the tort claims were dismissed, its breach of contract claim would still go forward. P. Br. 6. But there is no requirement that reversal of the challenged order terminate the *entire* litigation. *Reese*, 643 F.3d 681 at 688 ("neither § 1292(b)'s literal text nor controlling precedent requires that the interlocutory appeal have a final, dispositive effect on the litigation, only that it 'may materially advance' the litigation"); *U.S. v. Woodbury*, 263 F.2d 784, 787 (9th Cir. 1959) ("we do not hold that a question brought here on interlocutory appeal must be dispositive of the lawsuit."); *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012) (Posner, J.) (same; noting that appeal of one key claim may facilitate resolution by settlement or otherwise); *Ass'n of Irritated Residents v. Fred Schakel Dairy*, 634 F. Supp. 2d 1081, 1092 (E.D. Cal. 2008) (granting certification of appeal of one of three claims).

Rather, it is enough that reversal would eliminate significant portions of the case, thereby, *advancing* the ultimate resolution of the case. *Dukes v. Wal-Mart Stores, Inc.*, 2012 WL 6115536, *5 (N.D. Cal. 2012) ("The ultimate question is whether permitting an interlocutory appeal would minimize the total burdens of litigation on parties and the judicial system by accelerating or at least *simplifying* trial court proceedings."); *see also* Wright & Miller, § 3930 ("appeal is appropriate" if it "promises to … shorten the time required for trial."). In *Santa Clara v. Astra USA, Inc.*, for example, this Court certified for appeal an order barring discovery of the basis for contractual price calculations where, while some "issues would remain," the case would be "worth little" absent

such discovery.  2008 WL 5055395, *4 & n.2 (N.D. Cal. 2008) (Alsup, J.); *see also Integra Med Analytics LLC v. Providence Health & Servs.*, 2019 WL 6973547, *5 (C.D. Cal. 2019) (granting certification where an appeal could "mitigate" discovery burdens).  Similarly, in *Sonos, Inc. v. Google LLC*, this Court certified for appeal claims relating to "willful infringement for purposes of enhanced damages," even though the "adequacy" of other claims were not contested.  591 F. Supp. 3d 638, 642, 649 (N.D. Cal. 2022) (Alsup, J).[5]

Here, X does not deny that its tort claims add a new dimension to its case, and that their dismissal would limit the scope of the parties' dispute.  That suffices to grant certification.

## III. THE COURT SHOULD REJECT X'S ATTEMPT TO GRAFT ONTO RULE 1292(B) ADDITIONAL NON-STATUTORY REQUIRMENTS.

With all three § 1292(b) elements satisfied, X nonetheless tries to stave off certification because Bright Data did not move for reconsideration of the Court's Order or point to any additional exceptional circumstances.  The court should reject X's attempt to graft these two non-statutory requirements onto § 1292(b).

### A. No Companion Motion for Reconsideration is Required for Interlocutory Appeal.

X argues that "if Bright Data believed the Court committed clear error, it should have sought reconsideration – not certification."  P. Br. 7.  That argument is frivolous.  As X notes, Bright Data "spen[t] 10 pages" of its opening brief explaining in chapter and verse why this Court's decision was inconsistent with *Shopify*.  *Id*. at 2.  That X decided not to respond – asserting no "substantive response … is necessary" – shows the existence of a dispute, not the absence of it. *Id*.  The decision not to move for reconsideration does not change this.  Nor does it somehow bespeak a lack of confidence in Bright Data's position, as X claims.

---

[5] X misplaces reliance on *Taylor v. Oakland*, 2007 WL 3287843 (N.D. Cal. 2007) (Alsup, J.), which involved the denial of summary judgment for certain claims relating to a single incident: an alleged unlawful arrest involving excessive force.  *See* P. Br. 6.  While the court recognized that an appeal could in theory limit the scope of any trial, the plaintiff was suffering from terminal cancer.  The Court, therefore, believed it was better to "go forward with a trial now while a jury can still hear her testify live than wait for a resolution of an appeal that would not even terminate this litigation."  2007 WL 3287843, at *2.  This is exactly the type of pragmatic analysis required by the rule.  Here, appeal may *substantially* simplify the case by eliminating wide swaths of conduct with no attendant prejudice to X.

