

Proskauer Rose LLP | 1001 Pennsylvania Avenue, NW | Washington, DC 20004

April 8, 2024

Judge William H. Alsup
Phillip Burton Federal Building & U.S. Courthouse
450 Golden Gate Avenue, 16th Floor Clerk's Office
San Francisco, CA 94102

Re: *X Corp. v. Bright Data*, 23-cv-03698 (N.D. Cal.)
<u>Responses to X's Letter Motion to Compel</u>

Dear Judge Alsup:

Bright Data writes in response to X's letter regarding Bright Data's discovery responses. X's letter motion to compel should be denied. X misstates Bright Data's extensive offers of production, and its many complaints are groundless. Because X shoehorns so many distinct issues into its letter, Bright Data respectfully requests the opportunity to fully brief the issues. We provide here a brief overview.

### A. *Bright Data Has Made Extensive Offers of Production.*

Bright Data is not afraid of discovery; it believes it will prove – unequivocally (as Judge Chen recently found) – that Bright Data does not scrape behind a login. X's discovery requests seek to confirm this simple fact, and Bright Data has been more than willing to turn over documents that X has requested. Bright Data has already made two productions of publicly-available information, and pending entry of the Protective Order, will produce the following documents:

- All data Bright Data scraped from X;
- Source code for the relevant products and services;
- Activity logs relating to Bright Data's scraping activities;
- Documents relating to the Terms and Bright Data's use of X accounts;
- Marketing materials relating to X or the relevant products and services; and
- Communications and documents concerning California customers who scraped X.[1]

X does not explain why Bright Data's offers of production fail to provide X the discovery it needs to litigate the issues in this case, or attempt to show that Bright Data's offers are not reasonable and proportional. Instead, it misstates Bright Data's offers, and complains because X's blunderbuss demands are broader than Bright Data's offers. But X's demands are facially overbroad (and – under this Court's Standing Order – impermissible for that reason alone), and the limits Bright Data placed on X's requests are more than reasonable.

### B. *Bright Data's Proposed Relevant Period is Reasonable.*

Bright Data offered to produce documents between July 26, 2019 through September 25, 2023. The beginning period was based on the longest statute of limitations for any of X's asserted

---

[1] Certain offers of production were limited to custodian searches or targeted searches. For custodian searches, X has agreed that the parties will limit custodians to a total of 8 (five to start with, and three more after initial productions). For targeted searches, the requests for customer-specific information was limited to Bright Data's CRM database (which houses Bright Data's customer communications). X's letter motion does not mention, or complain about, this.



Page 2

claims. While X acknowledges that some beginning cut off is necessary by proposing January 2017, X does not explain why any pre-2019 conduct could be relevant to X's claims. As such, the Court should adopt Bright Data's proposed start time. As for the ending period, X filed suit on July 26, 2023. But the only relevant post-complaint activity that differs in kind from that which preceded it is Bright Data's September 25th termination and rejection. Accordingly, Bright Data offered to produce documents through that date. During the meet and confer, X did not explain why this did not suffice. And even if there were some requests (such as those relating to damages) that might require some post-complaint supplementation, it is no reason to require Bright Data to produce "all documents" in response to every request throughout the life of the case.

### C. Bright Data Did Not Restrict its Production to "Marketing Materials."

X *falsely* accuses Bright Data of attempting "to limit its production to 'marketing materials.'" It does so by inappropriately *cropping* Bright Data's responses to omit its full offers of production.[2] *See* Ex. A. As noted above, in addition to marketing materials, Bright Data offered to produce **source code**, activity **logs**, and **communications** with (California) customers concerning its products. X does not say why this is insufficient to "describ[e] [Bright Data's] Scraping Tools, their features, functionality, and operation." *See* RFP 2.[3] X's request – seeking "**all** documents related to Bright Data's scraping tools" – is facially overbroad and unreasonable because it would call for virtually every document in the company. ECF 79 at 2.

