QUINN EMANUEL URQUHART & SULLIVAN, LLP
Andrew Schapiro (*Pro Hac Vice*)
*andrewschapiro@quinnemanuel.com*
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606-1881
Telephone: (312) 705-7400

David Eiseman (Bar No. 114758)
*davideiseman@quinnemanuel.com*
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone: (415) 875-6600

Stefan Berthelsen (*Pro Hac Vice*)
*stefanberthelsen@quinnemanuel.com*
51 Madison Ave, 22nd floor
New York, NY 10010
Telephone: (212) 849-7014

*Attorneys for Plaintiff*
*X Corp.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| X CORP., a Nevada corporation,<br><br>              Plaintiff,<br><br>       vs.<br><br>BRIGHT DATA LTD., an Israeli corporation,<br><br>              Defendant. | Case No. 3:23-cv-03698-WHA<br><br>**DECLARATION OF ANDREW H. SCHAPIRO IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISQUALIFY QUINN EMANUEL**<br><br>Judge:        Hon. William Alsup<br>Courtroom:  12, 19th Floor<br>Date:          July 1, 2024<br>Time:         8:00 a.m. |

## DECLARATION OF ANDREW H. SCHAPIRO

I, Andrew H. Schapiro, declare as follows:

1. I am an attorney licensed to practice in the States of Illinois and New York and am admitted *pro hac vice* to practice before this Court. I am a partner at Quinn Emanuel Urquhart & Sullivan LLP ("Quinn Emanuel") representing Plaintiff X Corp. ("Plaintiff" or "X") in this case. I have personal knowledge of the matters set forth in this Declaration. If called as a witness, I would testify competently to those matters.

2. I have never represented Bright Data Ltd. or any other associated entity in any capacity.

3. On May 11, 2024, X approached me about stepping in to represent X in this case.

4. I was already working with X on an unrelated matter, a copyright case with fellow Quinn Emanuel partner David Eiseman.

5. Quinn Emanuel represents X in a substantial number of cases across state, federal, and arbitral tribunals.

6. A conflict check revealed that other Quinn Emanuel attorneys had previously represented Bright Data, so I contacted my colleagues Hope Skibitsky and Renita Sharma to inform them that X wished to retain Quinn Emanuel to represent X in this case.

7. Without disclosing any confidential Bright Data information, Ms. Skibitsky and Ms. Sharma explained to me that the scope of the prior Bright Data engagement had been limited to an analysis of pending litigation against Meta, had not touched on X, and was not in their view substantially related to this case.

8. Quinn Emanuel has put up an ethical wall between the attorneys that previously worked for Bright Data and the attorneys currently working on this case. I have complied with the requirements of that ethical wall, as have, to the best of my knowledge, all Quinn Emanuel attorneys to which it applies. The wall has prevented attorneys working on the X matter from having any substantive communication regarding this case or Quinn Emanuel's prior work for Bright Data with anyone at Quinn Emanuel who previously performed work for Bright Data. I have never received or reviewed confidential Bright Data information.

9. After being retained by X, the Quinn Emanuel team and I worked diligently and on a short timetable to investigate the facts and prepare X's Motion for Leave to Amend and X's proposed Second Amended Complaint. This preparation was a substantial undertaking that involved interviewing multiple witnesses at X, reviewing the filings and discovery to date in the case, and conducting extensive legal research.

10. On June 4, 2024, Mr. Eiseman, Stefan Berthelsen, and I entered our appearance in the case in advance of filing X's Motion for Leave to Amend and its proposed Second Amended Complaint.

11. Prior to entering our appearances, Quinn Emanuel did not seek permission from Bright Data to represent X because we did not believe the matters were substantially related and because Bright Data had agreed in advance in the Meta Consultation Engagement Letter that Quinn Emanuel attorneys could enter an "appearance on behalf of another client adverse to Bright Data" in matters that were not substantially related.

12. I have substantial experience litigating complex business litigation and intellectual property matters, including cases involving copyright and copyright preemption, on behalf of technology and communications companies including Google, Charter Communications, Zazzle, YouTube, and X.

13. I have reviewed the complaint filed in *Meta Platforms, Inc. v. Bright Data Ltd.*, 3:23-cv-00077-EMC and the First Amended Complaint filed by X in this case. I have also reviewed Bright Data's chart of overlapping allegations in its pending motion. Attached hereto as **Exhibit 1** is a true and correct copy of the allegation comparison chart that Bright Data included in its Motion, ECF No. 93 at 12, but which adds the omitted allegations from the complaint in *Meta Platforms, Inc. v. Bright Data Ltd.*, 3:23-cv-00077-EMC, ECF No. 1 (N.D. Cal. Jan. 6, 2023) and the First Amended Complaint here, ECF No. 36. The chart includes an additional third column that notes where there are "no changes to the text" in the proposed Second Amended Complaint, ECF No. 90-2, beyond changes in paragraph number as compared with the First Amended Complaint. Those portions of the allegations that Bright Data omitted from its chart are in red text.

