

Proskauer Rose LLP | 1001 Pennsylvania Avenue, NW | Washington, DC 20004

April 15, 2025

***Via ECF***

Hon. William H. Alsup
United States District Court for the Northern District of California

> Re:    *X Corp. v. Bright Data Ltd.*, 23-cv-03698 (N.D. Cal.)
> *Response to X's Mot. to Compel CRM Database Emails (ECF 250)*

Dear Judge Alsup:

Bright Data opposes X's letter (ECF 250) seeking reproduction of customer communications already produced as part of Bright Data's Customer Relationship Management ("CRM") database.[1]  Bright Data has already provided what X seeks.  Its motion should be denied.

***Bright Data Fully Complied With Rule 34.***  Bright Data did exactly what it promised.  By the deadlines set by this Court, it produced full entries with any potential relation to X directly from its CRM database.  As Bright Data explained to X, its CRM – as it is kept in the ordinary course of business – includes copies of customer communications.  That is precisely what Bright Data produced: its CRM in the "form … in which it is ordinarily maintained."  Fed. R. Civ. P. 34(b)(2)(E)(ii).

As X concedes, Rule 34's format requirement is disjunctive: "the producing party (barring some contrary agreement) 'must produce' information '*either* (1) in the form or forms in which it is ordinarily maintained, *or* (2) in a reasonably usable form or forms."  ECF 250 at 2.  This Court's rules favor the former: "***To the maximum extent feasible***, all party files and records should be retained and produced in their original form…."  Standing Order ¶ 23.  Production in a format other than as "ordinarily maintained," is merely an "option."  Fed. R. Civ. P. 34 advisory committee's note to 2006 amendment.

Bright Data produced from its CRM in its original form.  It produced all responsive communications it identified.  It did not conduct some separate email review and then plop those emails into the CRM database.  The CRM database is what Bright Data reviewed, and it is what Bright Data produced.

And of course, Bright Data produced all responsive customer communications from its agreed-upon custodian email inboxes.  X omits this fact, and ignores the Court's Rule that, "[w]ith respect to ESI, if both sides expressly agree that the producing party need only produce [from] agreed-on custodians, then the producing party need not volunteer additional ESI, relevant or not, adverse or not, known or not."  Standing Order ¶ 20.  That ends the inquiry.

At most, the Rules require "[u]nder some circumstances, the responding party … to provide some reasonable amount of technical support …. or other reasonable assistance to enable the requesting party to use the information."  Fed. R. Civ. P. 34 advisory committee's note to 2006 amendment.  Bright Data did this too.  When X complained that, because of "technical issues," some fields in the CRM production appeared to be corrupted or unreadable, Bright Data

---

[1] All emphasis added, citations and internal quotation marks omitted, and capitalizations conformed without brackets.

Proskauer»

Page 2

investigated and advised X how to change the viewing settings in Excel to read the content.  X ignores this too.

Unable to find refuge in the Rules, X distorts the truth.  It spins a tale of a "copy-and-paste" job in which Bright Data first found every email it ever had with each customer, and then, one by one, copied and pasted the contents into its CRM database for production.  X knows this is not true.  We explained during the April 3rd meet and confer that the customer communications are automatically pulled into the database in the ordinary course of business.[2]  X cannot change the facts to achieve a discovery advantage.

***Bright Data's CRM Database Production Is In a "Reasonably Usable Form."***  X's motion is premised on the notion that a global technology company represented by a sophisticated law firm with access to vendors and experts cannot figure out how to parse and read large .csv data files extracted from a database.  That is both dubious and false.  As X admits, Bright Data searched through and reviewed the communications in the CRM database to identify potentially responsive customers and entries.  Certainly, X can do so as well.  Indeed, it had no problem identifying a "highly relevant" entry to highlight in its letter.[3]

Bright Data produced its CRM data in the universal ".csv" format, which is a native format used to export database information.  By doing so, the content of the emails can be searched and extracted as desired using whatever program X prefers.  Here, X apparently chose to open the file in Excel, which is just one of many programs capable of viewing this information.  That X does not like the look and feel of Excel – a program it chose – does not mean that Bright Data withheld relevant information or made it difficult for X to view.

Nor do X's Exhibits accurately depict how a person would view the CRM database, even in Excel.  To create its demonstrative exhibit, X converts the Excel file into a static PDF, claiming it is a "representative snapshot."  But it is not.  X compressed the size of the cells in Exhibit B. One click of a button and the row height can be *automatically* adjusted for the entire file at once so that all the emails can be readily reviewed, just like any other email.  Indeed, Excel cells can be resized at will.  X knows this too, as it did just that for its Exhibit C, which is clearly readable.

X next complains that it cannot conceive how to use Bright Data's CRM database at trial or deposition.  Extracts and excerpts of database productions are routinely done in litigation.  And nothing prevents X from exporting an email it wishes to use into Word or PDF.

---

[2] This renders X's cases inapposite.  *Song v. Drenberg*, 2019 WL 5095744 (N.D. Cal. 2019), addressed a production of documents that were combined "from different sources and different document formats" into PDFs for purposes of production.  *Id*., at *6.  In *QuinStreet, Inc. v. Ferguson*, 2009 WL 1789433 (W.D. Wash. 2009), emails were produced in raw code rather than readable text.  Here, X does not deny that Bright Data produced the text of the communications as maintained in its CRM database.

[3] X no doubt chose this example because it believes the underlying customer exchange supports X's claims.  Not so. The full exchange shows Bright Data providing sample custom data sets to a customer with publicly available information and declining to include any information behind a log-in.  The exchange does not show the customer doing any scraping itself, logged-in or otherwise.



Page 3

*X's Demand for a Company-Wide Custodial Search Contrary to the Parties' Agreement Is Unwarranted, Unduly Burdensome, and Should Be Denied.*  The CRM database is Bright Data's central repository of customer communications.  There is no other single place where such communications are stored.  To do what X requests – search for and produce customer emails from individual email inboxes – would require a company-wide custodial search.  But the parties already agreed to manage the burden of custodial searches by limiting the search to agreed-upon sets of custodians.  For purposes of its customer communication requests, X agreed that Bright Data's proffered custodians were sufficient.  And X does not deny that Bright Data is producing responsive customer communications from those custodians' files.  It cannot now renege on its agreement because it does not like dealing with large files.

Independently recreating the emails contained within the CRM database would be a massive, costly undertaking.  This burden is not proportional to the needs of discovery, particularly as Bright Data has already produced the communications.  X does not dispute the burden, but instead argues it is "of [Bright Data's] own making."  ECF 250 at 3.  Not so.  X is receiving the benefit of Bright Data's centrally compiled customer communications.  If Bright Data did not maintain its CRM database with customer communications, X would receive the communications from the agreed-upon custodial files, but not more.  X does not dispute this either.  Bright Data's agreement to produce its CRM database (in addition to the emails in the designated custodians' files) should not be used against it to require Bright Data to now conduct virtually unlimited further custodian searches for largely irrelevant and certainly duplicative emails.

For these reasons, X's motion to compel should be denied.[4]

Sincerely,
/s/ *Colin R. Kass*
*Counsel for Bright Data, Ltd.*

---

[4] X also claims it is hampered by Bright Data's confidentiality designations, attempting for the third time to relitigate the Protective Order.  But X does not dispute that the CRM production contains Highly Confidential information, and X has refused to engage in the process for resolving designation disputes set forth in the Protective Order.