JOSHUA D. BRANSON*
*jbranson@kellogghansen.com*
ANDREW C. SHEN*
*ashen@kellogghansen.com*
DANIEL V. DORRIS*
*ddorris@kellogghansen.com*
MATTHEW D. READE*
*mreade@kellogghansen.com*
ABIGAIL DEHART*
*adehart@kellogghansen.com*
JORDAN R.G. GONZÁLEZ*
*jgonzalez@kellogghansen.com*
KALEB J. LEGORE*
*klegore@kellogghansen.com*
KELLOGG, HANSEN, TODD,
FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Telephone: (202) 326-7900
Facsimile: (202) 326-7999
* *Admitted Pro Hac Vice*

ADRIAN SAWYER, State Bar No. 203712
*sawyer@sawyerlabar.com*
SAWYER & LABAR LLP
1700 Montgomery Street, Suite 108
San Francisco, California 94111
Telephone: (415) 262-3820

*Counsel for X Corp.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| X CORP., a Nevada corporation, | Case No. 3:23-cv-03698-WHA |
| Plaintiff and Counterclaim-Defendant, | **X CORP.'S REPLY IN SUPPORT OF ITS MOTION FOR INTERLOCUTORY APPEAL AND FOR STAY PENDING ADJUDICATION** |
| v. | |
| BRIGHT DATA LTD., an Israeli corporation, | |
| Defendant and Counterclaim-Plaintiff. | Judge: Hon. William H. Alsup<br>Date: June 26, 2025<br>Time: 8:00 a.m.<br>Crtrm: 12, 19th Floor |

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ..............................................................................................................1

ARGUMENT......................................................................................................................2

I.      X Has Satisfied The § 1292(b) Requirements For Interlocutory Appeal ......................2

        A.      X Identified Two Controlling Questions Of Law .......................................2

        B.      There Are Substantial Grounds For Disagreement.....................................7

        C.      Interlocutory Appeal Would Materially Advance The Litigation ........................10

II.     The Court Should Enter A Stay Pending X's Interlocutory Appeal............................14

CONCLUSION.................................................................................................................15

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Advanced Analogic Techs., Inc. v. Linear Tech. Corp.*, 2006 WL 2850017
(N.D. Cal. Oct. 4, 2006)............................................................................................9

*Apple Inc. App Store Simulated Casino-Style Games Litig., In re*,
625 F. Supp. 3d 971 (N.D. Cal. 2022) ...................................................................2

*Asis Internet Servs. v. Active Response Grp.*, 2008 WL 4279695
(N.D. Cal. Sept. 16, 2008) .......................................................................................5

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985)......................................6

*Balintulo v. Daimler AG*, 727 F.3d 174 (2d Cir. 2013) ..............................................................14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................2, 10

*Best Carpet Values, Inc. v. Google LLC*:

   2022 WL 22843012 (N.D. Cal. May 2, 2022)................................................... 2-4

   2024 WL 1973486 (N.D. Cal. May 1, 2024) .................................................... 6-7

*Blue Shield of Va. v. McCready*, 457 U.S. 465 (1982) ..............................................................4

*Brantley v. NBC Universal, Inc.*, 2008 WL 11357958 (C.D. Cal. June 25, 2008) .........................7

*Brickman v. Facebook, Inc.*, 2017 WL 1508719 (N.D. Cal. Apr. 27, 2017).................................7

*City of Oakland v. Oakland Raiders*, 20 F.4th 441 (9th Cir. 2021)..........................................2, 4

*Consumerinfo.com, Inc. v. Chang*, 2009 WL 10673208 (C.D. Cal. Nov. 12, 2009)....................12

*CornerStone Staffing Sols., Inc. v. James*, 2014 WL 1364993
(N.D. Cal. Apr. 7, 2014) ..........................................................................................6

*Couch v. Telescope Inc.*, 611 F.3d 629 (9th Cir. 2010) .............................................................8

*Crowder v. LinkedIn Corp.*, 2023 WL 2405335 (N.D. Cal. Mar. 8, 2023) ...................................4

*Doe 1 v. Github, Inc.*, 2024 WL 4336532 (N.D. Cal. Sept. 27, 2024)..........................................5

*Dreamstime.com, LLC v. Google, LLC*:

2019 WL 341579 (N.D. Cal. Jan. 28, 2019), *aff'd*, 54 F.4th 1130 (9th Cir. 2022) .............3

54 F.4th 1130 (9th Cir. 2022) ......................................................................5

*Dynamic Random Access Memory (DRAM) Indirect Purchaser*
*Antitrust Litig.*, *In re*, 28 F.4th 42 (9th Cir. 2022) ..............................................14

*Ellis v. Salt River Project Agric. Improvement & Power Dist.*,
24 F.4th 1262 (9th Cir. 2022) .....................................................................4

*Facebook, Inc. v. Power Ventures, Inc.*, 2010 WL 3291750 (N.D. Cal. July 20, 2010) .................2

*Facebook Simulated Casino-Style Games Litig.*, *In re*, 2024 WL 2287200
(9th Cir. May 21, 2024) ...........................................................................2

*FDIC v. McSweeney*, 976 F.2d 532 (9th Cir. 1992) .........................................................14

*Feitelson v. Google Inc.*, 80 F. Supp. 3d 1019 (N.D. Cal. 2015)........................................3

*Fitbit, Inc. v. Laguna 2, LLC*, 2018 WL 306724 (N.D. Cal. Jan. 5, 2018)...................................12

*Fortyune v. City of Lomita*, 766 F.3d 1098 (9th Cir. 2014)......................................... 7-9

*Greenwood Tr. Co. v. Massachusetts*, 971 F.2d 818 (1st Cir. 1992)..............................................14

*Hansen Beverage Co. v. Innovation Ventures, LLC*, 2010 WL 743750
(S.D. Cal. 2010) ...................................................................................12

*Heaton v. Social Finance, Inc.*, 2016 WL 232433 (N.D. Cal. Jan. 20, 2016) ..............................12

*Hope Medical Enterprises, Inc. v. Fagron Compounding Services, LLC*,
2021 WL 6618726 (C.D. Cal. Apr. 20, 2021) ....................................................9

*Jackson-Jones v. Epoch Everlasting Plan, LLC*, 2024 WL 3221738
(C.D. Cal. May 10, 2024) ........................................................................12

*Kiewit Power Constructors Co. v. City of Los Angeles*, 2017 WL 6940508
(C.D. Cal. Nov. 28, 2017).........................................................................4

