KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

June 13, 2025

Re:     *X Corp. v. Bright Data Ltd.*, No. 3:23-cv-03698-WHA (N.D. Cal.) – Dkt. 332 Opposition

Dear Special Master McElhinny:

The Special Master should once again deny Bright Data's motion (Dkt. 332) baselessly accusing X of "manufacturing" evidence and waiving privilege.[1]  The motion concerns two documents, both of which support specific complaint allegations.  *First*, X produced a report of scraping activity (Ex. 1) in response to Bright Data's RFP seeking "[a]ll . . . investigative reports relating to or supporting the allegations in Paragraph 88 of the Second Amended Complaint." Ex. A (No. 67).  In its production letter, X identified Exhibit 1 as a "[s]craping analysis referenced in X's complaint."  Ex. B.  Its privilege log also revealed that counsel was involved with the document.  Ex. C.  *Second*, X produced a "Botox analysis" (Ex. 2), which X's production letter identified as an analysis "supporting or relating to Paragraph 87" of X's complaint.  Ex. D.  X never said that these documents were created in the ordinary course of business.  Instead, X's production cover letters and privilege log make clear that these documents were created to support the complaint's allegations.  There is nothing remotely improper about producing and relying on such documents.  *See*, *e.g.*, *United States v. Ganesh*, 2018 WL 2763321, at *7 (N.D. Cal.) (litigation-created documents were admissible business records).

Nor did X waive privilege or work-product protection for drafts and communications about these analyses.  It is well-settled that producing a document's "final draft" does not waive "work product protection for the earlier drafts."  *Favell v. Univ. of S. Cal.*, 2024 WL 3008862, at *12 (C.D. Cal.) (citing cases); *see*, *e.g.*, *SEC v. Schroeder*, 2009 WL 1125579, at *7 (N.D. Cal.) ("underlying privilege attaching to drafts of the final product is not destroyed" by producing final

---

[1] Bright Data's motion attaches 3 pages of extra argument masquerading as a "meet-and-confer" letter (Ex. 3) that Bright Data sent X *less than 90 minutes* before filing its motion.  That violates Paragraph 7 of the Procedural Order (Dkt. 275).  Because most of the letter does not concern the privilege issue in dispute, X will not circumvent the briefing rules to address it here.

product).² The only case Bright Data cites (at 3) to argue otherwise is off-point, because the witness there waived privilege by testifying to legal conclusions about the party's claimed "compliance with state and federal law." *Moeller v. Taco Bell Corp.*, 2009 WL 10710495, at *2 (N.D. Cal.); *see DealDash Oyj v. ContextLogic Inc.*, 2019 WL 1105317, at *2 (N.D. Cal.) (distinguishing *Moeller* on this ground). Nothing similar occurred here.

Bright Data counters (at 3) some of X's cases addressed witness declarations, which it says are different because they are facially marked as litigation-related. Yet Bright Data never explains why such markings should matter to the *privilege* analysis. Whether marked as litigation-related or not, a "final product" does not waive protection over "drafts." *Schroeder*, 2009 WL 1125579, at *7.³ At any rate, Bright Data knows full well that these documents were created for litigation, no less than it would with a declaration. The privilege analysis is the same.

Nor is Bright Data entitled to X's communications with outside counsel, which are core privileged material. *See United States v. Chen*, 99 F.3d 1495, 1499-1500 (9th Cir. 1996). As with drafts, producing a document prepared for litigation does not waive privilege or work-product protection over attorney communications related to the document. *See*, *e.g.*, *In re Banc of Cal. Sec. Litig.*, 2018 WL 6167907, at *2 (C.D. Cal.). By producing Exhibits 1 and 2, X did not "disclose the contents of a confidential communication" with counsel or use them as "a sword and a shield." *United States v. Ortland*, 109 F.3d 539, 543 (9th Cir. 1997).

Rule 502(a), which Bright Data also cites (at 2), is even further afield. That rule affirms that a waiver generally extends only to "communication or information disclosed." Fed. R. Evid.

---

² For example, parties often produce litigation-created declarations, yet drafts and related communications remain protected. *See, e.g., Grano v. Sodexo Mgmt., Inc.*, 2021 WL 4751181, at *7 (S.D. Cal.) (no waiver for "drafts and correspondence" for relied-on declaration).

³ Bright Data's cases (at 1) are not to the contrary. *Cf. Waymo LLC v. Uber Techs., Inc.*, 2017 WL 11917881 (N.D. Cal.) (defendant had deemed some meetings with attorney privileged and others not); *Theranos, Inc. v. Fuisz Techs., Ltd.*, 2013 WL 2153276, at *4 (N.D. Cal.) ("cherry-picked selective communications"); *Doe 1 v. Baylor Univ.*, 320 F.R.D. 430, 437 (W.D. Tex. 2017) (intentionally disclosed "detail about . . . what [client] told [law firm]").

502(a), adv. comm. note. So a waiver attaches only where "a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner," which did not occur here. *Id*. Weaker still is Bright Data's claim (at 2) that it is entitled to pierce the privilege because X's allegations are a "sham" or because the exhibits "question X's investigative process." Bright Data may ask witnesses about the facts of their investigative processes, but (unfounded) accusations about those processes are not grounds for privilege waiver.[4]

In any event, X is nothing like Bright Data's hypothetical party (at 2) that hides the provenance of made-up evidence. Rather, counsel initially removed a single "Privileged & Confidential" prefix from the metadata of Exhibit 1's filename to avoid confusion over whether X was asserting privilege over the document itself. Dkt. 298 at 2 n.2. X addressed that concern as soon as Bright Data raised it, and it would have done so sooner had Bright Data properly met-and-conferred. *See* Dkt. 303 at 1 (denying previous motion "for failure to meet and confer"). Indeed, X has now provided the full, original metadata about Exhibits 1 and 2. Ex. E.

Although the motion discusses only two discrete documents, Bright Data overreaches (at 1, 3) by arguing that "fairness dictates" a waiver of all "'investigations into the conduct at issue.'" X has already produced (or will produce under the parties' data protocol) the underlying data on which the analyses rely. Bright Data is free to examine that data and these documents' authors at deposition and trial. Nor is X withholding any non-privileged documents bearing on the alleged distinction between Bright Data's scraping and scraping by others. So "fairness" hardly supports letting Bright Data ransack X's files for privileged drafts and communications.

Respectfully submitted,
*/s/ Joshua D. Branson*
*Counsel for X Corp.*

---

[4] The cases Bright Data cites (at 2 n.3) do not hold otherwise. *See Walker v. Cnty. of Contra Costa*, 227 F.R.D. 529, 535 (N.D. Cal. 2005) ("affirmative defense" asserting "adequacy of their pre-litigation investigation"); *Century Aluminum Co. v. AGCS Marine Ins. Co.*, 285 F.R.D. 468, 472 (N.D. Cal. 2012) (insurance investigation in denial of claim); *SNK Corp. of Am. v. Atlus Dream Ent. Co.*, 188 F.R.D. 566 (N.D. Cal. 1999) (advice-of-counsel defense).

*X Corp. v. Bright Data Ltd.*, No. 3:23-cv-03698-WHA (N.D. Cal.)

Appendix: Exhibit Index to X Corp.'s Opposition to Dkt. 332

| EXHIBIT | DESCRIPTION |
|---|---|
| A | Bright Data's Request for Production 67 |
| B | X's March 21, 2025 Production Letter |
| C | X's April 17, 2025 Second Privilege Log (excerpt) (CONFIDENTIAL) |
| D | X's April 10, 2025 Production Letter |
| E | Metadata Overlay |