UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| X CORP., INC., <br><br> Plaintiff, <br><br> v. <br><br> BRIGHT DATA LTD., <br><br> Defendant. | No. C 23-03698 WHA <br><br> **ORDER GRANTING PERMISSION TO FILE SUBPOENAS (DKT. NO. 322)** |

Earlier in this litigation, X Corp. sought to subpoena customers of Bright Data in order to obtain information about the quantity of their scraping of X to support X's claim of injury under its tort claims and to discover whether these customers engaged the X platform in a manner that violated the X terms of service. Bright Data sought a protective order to prevent disclosure of its customer names out of fear of retaliation and possible intimidation of its customers. These issues were discussed at length before the District Court at hearings on February 28 and March 27, 2025. In essence, the Court recognized the Defendant's legitimate concerns and ordered the parties to proceed "in baby steps" or "in tranches" to look for evidence of retaliation or burden. After a delay for which the parties blame each other, X served its first four subpoenas at the end of May 2025. (X says it is still deciding whether or not to serve the fifth named customer.) The responses to those subpoenas are not yet due. Nevertheless, X now moves for permission to serve an additional 30 subpoenas (Dkt. No. 322).

Bright Data opposes the motion on several grounds. *First*, it argues that, at the hearings, the District Court orally granted its Protective Order and that I do not have the authority to alter or modify that ruling. *Second*, on the merits, it raises numerous arguments including fears of retaliation, intimidation and that the customers are unlikely to have responsive documents (Dkt. No. 336). While important, the issues raised are not complicated. They can be resolved without a hearing. I will examine those arguments in order.

As I seem to note in every Order, the terms of my appointment preclude me from altering or modifying any previous Order of the Court (Dkt. No. 273 ¶ B(3)(b)). But I do not believe that that limitation has any bearing on this Motion. In the hearings, the Court established the first wave of discovery, but clearly stated that control of discovery would be ongoing as experience developed. Having studied all the relevant materials, I believe that supervision of subsequent discovery was exactly the reason the Court appointed a Master.

On the substance of the Motion, retaliation is clearly the greatest threat. Based on X Corp. documents produced to date, the threat is not hypothetical. On the other hand, the Court has limited all access to customer data to named in-house counsel. The Court has made it clear that retaliation would be met with the strongest penalties. And, to date, there has been no complaint that retaliation has occurred, not just as to the four parties that have been subpoenaed, but as to any of the other customers whose names have already been produced. Moreover, should any retaliation occur, I have the power to issue protective orders and to recommend sanctions. The District Court's powers verge on the unlimited. This is far from the first case where disclosure of confidential information relied on the professionalism of counsel.

Meanwhile, the subject matter of the subpoenas goes directly to the heart of both the original Complaint and to Bright Data's counterclaim. As to the Complaint, the volume of scraping is an, if not the key, issue that must be determined to support X's injury claims. Bright Data has sworn that it does not have data that shows the volume of scraping (Exh. G, Resp. to Interrog. No. 14, at 5–6). X must obtain the information directly from the scrapers. And, because the volume is cumulative, X has a legitimate need to question every participant.

2

In terms of the antitrust issues, customers are the central source of information regarding the substitutability of products. Arguably, these subpoenas are critical to X's case. Judge Alsup recognized this clearly when he said that X would eventually have access to every customer and directed X to depose the customers instead of accusing Bright Data of hiding evidence (Apr. 17, 2025 Tr. 24:25–25:3, 26:23–27:1).

And this brings us to the most critical aspect of the problem. As of the moment, fact discovery in this case closes on September 30, 2025. "Eventually" is now. And, while both parties have filed competing motions for extensions, two facts are inescapably true: 1) we do not know at this time if the Court will grant any extension and, 2) even if the Court does grant an extension, the parties are going to have to work diligently to complete their legitimate discovery. Third-party discovery can move very slowly. Bright Data fully recognizes the problem. It has recently filed its own Motion seeking relief based on the fast-approaching discovery deadline (Dkt. No. 334). The alternative of refusing valid discovery because the time has expired is not a desired outcome.

Finally, the burden here, if any, falls mainly on X. It has to serve, enforce, and coordinate the discovery process. The burden on each customer is relatively small. I doubt that many companies are intimidated from a lawful, profitable enterprise by receiving a third-party subpoena. The burden on Bright Data is almost negligible.

For these reasons, X Corp.'s Motion to serve an additional 30 customer subpoenas is **GRANTED.**

The parties have reserved their rights to appeal this Order to the District Court.

**IT IS SO ORDERED.**

Dated: June 13, 2025.

*/s/ Harold J. McElhinny*
HAROLD J. McELHINNY
SPECIAL MASTER