Nothing in § 1292(b) requires a movant to file a companion motion for reconsideration. Bright Data rightly assumes that the Court considered Bright Data's arguments, but that it disagreed with them. Bright Data is not required to ask the equivalent of "did you really mean it when you ruled against us" before pursuing an appeal. Indeed, contrary to X's suggestion – that "the fact that Bright Data did not bother to seek reconsideration counsels against certification" – this Local Rules make clear that motions for reconsideration are a *disfavored* method for asserting error. *See* Local Rule 7-9(b) (requiring a motion for leave to file a motion for reconsideration, and limiting the grounds for such a motion); *In re LDK Solar Sec. Litig.*, 584 F. Supp. 2d 1230, 1260 (N.D. Cal. 2008) (Alsup, J) (motion for reconsideration "frivolous" when it seeks to relitigate an issue already decided without any new facts or intervening changes in law). Put simply, Bright Data cannot be faulted for invoking the correct, rather than the wrong, procedural vehicle.[6]

### B.   Exceptional Circumstances Beyond the 1292(b) Requirements are Not Required.

X seeks to prevent certification by arguing that, "even if Bright Data could satisfy the requirements of § 1292(b) … this case does not present any exceptional circumstances justifying interlocutory appeal." P. Br. 6. But X's attempt to graft onto Rule 1292(b) an additional non-statutory requirement that a *district court* find "exceptional circumstances" violates the statute's clear and unambiguous language.

Section 1292(b) establishes a clear framework for certification of interlocutory rulings. It requires that, if a district judge is "of the opinion" that the order involves "a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he ***shall*** so state in writing in such order." 28 U.S.C. § 1292(b). If the court does certify the issue for appeal, the *circuit court* then has discretion concerning whether to permit the appeal. Under this

---

[6] X misplaces reliance on *Reese*, 643 F.3d at 681, which **granted** the **defendant's** request for certification of the disputed controlling question of law. After the court accepted jurisdiction, the ***plaintiff*** sought review of *additional* questions beyond the defendants' certified questions, but it did not assert error in the lower court by seeking reconsideration, certification, or cross-appeal. The Ninth Circuit simply held that those additional questions were not properly before the court.

framework, the district court cannot impose a separate exceptional circumstances requirement. Indeed, the word "shall," by its very nature is non-discretionary.

There are, of course, certain discretionary *elements* of the 1292(b) inquiry. A denial of certification is unreviewable on appeal. In that sense, any discretion conferred by the statute is unfettered. Similarly, there is modicum of discretion embedded in the elements of 1292(b) because it asks for the court's own subjective opinion—not as to whether there should be an appeal, but whether the 1292(b) factors have been met. Thus, a court must engage in its own soul searching to determine whether it truly is "of the opinion" that the statutes elements have been met. But once it makes that determination, "***the district court should not hesitate to certify an interlocutory appeal***" without regard to other factors. Wright & Miller, 2 Fed. Prac. & Proc. § 3:212.

X misplaces reliance on *Ibrahim v. Dep't of Homeland Sec.*, 2009 WL 10677242, * 2 (N.D. Cal. 2009) (Alsup, J.). There, the court found that there was no substantial difference of opinion, and thus, the elements of 1292(b) were not met. In *dicta*, the Court went on to make two additional statements: (i) that "even if the requirements are satisfied," a district court "still has discretion in deciding whether or not to grant" certification, and (ii) a "party seeking certification for interlocutory appeal has the burden of showing … exceptional circumstances." *Id*. As to the first statement, while a court clearly has discretion to determine whether the 1292(b) elements have been met, the court cited no authority for the proposition that a court has discretion to impose requirements *beyond* those elements or to deny certification even if it believes the elements are met. As to the second statement, the court cited *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981). But *In re Cement* expressly stated that the movant "has the burden of persuading *the court of appeals* that exceptional circumstances" exist, not that it has the burden of persuading the district court of the same thing. Put simply, the prerogative to determine whether to entertain an appeal – *once* the 1292(b) factors have been met – rests with the circuit court. Because the 1292(b) elements have been met here, the Court should so state.

## IV.   CONCLUSION.

For the foregoing reasons the Court should certify its Order (ECF 67) for immediate appeal.

Dated: March 14, 2024

Respectfully submitted,

/s/ *Colin R. Kass*

Colin R. Kass*
PROSKAUER ROSE LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 416-6890
ckass@proskauer.com

David A. Munkittrick*
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
(212) 969-3000
dmunkittrick@proskauer.com

Robert C. Goodman (Bar No. 111554)
Lauren Kramer Sujeeth (Bar No. 259821)
ROGERS JOSEPH O'DONNELL, PC
311 California Street, 10th Floor
San Francisco, CA 94104
(415) 956-2828
rgoodman@rjo.com
lsujeeth@rjo.com

Sehreen Ladak (Bar No. 307895)
PROSKAUER ROSE LLP
2029 Century Park East, Suite 2400
Los Angeles, CA 90067-3010
(310) 284-5652
sladak@proskauer.com

*Attorneys for Defendant Bright Data Ltd.*
*\*Admitted Pro Hac Vice*