### D. X's Requests for Documents Relating to X's "Technological Measures" to Disrupt Public Search Should Be Quashed.

The parties' biggest substantive discovery dispute concerns documents relating to the way Bright Data's tools address X's "anti-scraping" technologies, *i.e.*, technologies that are designed to prevent **public** search. *See* RFPs 6, 8, 16; *see also* RFPs 2-5, 7 12. That information is ***irrelevant***. As an initial matter, public scraping is not unlawful. As this Court observed, X's technological blocks are akin to putting up a screen to block the public's view of a football game. If the screen has holes allowing the public to view the game, "God bless them." CMC Tr. 9. Indeed, as Judge Chen observed in granting summary judgment in favor of Bright Data for its public scraping of Facebook and Instagram, there is a "difference between defeating anti-automated scraping and piercing privacy walls." *Meta Platforms, Inc. v. Bright Data Ltd.*, 2024 WL 251406, *7 (N.D. Cal. 2024). Certainly, if the conduct is lawful, there is no basis for discovery into it. But even if Bright Data's public search was unlawful, there is no need to delve into the specific mechanics of it. Bright Data does not dispute that it engaged in such search, and it has offered to produce the data it scraped, its Source Code, logs, information relating to the (California)

---

[2] ECF 79 at 2. Specifically, in response to RFP 12, Bright Data offered to "conduct a Targeted Search for responsive marketing materials sufficient to describe the features of the Relevant Scraping Services. ***Bright Data will also conduct a Targeted Search of its CRM database for responsive documents relating to California customers who used a Relevant Scraping Service to scrape information hosted on X***." Without any disclosure to the Court, X omitted the portion in red from its Exhibit.

[3] For the other requests X highlights, they are, by their nature, focused on marketing materials. *See* RFP 4 (seeking "Documents used to describe Your Scraping Tools … to **Customers**"); RFP 12 (seeking materials "distributed, published, or made available … to … *Customers*"); RFP 3 (seeking similar for employees); RFP 5 (same for "investor" materials). Bright Data's offer to produce marketing materials is, therefore, proportional and appropriate.



Page 3

customers that use Bright Data's tools to do so, and information relating to damages. X does not explain why this is insufficient, or why it is entitled to more. Given the importance of this issue, Bright Data specifically requests further briefing.

### E.    Customer-Specific Discovery Should Be Limited to California Customers.

X's Terms state that all disputes will be governed by California law. X must live with that choice. California law, however, does not apply extra-territorially. It does not – and cannot – govern relationships between Bright Data and its customers in far-away lands. When a farmer in Okinawa, Japan uses Bright Data's tools in Japan, accessing Twitter's servers in Japan, there is no connection to California, and neither California's courts nor its substantive law can regulate Bright Data's services in such far-away lands. During the parties' meet and confer, X recognized (whether rightly or wrongly) that its requests seeking customer-specific information beyond California's borders would be informed by this Court's ruling on Bright Data's motion for interlocutory appeal (not to mention the territorial scope of California tort law). It therefore agreed to postpone further discussion of these issues until after the Court rules. Though X now reneges on that position, the fact remains that discovery of customer-specific information should be limited to instances of scraping bearing some direct connection to California.[4] *See Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1043-44 (N.D. Cal. 2016) (citing cases) (quashing requests that were not tailored "geographically" but sought information about Respondent's global activities). Given the importance of this issue, Bright Data specifically requests further briefing.

### F.    X's Hodgepodge of Other Discovery Demands Should Be Rejected.

X closes with a panoply of complaints about other overbroad and improper discovery requests. For most of these, X failed to properly meet and confer, referring to them only in passing, if at all. But if the Court wishes to entertain motion practice relating to them, it should order separate letters, or full briefing, for the parties to fully address the different issues at play. In a nutshell, X's hodgepodge requests seek information relating to some unalleged and irrelevant "alter ego" theory of liability concerning non-party affiliates (RPFs 42-44); discovery-on-discovery, without any allegations that Bright Data has failed to preserve or will not produce responsive information (RFPs 13, 51); irrelevant and privileged settlement information concerning unrelated cases (RFP 53); and documents that have absolutely nothing to do with this case, other than that they may have been sent or received by a custodian (RFPs 49, 52). None of these requests are reasonable or proportional. The Court should strike them or order additional briefing.

Sincerely,
/s *Colin Kass*

---

[4] X misplaces reliance on *Americans for Prosperity Found. v. Harris*, 2015 WL 12859225 (C.D. Cal. 2015). There, the court **denied** the motion to compel extra-territorial documents. It noted that, in the context of the specific claim there, such documents might be relevant, but nonetheless the producing parties' geographic limitations were reasonable. Here, too, Bright Data has offered to produce customer-specific information that bears a relationship to scraping in California, but believes that conduct relating to foreign conduct by foreign parties is a bridge too far.