1  I declare under penalty of perjury of the laws of the United States that the foregoing is true
2  and correct. Executed in Chicago, Illinois on June 19, 2024.
3
4
5                                          */s/ Andrew H. Schapiro*
                                        Andrew H. Schapiro

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| X CORP., a Nevada corporation,<br><br>　　　　　Plaintiff,<br>　vs.<br><br>BRIGHT DATA LTD., an Israeli corporation,<br><br>　　　　　Defendant. | Case No. 3:23-cv-03698-WHA<br><br>**Allegation Comparison Chart**<br><br>Judge:　　　Hon. William Alsup<br>Courtroom:　12, 19th Floor<br>Date:　　　　July 1, 2024<br>Time:　　　　8:00 a.m. |

## ALLEGATION COMPARISON CHART[1]

| *Meta Complaint*<br>*Meta Platforms, Inc. v. Bright Data Ltd.*, 3:23-cv-00077-EMC, ECF No. 1. | *X First Amended Complaint*<br>ECF No. 36 | *X Proposed SAC*<br>ECF No. 90-2. |
|---|---|---|
| 31. "Defendant was bound by Facebook's and Instagram's Terms and Policies." | 39. "Defendant <span style="color:red">has expressly agreed to X Corp.'s Terms and</span> is <span style="color:red">therefore</span> bound by those Terms." | *No changes to text; now paragraph 76.* |
| 77. "All Facebook and Instagram users must agree to the Facebook and Instagram Terms." | 79. "All X users must agree to abide by the Terms." | *No changes to text; now paragraph 124.* |
| 78. "Defendant is aware that the Facebook and Instagram Terms govern <span style="color:red">Facebook and Instagram users' use of Facebook and Instagram, respectively. As a Facebook and Instagram user itself, Defendant agreed to and was bound by the Facebook and Instagram Terms</span>." | 80. "As a user of X Corp.'s platform, <span style="color:red">as well as a present or former X account holder,</span> Defendant is aware of the Terms <span style="color:red">and that they govern all users who choose to interact with the X platform. Defendant is also aware of the Terms because several of its executives and employees are present or former X account holders</span>." | *No changes to text; now paragraph 125.* |
| 35. "Defendant used its Facebook and Instagram accounts to promote its automated scraping services, <span style="color:red">tools, and</span> | 45. "Defendant <span style="color:red">and its executives have repeatedly</span> used these X accounts to <span style="color:red">discuss and</span> promote their data-scraping products and | *No changes to text; now paragraph 82.* |

---

[1] The portions of the allegations that Bright Data omitted from its chart are in red text.

| | | |
|---|---|---|
| scraped data sets as set forth in Figures 1 and 2 below." | services including but not limited to the following posts: [examples in sub-paragraphs]." | |
| 36. "Since at least April 2021, and continuing to the present, Defendant has used automated means to scrape and facilitate the scraping of data from Facebook and Instagram." | 46. "Defendant, per its own admissions, has engaged in widespread scraping of X Corp.'s data, circumventing X Corp.'s technical barriers and violating the Terms to which it agreed. Defendant has also facilitated the scraping of data from X and induced X users to violate X Corp.'s Terms." | *No changes to text; now paragraph 83.* |
| 57. "On information and belief, Defendant took these steps to evade Meta's detection systems, which are designed to identify unique browsers, require users to log in with accounts, restrict how many times certain data is viewable and can be requested by a logged out user, and limit the number of times a user can interact with Meta computers in a set amount of time." | 57. "Defendant's Web Scraper tool allows individuals to evade detection utilizing a proxy network in order "to remain anonymous, avoid IP blocking, access geo-restricted content, and improve scraping speed." The tool also includes an "unblocking solution" that is designed to evade anti-scraping measures like those employed by X Corp. Defendant specifically advertises that its Web Scraper tool can be used to "[e]asily scrape data from any geo-location while avoiding CAPTCHAs and blocks."" | *No changes to text; now paragraph 95.* |
| 68. "Defendant has breached and continues to breach Instagram's Terms and Facebook's Terms 3.2.1, 3.2.2, 3.2.3, and 3.2.5, which prohibit (i) using automated means without Meta's permission to scrape data from Facebook and Instagram, (ii) facilitating others to scrape data from Facebook and Instagram without Meta's permission, and (iii) selling data obtained from Facebook or Instagram." | 70. "Defendant has repeatedly violated the Terms including by (i) accessing the X platform through automated means without specific authorization from X Corp.; (ii) scraping data from the X platform without authorization; (iii) selling tools that enable others including X users, to access the X platform by automated means and to scrape data; (iv) selling proxy services that enable others, including X users, to access the X platform by automated means and evade X Corp.'s anti-automation and anti-scraping tools; and (v) selling data that Defendant scraped from the X platform." | *No changes to text; now paragraph 115.* |
| 80. "By offering services and tools designed to scrape data from Facebook | 83. "By offering services and tools designed to provide | *No changes to text; now paragraph 128.* |

| | | |
|---|---|---|
| and Instagram in violation of the Facebook and Instagram Terms, Defendant induced a breach or disruption of the Facebook and Instagram Terms by other Facebook and Instagram users." | automated access to the X platform, and to scrape data from the platform, Defendant induced a breach or disruption of the Terms by X users." | |
| 8. "Defendant operates or operated multiple Facebook accounts and thereby agreed to Terms of Service that govern the use of Facebook ("Facebook Terms") and Meta's Commercial Terms. The Court has personal jurisdiction over Defendant because Facebook's Terms and Meta's Commercial Terms both contain a forum selection clause that requires this Complaint be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County, and that Defendant submit to the personal jurisdiction of either of those courts." | 9. "This Court has personal jurisdiction over Defendant because Defendant has consented to X Corp.'s Terms which require all disputes related to the Terms be brought in federal or state courts located in San Francisco, California. As part of its agreement to those Terms, Defendant also consented to personal jurisdiction in California." | *No changes.* |
| 10. "Defendant knowingly directed and targeted its conduct at California and at Meta, which has its principal place of business in California. Defendant also maintains an office in San Francisco, California." | 10. "Additionally, this Court has personal jurisdiction over Defendant because Defendant knowingly directed prohibited conduct to California and California residents. Defendant offers its data sets and scraping tools for sale in California and to California residents, and has targeted X Corp., which has its principal place of business in California as well as X Corp.'s users located in California." | *No changes.* |