*Kinkead v. Humana, Inc.*, 2016 WL 9453808 (D. Conn. Oct. 13, 2016) ....................................14

*Kuehner v. Dickinson & Co.*, 84 F.3d 316 (9th Cir. 1996)............................................10

*Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 140 F.3d 1228 (9th Cir. 1998)................9

*Mauia v. Petrochem Insulation, Inc.*, 2020 WL 1031911 (N.D. Cal. Mar. 3, 2020)....................15

iii

*Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009)................................................................4

*Netflix Antitrust Litig., In re*, 506 F. Supp. 2d 308 (N.D. Cal. 2007) ................................10, 12, 15

*Oahu Gas Serv., Inc. v. Pacific Res., Inc.*, 838 F.2d 360 (9th Cir. 1988)......................................2

*Pacific Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438 (2009) ..........................................7

*Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681 (9th Cir. 2011) .......................................................7

*Ron Tonkin Gran Turismo, Inc. v. Fiat Distribs., Inc.*, 637 F.2d 1376 (9th Cir. 1981) ...............13

*Sambreel Holdings LLC v. Facebook, Inc.*, 906 F. Supp. 2d 1070 (S.D. Cal. 2012) ......................3

*SEC v. Blackwell*, 2004 WL 6829614 (S.D. Ohio Jan. 15, 2004)...................................................13

*Smart Modular Techs., Inc. v. Netlist, Inc.*, 2017 WL 3009217
      (E.D. Cal. July 14, 2017) ........................................................................................................12

*SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780 (9th Cir. 1996) ...............2

*Sundance Land Corp. v. Community First Fed. Sav. & Loan Ass'n*,
      840 F.2d 653 (9th Cir. 1988) ..................................................................................................10

*Tele Atlas N.V. v. NAVTEQ Corp.*, 2008 WL 4809441 (N.D. Cal. Oct. 28, 2008) ........................4

*Tristar Pictures, Inc. v. Del Taco, Inc.*, 1999 WL 33260839
      (C.D. Cal. Aug. 31, 1999)........................................................................................................12

*Turo Inc. v. City of Los Angeles*, 2020 WL 4287583 (C.D. Cal. July 27, 2020)...........................14

*Twin City Sportservice, Inc. v. Charles O. Finley & Co.*, 676 F.2d 1291 (9th Cir. 1982) ..............4

*United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001)....................................................3

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004).............2, 8

*ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254 (3d Cir. 2012)......................................................3

**STATUTES AND RULE**

Sherman Act, 15 U.S.C. § 1 *et seq.*..................................................................................................1

28 U.S.C. § 1292(b) ..............................................................................1, 2, 5, 7, 8, 14

9th Cir. R. 27-12 ................................................................................................................................14

**PLEADINGS**

Opening Brief for Plaintiff-Appellant, *City of Oakland v. Oakland Raiders*,
No. 20-16075 (9th Cir. Oct. 8, 2020), Dkt. 9......................................................................3

CREXi's Opposition to CoStar's Motion To Dismiss Crexi's Counterclaims,
*CoStar Grp., Inc. v. Commercial Real Est. Exch. Inc.*,
No. 2:20-cv-08819-CBM-AS (C.D. Cal. Sept. 13, 2021), Dkt. 86...................................8

Plaintiffs' Opposition to LinkedIn's Motion To Dismiss the Class Action
Complaint, *Crowder v. LinkedIn Corp.*, No. 4:22-cv-00237-HSG
(N.D. Cal. May 6, 2022), Dkt. 38 .......................................................................................8

Plaintiff Dreamstime.com LLC's Memorandum in Opposition to Defendant
Google LLC's Motion To Dismiss the Amended Complaint,
*Dreamstime.com, LLC v. Google, LLC*, No. 3:18-cv-01910-WHA
(N.D. Cal. Nov. 2, 2018), Dkt. 60 .......................................................................................3

Plaintiffs' Memorandum in Opposition to Defendant's Motion To Dismiss,
*Feitelson v. Google Inc.*, No. 5:14-cv-02007-BLF
(N.D. Cal. Oct. 17, 2014), Dkt. 39......................................................................................3

Parties' Joint Statement Regarding Discovery Disputes, *FTC v. Meta Platforms, Inc.*,
5:22-cv-04325-EJD (N.D. Cal. Sept. 21, 2022), Dkt. 91...................................................13

Plaintiffs' Opposition to Facebook's Motion To Dismiss Complaint Pursuant to
Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6), *Sambreel
Holdings LLC v. Facebook, Inc.*, No. 3:12-cv-00668-CAB-KSC
(S.D. Cal. June 8, 2012), Dkt. 34........................................................................................3

Hearing Transcript, *United States v. Google LLC*, No. 1:23-cv-00108
(E.D. Va. Mar. 27, 2023), Dkt. 70 ......................................................................................13

**OTHER MATERIALS**

@brandyaguirreAZ, X (May 27, 2025, 11:31 AM),
https://x.com/brandyaguirreAZ/status/1927387108278239457 .........................................11

@zillowgonewild, X (May 27, 2025, 12:15 PM),
https://x.com/zillowgonewild/status/1927398330885091458 ...........................................11

**INTRODUCTION**

Bright Data's counterclaims have transformed what was a straightforward case into a sprawling antitrust litigation spanning four U.S. and global product markets.  The length and cost of this newly complex litigation, as in many antitrust cases, will likely explode.  And websites across the internet – many of which have adopted terms of service similarly barring data scraping on their own platforms – could now face crippling antitrust exposure under the legal theory the Order (Dkt. 263, "Order") blessed.  Because an immediate appeal could avoid all that, the judicial-economy benefits alone are enough to warrant certification under 28 U.S.C. § 1292(b).  As Bright Data argued when it pursued an interlocutory appeal on personal jurisdiction last year, "certification may be justified" in such circumstances "even at a relatively low threshold of doubt."  Dkt. 75 at 8.

Bright Data's attempt to reverse course now is unpersuasive.  X previously opposed Bright Data's interlocutory-appeal motion (Dkts. 73, 74) because no reasonable jurist would have disagreed with this Court's personal-jurisdiction order, and because Bright Data's jurisdictional challenge – limited to X's tort claims – would not have meaningfully narrowed discovery anyway.  This motion (Dkt. 271, "Mot.") suffers from neither defect.  Before the Order, every previous attempt to plead a similar anti-scraping theory under the Sherman Act had failed at the pleading stage.  Bright Data still has identified no other decision suggesting otherwise.  Nor can it seriously contest that litigating its antitrust counterclaims will, as this Court put it, require a "massive undertaking."  3/27/25 Tr. 61:20-23.  Because a reversal by the Ninth Circuit could spare the parties from that undertaking, this Court should exercise its discretion to permit an appeal now.

Bright Data's contrary arguments mischaracterize the legal questions at stake and misrepresent the burden its counterclaims will impose.  True, as with any motion-to-dismiss decision, the Order applied legal principles to the specific allegations before it.  But those principles raise pure questions of law that reverberate far beyond X.  In urging that its factual allegations nonetheless immunize the Order from interlocutory appeal, Bright Data contradicts its own earlier arguments about § 1292(b).  And under any reasonable view of discovery, litigating the sprawling antitrust theories Bright Data chose to plead will be crushingly expensive and protracted – requiring discovery from customers and platforms around the globe.  X's motion should be granted.

1

**ARGUMENT**

**I.    X Has Satisfied The § 1292(b) Requirements For Interlocutory Appeal**

**A.    X Identified Two Controlling Questions Of Law**

***1. X has identified "questions of law."*** If a question does "not depend on a material dispute of fact," it is a "question of law" under § 1292(b). *Best Carpet Values, Inc. v. Google LLC*, 2022 WL 22843012, at *1-2 (N.D. Cal. May 2, 2022). "Whether specific conduct is anti-competitive is a question of law." *SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996) (citing *Oahu Gas Serv., Inc. v. Pacific Res., Inc.*, 838 F.2d 360, 368 (9th Cir. 1988)); *see Facebook, Inc. v. Power Ventures, Inc.*, 2010 WL 3291750, at *14 (N.D. Cal. July 20, 2010) ("question of law"). That is why so many courts, from the Supreme Court in *Twombly* and *Trinko* to a whole host of courts in this Circuit, have repeatedly dismissed antitrust claims at the pleading stage. *See* Mot. at 4-5 (citing cases). Whether an alleged practice promotes an "important element of the free-market system" is something the Supreme Court stressed can and should be decided at the threshold – before the staggering burdens of antitrust discovery come to fruition. *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004).

**Question 1** is a question of law because it asks whether Bright Data has a cognizable legal theory. That is, it asks whether anti-scraping terms – the likes of which scores of other platforms have adopted – can be plausibly anticompetitive. That question does "not depend" on minor differences in terms. *Best Carpet*, 2022 WL 22843012, at *2. In fact, courts in this District have certified questions involving online platforms that involve issues more fact-specific than those here. *See, e.g., In re Apple Inc. App Store Simulated Casino-Style Games Litig.*, 625 F. Supp. 3d 971, 995-96 (N.D. Cal. 2022) (online platforms' specific conduct hosting social casino applications).[1]

Bright Data argues (at 1, 5-11) that the real dispute here is factual, not legal. But virtually every antitrust plaintiff with a disputed legal theory says the same thing. For instance, in *City of Oakland v. Oakland Raiders*, 20 F.4th 441, 461 (9th Cir. 2021), the Ninth Circuit affirmed the

---

[1] The Ninth Circuit later dismissed this appeal for lack of jurisdiction because the district court "did not apply its ruling to each of the 125 causes of action" alleged. *In re Facebook Simulated Casino-Style Games Litig.*, 2024 WL 2287200, at *2 (9th Cir. May 21, 2024). That is no concern here. All quotation marks, citations, brackets, and emphasis are omitted unless noted.

dismissal of complex antitrust claims, despite the plaintiff's argument that the district court erred by "conflat[ing] legal issues with factual issues that should not be decided on a motion to dismiss," No. 20-16075 (9th Cir. Oct. 8, 2020), Dkt. 9 at 6.  Many other examples abound.[2]

Bright Data attempts (at 6) to divorce "anti-scraping terms generally" from "X's specific changes to its specific terms in the specific circumstances of its business and motivations."  But no matter how many times Bright Data uses the word "specific," Question 1 does "not depend" on the details of X's Terms. *Best Carpet*, 2022 WL 22843012, at *2.  Rather, Question 1 asks generally whether anti-scraping and anti-facilitation terms can be anticompetitive at all.  If the answer is no, the factual issues Bright Data cites (at 10, 14) – including "contract[s] of adhesion" and liquidated damages – make no difference to the antitrust analysis.  Terms that bar scraping or its facilitation on a defendant's platform are not plausibly anticompetitive – whether enforced through adhesive contracts or otherwise. *See United States v. Microsoft Corp.*, 253 F.3d 34, 58 (D.C. Cir. 2001) (per curiam) ("anticompetitive effect" required for contract "to be condemned as exclusionary").[3]

X also already refuted Bright Data's assertion (at 9) that X's "anti-facilitation" term undercuts the case for interlocutory review. *See* Mot. at 5-6, 10-11.  Bright Data responds (at 9) that this is the "first time" that X has argued that its anti-facilitation terms do not apply to the purchase of already-scraped data.  But X previously argued, multiple times, that its Terms cannot plausibly be read in that way. *See* Dkt. 165 at 11 n.6, 20 (Bright Data "fail[s] to allege that the

---

[2] *Compare Dreamstime.com, LLC v. Google, LLC*, 2019 WL 341579 (N.D. Cal. Jan. 28, 2019) (Alsup, J.) (granting motion to dismiss antitrust claims), *aff'd*, 54 F.4th 1130 (9th Cir. 2022), *with* No. 3:18-cv-01910-WHA (N.D. Cal. Nov. 2, 2018), Dkt. 60 at 12 (plaintiff arguing "[w]hether conduct is exclusionary or anticompetitive is a question of fact"); *compare Feitelson v. Google Inc.*, 80 F. Supp. 3d 1019 (N.D. Cal. 2015) (granting motion to dismiss antitrust action), *with* No. 5:14-cv-02007-BLF (N.D. Cal. Oct. 17, 2014), Dkt. 39 at 19 (plaintiff arguing "whether conduct is anticompetitive is a question of fact for the jury"); *compare Sambreel Holdings LLC v. Facebook, Inc.*, 906 F. Supp. 2d 1070 (S.D. Cal. 2012) (granting motion to dismiss antitrust claim), *with* No. 3:12-cv-00668-CAB-KSC (S.D. Cal. June 8, 2012), Dkt. 34 at 7 (plaintiff arguing that "many of the elements are inherently factual").

[3] X earlier explained why the cases Bright Data cites (at 8) are distinguishable, *see* Dkt. 186 ("Reply") at 8-9 & n.4, 10 n.6, which may be why the Order did not cite them. *See ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 267 (3d Cir. 2012) (exclusive-dealing contracts involving truck manufacturers); *Microsoft*, 253 F.3d at 58 (forced integration between two distinct products). Similarly, Bright Data's citations in footnote 2 are inapposite because the first case is about market definition (something X does not seek to appeal), and the others are not antitrust cases.

X CORP. REPLY IN SUPPORT OF MOTION FOR INTERLOCUTORY APPEAL AND FOR STAY PENDING ADJUDICATION
Case No. 3:23-cv-03698-WHA

Terms constrict those who merely buy data from Bright Data"); Reply at 7 ("Bright Data alleges no facts to suggest that X applies the Terms to those who merely 'buy pre-scraped data' without actively facilitating the scraping."). X's point now – which Bright Data does not seriously grapple with on the merits – is that the Order (at 7) mistakenly equated X's anti-facilitation clause with a total ban on dealing with data scrapers.[4] If that view were correct, platforms across the internet would now face antitrust exposure. *See* Mot. at 17-18 (collecting examples). But more fundamentally, even if the anti-facilitation term is read to prevent users from buying any data scraped from X, Question 1 remains controlling. Indeed, *Crowder* confronted virtually identical language in LinkedIn's terms and observed that it was not plausibly anticompetitive. *See Crowder v. LinkedIn Corp.*, 2023 WL 2405335, at *5 (N.D. Cal. Mar. 8, 2023) (not "anticompetitive" for LinkedIn's anti-facilitation "terms of use" to bar users from acquiring data "from third parties").

**Question 2** is a legal question about Bright Data's antitrust standing. *See Oakland Raiders*, 20 F.4th at 451 ("Antitrust standing is a question of law"). That question too does "not depend" on factual disputes. *Best Carpet*, 2022 WL 22843012, at *2. It asks whether a plaintiff can define the anticompetitive scheme to include an alleged restraint that operates in a market where the plaintiff does not participate. Bright Data's responses (at 10-11) – that "throttling" has downstream effects and that courts can review the scheme as "a whole" – are unpersuasive. The Order did not credit Bright Data's theory about "downstream effects," which misstates the law of antitrust injury. Dkt. 308 at 10-11.[5] As for the scheme as "a whole," the purpose of Question 2 is to determine what conduct may be part of such a scheme. If the Ninth Circuit agreed that a plaintiff may not define

---

[4] Contrary to Bright Data's contention (at 9-10, 15 n.5), X's view of its Terms (Mot. at 5 & n.4) is not unclear. Those Terms do not bar all transactions with scrapers. *See Kiewit Power Constructors Co. v. City of Los Angeles*, 2017 WL 6940508, at *4 (C.D. Cal. Nov. 28, 2017) (dismissing claim because "terms of the contract are not susceptible of the interpretation alleged"). In fact, Bright Data has not alleged a single instance where X asserted, adopted, or enforced its Terms in that way. And X's statement (at 10) that its Terms prohibit users from *affirmatively* hiring scrapers to do new scraping on X is consistent with X's position and shows why its Terms are not anticompetitive.

[5] Bright Data's cases (at 11) illustrate the distinction. *See Blue Shield of Va. v. McCready*, 457 U.S. 465, 467 (1982) (health plan subscriber not reimbursed for treatment due to insurance company's policies); *Ellis v. Salt River Project Agric. Improvement & Power Dist.*, 24 F.4th 1262, 1275 (9th Cir. 2022) (customer with solar panels sued utility company for reducing solar competition). And neither *Twin City Sportservice, Inc. v. Charles O. Finley & Co.*, 676 F.2d 1291 (9th Cir. 1982), nor *Tele Atlas N.V. v. NAVTEQ Corp.*, 2008 WL 4809441 (N.D. Cal. Oct. 28, 2008), relate to standing.

4

the "scheme" to include conduct that causes it no antitrust injury, none of Bright Data's cases would help it. And contrary to Bright Data's suggestion (at 11), no rule excludes standing issues from interlocutory appeal. *See Asis Internet Servs. v. Active Response Grp.*, 2008 WL 4279695, at *3 (N.D. Cal. Sept. 16, 2008) (certifying "standing issue[s]").

In any event, even if Questions 1 and 2 involved factual issues at the margins, Bright Data previously argued that such factual issues are no impediment to an interlocutory appeal. *See* Dkt. 75 at 4-5. In Bright Data's own words, this case involves the "application of facts common to all broad web-based platforms to unsettled law governing them." *Id*. at 5. And here, as Bright Data earlier urged, "the issue is the sufficiency of a complaint's allegations, subject to de novo review." *Id*. at 5. Although that point did not support an interlocutory appeal of Bright Data's non-dispositive personal-jurisdictional challenge, it does support an appeal here. *See id.* at 5 n.1 (collecting cases certifying appeals "involving mixed questions of law and fact"). Indeed, Bright Data makes no effort to reconcile its current position with the opposite one it earlier espoused. *Compare* Opp. at 5 ("mixed questions of law and fact . . . are the antithesis of a proper § 1292(b) appeal"), *with* Dkt. 75 at 5 ("mixed questions of law and fact are not categorically improper").[6]

**2. X's questions are "controlling."** Legal questions are controlling where they "would avoid protracted and expensive litigation" and thus "materially affect the outcome of litigation." *Doe 1 v. Github, Inc.*, 2024 WL 4336532, at *1 (N.D. Cal. Sept. 27, 2024).

Question 1 meets that test. If the Ninth Circuit holds that anti-scraping and anti-facilitation terms are not plausibly anticompetitive, Bright Data's claims would fail for lack of harm to the "competitive process." *Dreamstime*, 54 F.4th at 1137, 1143. Likewise, if the anti-scraping and anti-facilitation terms are lawful, then so is the liquidated-damages clause enforcing them. *See Power Ventures*, 2010 WL 3291750, at *14 ("nothing anticompetitive about taking legal action to

---

[6] By contrast, X's position is consistent with its opposition (Dkt. 74) to Bright Data's interlocutory-appeal motion. There, Bright Data sought review of the Court's application of Ninth Circuit precedent to specific facts. *See id.* at 3-5. X's motion is the inverse – it asks, in the absence of any on-point Ninth Circuit guidance, whether a set of common, generalized terms are anticompetitive under the antitrust laws. Bright Data's motion also would not have streamlined discovery because it excluded X's contract claims. *See id.* at 5-6. Conversely, here, dismissing the antitrust claims would simplify this case and eliminate the need for months or years of crushing antitrust discovery.

enforce" platform's right to "manage access to and use of its website"). Question 2 is similar. It is controlling because, if the Ninth Circuit agrees that antitrust plaintiffs cannot manufacture standing by mashing together allegations about different markets into one scheme, Bright Data could not include allegations about X's "throttling" in the scheme it challenges. Mot. at 6-7.

Those questions are controlling even under the legal standard Bright Data now advances. According to Bright Data (at 12), a question is controlling if its resolution would have "an immediate effect on the course of litigation." That is true here. If the Ninth Circuit reverses the Order, the antitrust counterclaims – which the Court has observed will require "a massive undertaking," 3/27/25 Tr. 61:20-23 – would fall away. That distinguishes Bright Data's principal case, where the court denied interlocutory appeal of an order that granted summary judgment to counterclaim-*defendants*, thus *limiting* the claims in the lawsuit. *See CornerStone Staffing Sols., Inc. v. James*, 2014 WL 1364993, at *2 (N.D. Cal. Apr. 7, 2014) (denying certification when favorable decision on interlocutory appeal would "expand" "the scope of the upcoming trial").[7] Here, a reversal by the Ninth Circuit would reduce, not expand, the trial's scope.

Bright Data also diminishes the importance of this litigation by observing (at 12, 19) that this is not an MDL or class action. That is true, but beside the point. Antitrust cases can have far-reaching significance even outside the MDL and class context. *See*, *e.g.*, *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985) (landmark two-party antitrust case). Moreover, Bright Data's efforts to downplay the case's size and scope contradicts its expansive allegations, which assert four separate product markets in "the United States and the world," cover hundreds of millions of users, and seek "treble damages." Dkt. 168 ("CC") ¶¶ 24, 33, 112.

Nor does Bright Data's suggestion (at 20-21) that it could seek leave to amend weigh against an appeal. If it is not plausibly anticompetitive for an online platform to bar data scraping or its facilitation, any amendment would be futile. *Cf. Best Carpet Values, Inc. v. Google LLC*, 2024 WL

---

[7] Bright Data's citation to this case (at 12) improperly replaces the word "expand" with the word "change." *Compare CornerStone*, 2014 WL 1364993, at *2 ("the scope of the upcoming trial would merely *expand*"), *with* Opp. at 12 ("'the scope of the upcoming trial would merely' *change*") (emphases added). That alteration reverses *CornerStone*'s reasoning (to not expand the trial's scope) so that it serves Bright Data's opposite goal here (to keep the trial expansive).

1973486, at *1-3 (N.D. Cal. May 1, 2024) (denying leave to amend after, on interlocutory review, Ninth Circuit reversed district court's order denying motion to dismiss). And even if some future amendment were possible, that would not preclude an interlocutory appeal. That is why many courts have certified for appeal orders denying motions to dismiss. *See* Mot. at 3 & n.3 (collecting cases); *Brickman v. Facebook, Inc.*, 2017 WL 1508719, at *2 (N.D. Cal. Apr. 27, 2017) ("A question may be controlling even though its resolution does not determine who will prevail on the merits."). The one case Bright Data cites (at 13) is distinguishable: it centers on fact-sensitive allegations of market power and market definition. *See Brantley v. NBC Universal, Inc.*, 2008 WL 11357958, at *1-3 (C.D. Cal. June 25, 2008). That is a far cry from this one. X's proposed appeal focuses on threshold questions of law about whether barring data scraping or acts that facilitate such scraping is anticompetitive.[8] Bright Data cannot amend its way around that core legal dispute.

## B.    There Are Substantial Grounds For Disagreement

The second § 1292(b) prong is satisfied if "reasonable jurists might disagree on an issue's resolution." *Fortyune v. City of Lomita*, 766 F.3d 1098, 1101 n.2 (9th Cir. 2014) (quoting *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 687-88 (9th Cir. 2011)). According to Bright Data, "certification may be justified even at a relatively low threshold of doubt." Dkt. 75 at 8.

**Question 1** presents substantial grounds for disagreement because online platforms have the "free[dom] to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing." *Pacific Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 448-50 (2009). Other courts have applied that principle to dismiss similar antitrust claims against other platforms. *See* Mot. at 8-12 (collecting cases); Dkt. 75 at 7 (Bright Data urging that an "issue is tailor-made for clarification by the Ninth Circuit" where "lower courts reach[] polar opposite decisions"). Although the Order discerned factual differences between those cases and this one, such distinctions do not preclude interlocutory review. As Bright Data argued, "[t]here is a simple test this Court can use to determine if a difference of opinion exists: Faced with the allegations in

[8] Bright Data is wrong (at 6, 10) that X "does not dispute" or "does not deny" issues concerning market definition. To be clear, X disputes Bright Data's market-power and market-definition allegations; it simply does not seek to appeal those issues at this juncture.

7

these other cases would this Court conclude – like they did – that" barring scraping was not anticompetitive, "or would it reach a different result?" Dkt. 75 at 8. Respectfully, this Court likely would have reached a different result in the other scraping cases X cited. Indeed, one of X's cases (*Crowder*) involved a nearly identical antitrust theory based on nearly identical contract language, while another (*CoStar*) involved similar exclusionary contracts that barred access to third-party information. *See* Mot. at 9-10 (describing cases). So it is at least plausible – likely, even – that those other courts "might disagree" with this Court's ruling. *Fortyune*, 766 F.3d at 1101 n.2.

Bright Data seeks (at 13-14) to raise the bar imposed under the second prong of § 1292(b) by citing *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). But Bright Data itself previously explained that *Couch* is off-point: "*Couch* did not say that disagreements among district courts were incapable of creating substantial grounds for differences of opinion." Dkt. 75 at 7; *see also id.* at 7-8 (arguing *Couch* is distinguishable from this case, and "the Ninth Circuit subsequently clarified that there is no need for any split of authority").[9] Moreover, Bright Data's attempt to distinguish (at 14-15) X's cases wrongly focus on marginal factual differences,[10] when what matters for Question 1 is whether the aims and subject of the restraint (anti-scraping terms) can be plausibly anticompetitive at all. Of course the exact wording of every platform's terms of service reveals minor linguistic variations. But X has identified a common, overarching legal issue that applies to them all, over which reasonable jurists could disagree. That is enough.

---

[9] Although X previously cited *Couch* in opposing Bright Data's interlocutory appeal motion, it did so for a different reason: that "lower courts [] consistently applied" the Ninth Circuit case on which Bright Data's argument was premised. Dkt. 74 at 4. Here, there is no instructive Ninth Circuit case about antitrust claims based on an online platform's anti-scraping terms.

[10] Bright Data attacks (at 14) *Crowder* for not involving a vertical-foreclosure theory. But it did: the theory was based on nearly identical contract language with a nearly identical argument about how LinkedIn blocked users from dealing with rivals. *See Crowder v. LinkedIn Corp.*, No. 4:22-cv-00237-HSG (N.D. Cal. May 6, 2022), Dkt. 38 at 9 (arguing "LinkedIn's API agreements are exclusive dealing agreements that prevent API partners from using or buying data from actual or potential rivals"). And *CoStar* expressly involved "vertical input restraints." *CoStar Grp., Inc. v. Commercial Real Est. Exch. Inc.*, No. 2:20-cv-08819-CBM-AS (C.D. Cal. Sept. 13, 2021), Dkt. 86 at 8. *Crowder*'s subsequent history is also irrelevant, as X has explained. *See* Reply at 5 (addressing *Crowder II*). Further, Bright Data attempts (at 15) to distinguish *CoStar* based on X's alleged 95% market share. But that makes no difference, because even "the possession of monopoly power will not be found unlawful unless it is accompanied by an element of anticompetitive *conduct*." *Trinko*, 540 U.S. at 407. X seeks an appeal only on the latter question.

Bright Data next cites (at 15-16) *Hope Medical Enterprises, Inc. v. Fagron Compounding Services, LLC*, 2021 WL 6618726 (C.D. Cal. Apr. 20, 2021), for the proposition that distinguishable cases cannot support interlocutory appeal. But *Hope Medical* involved comparison cases that were far less alike than the cases X cites here. At issue there were alleged violations of "state-law parallels" to a federal law, but defendants "rel[ied] heavily" on a case that "did not allege violations of state-law parallels," ignoring the "precise[]" basis for the court's ruling. *Id.* at *2, *5.[11] Here, X's comparison cases involve alleged violations of the same federal antitrust statute. Bright Data's other argument (at 17) that a court's application of "established antitrust law" cannot give rise to an interlocutory appeal misses the point. None of the cases Bright Data relies on (at 17) concern social-media platforms or scraping; there is no relevant "established antitrust law" on such issues.

In any event, even if X's cases are distinguishable, Bright Data earlier conceded "there is no need for any split of authority" to warrant interlocutory review. Dkt. 75 at 7-8. Even if there were no on-point authority, that would be evidence that this case presents novel and difficult questions suitable for review. *See Advanced Analogic Techs., Inc. v. Linear Tech. Corp.*, 2006 WL 2850017, at *2 (N.D. Cal. Oct. 4, 2006) ("authority addressing th[e] specific issue" not required).

**Question 2** also presents an issue on which "reasonable jurists might disagree." *Fortyune*, 766 F.3d at 1101 n.2. As X explained (at 12-13), Bright Data's maneuver to inject throttling into this case represents an end run around basic antitrust-standing principles. Reasonable jurists could decide that Bright Data cannot circumvent the "more demanding standard" for antitrust standing in this way. *Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 140 F.3d 1228, 1232 (9th Cir. 1998); *see* Mot. at 13 (collecting cases). Bright Data argues (at 17-18) that its throttling allegations are immunized from further scrutiny because they are not brought as standalone claims. But that is Question 2's core point: to ask the Ninth Circuit whether an allegation not brought as a standalone claim can be exempt from antitrust-standing requirements.

[11] True, the court in *Hope Medical* identified one case that it acknowledged was similar but came out the other way. 2021 WL 6618726, at *5. But less than a month before the court's ruling, the Ninth Circuit had a chance to pass upon the issue raised in *Hope Medical* – whether the federal Food, Drug and Cosmetics Act preempted certain state-law claims – but did not. *Id.* at *3. So it makes sense that the court would decline to certify the same question. Moreover, unlike in *Hope Medical*, where there was only one adequate comparison case, X identified six. *See* Mot. at 8 n.6.

Allowing Bright Data the benefit of its throttling allegations also raises a "spectre of duplicative recovery and complex apportionment of damages." Mot. at 13 (quoting *Sundance Land Corp. v. Community First Fed. Sav. & Loan Ass'n*, 840 F.2d 653, 660 (9th Cir. 1988)). That is because the alleged "throttling" restrains other platforms – so if anyone has antitrust standing, it is those platforms. Allowing Bright Data to seek its own treble damages on top thus risks the very overdeterrence that antitrust-standing doctrine aims to prevent. Bright Data responds (at 18) by claiming there's no duplicative recovery danger because "Bright Data's damages are Bright Data's," not "anyone else's." Every antitrust plaintiff claims the same thing. Antitrust standing principles, however, limit the universe of appropriate plaintiffs.

**C.    Interlocutory Appeal Would Materially Advance The Litigation**

**1.**    An immediate appeal would also materially advance the litigation. Mot. at 14-18. These antitrust claims represent "a massive undertaking" that this Court warned would take at least "a year and a half." 3/27/25 Tr. 61:18-23. Indeed, other antitrust cases against social-media companies have taken several years. Mot. at 14 & n.10; Dkt. 277 at 3-4; Dkt. 277-2 (collecting cases). Litigating such claims is burdensome given the "unusually high cost of discovery in antitrust cases." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). That is especially true here, because Bright Data alleges four worldwide product markets, CC ¶ 112, requiring (among other things) "international discovery." 3/27/25 Tr. 61:20. An appellate decision reversing the Order would avoid all that "needless expense and delay." *Kuehner v. Dickinson & Co.*, 84 F.3d 316, 319 (9th Cir. 1996). That is enough to justify an appeal, as Bright Data previously acknowledged. *See* Dkt. 75 at 12 (appeal warranted if it could "substantially streamline discovery").

Bright Data's assertion (at 19-20) that its antitrust claims do not "significantly change the scope of discovery" strains credulity. Many courts, including this one, have observed that antitrust discovery uniquely "tends to be broad, time-consuming and expensive." *In re Netflix Antitrust Litig.*, 506 F. Supp. 2d 308, 321 (N.D. Cal. 2007) (Alsup, J.). Bright Data's antitrust claims are no exception, as its own discovery conduct makes clear. *See* Dkt. 277 at 5. Similarly, Bright Data's claim (at 21) that "technological means" lessen the new burdens of counterclaim discovery misunderstands that technology. AI models must be retrained for the counterclaims, which is one of

10

the most labor-intensive parts of the process.  Moreover, these models cannot meaningfully assist in performing the myriad "targeted" searches Bright Data is demanding.  Nor does it mitigate the staggering costs of nonparty and expert discovery, which X's opening brief detailed (at 15-16).  True, Bright Data is now trying to cabin discovery into its antitrust theories – preferring to plead sprawling global product markets while shutting down virtually all factual testing of those markets.  The parties now are litigating these issues before the Special Master.  *See*, *e.g.*, Dkts. 299, 305.  Bright Data's ongoing, burdensome-to-litigate efforts to escape producing the discovery necessary to test its antitrust theories hardly lessens the rationale for an appeal.

Bright Data's other attempts to minimize the discovery burdens are also unconvincing.  Bright Data's sprawling market definitions will require extensive discovery about other market participants, including Facebook, TikTok, Reddit, and many others.  Rather than contest the need for such discovery, Bright Data focuses (at 1, 21) on Airbnb and Zillow.  But even if those two platforms were excluded from the scope of discovery (an issue currently being litigated), that would hardly make a dent in the mammoth discovery required from the many other social-media platforms that plausibly compete with X.  In any event, Bright Data has defined its market for "public square" data so broadly that it includes Airbnb and Zillow.  CC ¶ 112.  Both are platforms that organize third-party content (properties), and then publicly display other third-party content (reviews, ratings, views).  Indeed, much of their content appears on X and is presumably part of what scrapers like Bright Data harvest.[12]  So if the market must include all data that powers "up-to-the-minute insights about current events," Order at 2, it is far from clear why Airbnb and Zillow would not count.  At a minimum, some discovery is needed to test that proposition.

Bright Data also errs in suggesting (at 19-20) that its affirmative defense ensures that discovery will proceed in "substantially the same manner" regardless of the counterclaims.  As X has explained (Dkt. 185 at 10; 3/27/25 Tr. 58:7-10), the affirmative defense rises and falls with the counterclaims.  So if the Ninth Circuit agrees that X's anti-scraping and anti-facilitation clauses are

---

[12] *See*, *e.g.*, @brandyaguirreAZ, X (May 27, 2025, 11:31 AM) (reviewing Airbnb cabin), https://x.com/brandyaguirreAZ/status/1927387108278239457; @zillowgonewild, X (May 27, 2025, 12:15 PM) (Zillow listing, comments), https://x.com/zillowgonewild/status/1927398330885091458.

not plausibly anticompetitive, the Court should strike the defense. *See*, *e.g.*, *Consumerinfo.com, Inc. v. Chang*, 2009 WL 10673208, at *7 (C.D. Cal. Nov. 12, 2009) (striking "antitrust defense for the reasons that the Court" dismissed the "antitrust counterclaim"); *Fitbit, Inc. v. Laguna 2, LLC*, 2018 WL 306724, at *1 (N.D. Cal. Jan. 5, 2018) ("the issues raised in both motions to strike and dismiss are largely the same, and thus the ruling herein applies to the amended answer and counterclaims"); *Smart Modular Techs., Inc. v. Netlist, Inc*., 2017 WL 3009217, at *6 & n.2 (E.D. Cal. July 14, 2017) (dismissing counterclaim and striking "virtually identical" affirmative defense because the two are viewed "in tandem"); *Tristar Pictures, Inc. v. Del Taco, Inc*., 1999 WL 33260839, at *1, 4 (C.D. Cal. Aug. 31, 1999) (dismissing counterclaim and striking affirmative defense where they "implicate the same issue"). Bright Data articulates no way that its affirmative defense could remain in the case if the Ninth Circuit agrees with X on the two questions posed here.

*Hansen Beverage Co. v. Innovation Ventures, LLC*, 2010 WL 743750 (S.D. Cal. 2010), which Bright Data also cites (at 19-20), is inapt. There, the Lanham Act false-advertising counterclaim would have proceeded regardless of whether the state-law claim survived on appeal. *Hansen*, 2010 WL 743750, at *4. The same is true for Bright Data's other case, *Heaton v. Social Finance, Inc.*, 2016 WL 232433 (N.D. Cal. Jan. 20, 2016), where the court determined that litigation would continue regardless of the question because the other class claims would proceed. *See id*. at *7. Here, by contrast, Questions 1 and 2 will fully dispose of the counterclaims (and affirmative defense). *See* Mot. at 7 n.5 (explaining related state law counterclaims rise or fall with antitrust claims). Bright Data also cites *Jackson-Jones v. Epoch Everlasting Plan, LLC*, 2024 WL 3221738, at *4 (C.D. Cal. May 10, 2024), for the notion that X must demonstrate that interlocutory review would facilitate disposition of the case sooner rather than later. But *Jackson-Jones* (like *Hansen* and *Heaton*) was not an antitrust case subject to "broad, time-consuming and expensive" discovery. *Netflix*, 506 F. Supp. 2d at 321. At any rate, as Bright Data previously argued, "there is no requirement that reversal of the challenged order terminate the entire litigation." Dkt. 75 at 12.

Bright Data again downplays (at 19) the scope of its claims, asserting that "[t]his is neither class action nor multi-party, multi-district litigation." But that was also the case when Bright Data earlier sought an interlocutory appeal on personal jurisdiction. And here, unlike with Bright Data's

12

earlier appeal, an appeal could spare the parties and the Court from "a massive undertaking," 3/27/25 Tr. 61:20-23, that would explode this litigation's cost and scope. *See Ron Tonkin Gran Turismo, Inc. v. Fiat Distribs., Inc.*, 637 F.2d 1376, 1381 (9th Cir. 1981) (noting, in a single plaintiff antitrust case against a single car distributor and the sole affiliated dealer in the relevant area, the "great deal of expensive and time consuming discovery and trial work" in antitrust cases).

Bright Data also claims that "antitrust discovery is routinely completed in far less time, often in a matter of months." *See* Dkt. 308 at 19 (citing Dkt. 279 at 3-4). But Bright Data's citation to merger cases and other government-facing litigation understates the length and scope of discovery. In antitrust cases brought by the government, substantial discovery often occurs through pre-suit investigations. *See SEC v. Blackwell*, 2004 WL 6829614, at *3 (S.D. Ohio Jan. 15, 2004) (observing that the FTC, unlike private parties, "has the benefit of having conducted a lengthy investigation"). So looking purely at the length of discovery *after* the government files a case is misleading. For example, Bright Data cites (at Dkt. 279 at 3) the discovery schedule in *United States v. Google LLC*, 1:23-cv-00108 (E.D. Va.). But in setting the discovery timeline in that case, the court observed that there was a "very similar" case against Google in another jurisdiction where discovery was substantially complete. No. 1:23-cv-00108 (E.D. Va. Mar. 27, 2023), Dkt. 70, Tr. at 10:20-25. Indeed, due to the "combined investigation" in that case, Google had already produced 2 million documents, third parties produced another 5 million documents, and more than 30 depositions had already been taken, with the government conceding that it had the "benefit" of the prior discovery and that "many" of those depositions "cover[ed] the content at issue." *Id*. at 4:16-5:3, 5:18-19, 7:7-8. Similarly, Bright Data cites (at Dkt. 279 at 4) *FTC v. Meta Platforms, Inc.*, 5:22-cv-04325-EJD (N.D. Cal.), but that was a *preliminary-injunction* case in which "the FTC had almost a year of one-sided discovery," including "communicat[ing] with approximately 44 third-party companies in connection with its investigation." *Id*. Dkt. 91 at 2. Again, no such investigation took place here. Further, the alleged geographic markets in *Google* and *Meta Platforms* were limited to the United States, and neither involved four alleged product markets.

Bright Data's contention (at 20) that Ninth Circuit appeals generally take 13 months does not undercut the rationale for certification. That statistic is for all appeals, but the Ninth Circuit can

13

expedite or resolve interlocutory appeals more quickly than appeals from final judgments. *See*, *e.g.*, *FDIC v. McSweeney*, 976 F.2d 532, 533 (9th Cir. 1992) (expedited interlocutory appeal of order denying motion to dismiss); *see also* 9th Cir. R. 27-12 (motions to expedite).

**2.** The Court "should not hesitate to certify" the Order for appeal due to the "special consequence" it imposes on myriad internet platforms, from Meta and Snap to LinkedIn, Reddit, and countless others. *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009); *see* Mot. at 17-18 (listing platforms); *Kinkead v. Humana, Inc.*, 2016 WL 9453808, at *3 (D. Conn. Oct. 13, 2016) (certifying appeal because the issue "extend[ed] beyond the parties' immediate interests" and was one "of broad practical significance"). The Order now exposes them all to antitrust liability, giving license to Bright Data and other scrapers to pursue antitrust claims and attempt to "extort large settlements even where [they] do[] not have much of a case." *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 47 (9th Cir. 2022).

Bright Data offers little response. It contends (at 21-22) that "no two sets of terms are exactly alike," so the counterclaims have no "special consequence" for other platforms. But scores of other platforms have similar anti-scraping and anti-facilitation terms. *See* Mot. at 17-18 (listing terms). The same legal question applies to them all: whether anti-scraping or anti-facilitation terms, no matter how exactly they are worded, are plausibly anticompetitive. That question's far-reaching significance to the internet warrants an immediate appeal. *See Greenwood Tr. Co. v. Massachusetts*, 971 F.2d 818, 821 (1st Cir. 1992) (accepting interlocutory appeal "[i]n light of the pivotal importance and broad commercial consequence of the questions presented").[13]

**II.    The Court Should Enter A Stay Pending X's Interlocutory Appeal**

As X has shown (at 18-20), the Court should also stay discovery pending the appeal. Although X believes that the Court should at a minimum stay all counterclaim discovery, X would not oppose a full stay – of both its affirmative claims and the antitrust counterclaims – pending an

_____

[13] Bright Data also claims (at 21) that the "special consequence" doctrine is more applicable to privilege issues. But courts have not limited it in that way. *See*, *e.g.*, *Turo Inc. v. City of Los Angeles*, 2020 WL 4287583, at *2 (C.D. Cal. July 27, 2020) (reciting *Mohawk* "special consequence" doctrine as part of § 1292(b) standard following order denying motion to dismiss where privilege not at issue); *Balintulo v. Daimler AG*, 727 F.3d 174, 186 (2d Cir. 2013) (similar).

14

interlocutory appeal.  Bright Data's one-sentence opposition (at 22-23) to a full stay does not seriously contest its propriety.  As X explained, a stay is warranted because an immediate appeal "becomes illogical if the parties continue to litigate" claims that "would be subject to dismissal if the Ninth Circuit reverses."  *Mauia v. Petrochem Insulation, Inc.*, 2020 WL 1031911, at *1, 4-5 (N.D. Cal. Mar. 3, 2020); *see Netflix*, 506 F. Supp. 2d at 321 ("staying discovery may be particularly appropriate in antitrust cases").  A stay would also prevent needless discovery related to Bright Data's antitrust affirmative defense, which will fail as a matter of law if the Ninth Circuit holds that Bright Data's antitrust theory is implausible.  *See supra* pp. 11-12.  For those reasons, the judicial-economy benefits of a stay are overwhelming.

## CONCLUSION

The Court should grant X's motion and certify the Order (Dkt. 263) for interlocutory appeal. It should also enter a stay pending that appeal.

15

DATED:  May 30, 2025

Respectfully submitted,

**KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.**

By:  _/s/ Joshua D. Branson_

JOSHUA D. BRANSON*
jbranson@kellogghansen.com
ANDREW C. SHEN*
ashen@kellogghansen.com
DANIEL V. DORRIS*
ddorris@kellogghansen.com
MATTHEW D. READE*
_mreade@kellogghansen.com_
ABIGAIL DEHART*
_adehart@kellogghansen.com_
JORDAN R.G. GONZÁLEZ*
jgonzalez@kellogghansen.com
KALEB J. LEGORE*
klegore@kellogghansen.com
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Telephone: 202.326.7900
* _Admitted Pro Hac Vice_

Adrian Sawyer, State Bar No. 203712
SAWYER & LABAR LLP
1700 Montgomery Street, Suite 108
San Francisco, California 94111
Telephone: 415.262.3820
sawyer@sawyerlabar.com

_Counsel for X Corp._

16