**Proskauer** | Proskauer Rose LLP | 1001 Pennsylvania Avenue, NW | Washington, DC 20004

June 17, 2025

Re:   *X Corp. v. Bright Data Ltd., 23-cv-03698 (N.D. Cal.)*[1]
      *Letter Motion Seeking Musk's Tweets and Public Statements*

Dear Special Master McElhinny:

Central to both X's decision to bringing this lawsuit against Bright Data and the merits of Bright Data's Counterclaim against X are the actions and motivations of X's current owner, Elon Musk. Because of Mr. Musk's central role in this case, Bright Data issued RFP 73, which seeks Mr. Musk's tweets, posts, and public statements relating to the core issues in this litigation. Ex. 1 at 55-56 (RFP 73). X has consistently refused to produce Mr. Musk's public statements, other than his tweets. As for tweets, X initially "offered to conduct a targeted search of Mr. Musk's public tweets and posts for responsive information." Ex. 9 at 4. But, following your Order "regarding targeted search disclosures and metadata" (ECF 306), X decided to revoke its offer. *Id*. ("X withdraws its previous offer.").[2] It now refuses to produce ***any*** of Mr. Musk's tweets or other public statements.

This type of gamesmanship is impermissible. In light of X's refusal to search for and produce documents responsive to RFP 73, Bright Data now moves for an Order compelling X to produce "all of Elon Musk's tweets, posts, or public statements (including interviews and podcasts) relating to: (i) Twitter or X; (ii) his actual or potential acquisition of Twitter; (iii) X's business strategies; (iv) X's operations; (v) X's Terms, policies, or practices; (vi) the collection, use, or monetization of data; (vii) artificial intelligence; (viii) data scraping and automated access to websites; (ix) crawling; or (x) bots." Ex. 1. Bright Data also requests that costs be allocated to X pursuant to Paragraph 6 of the Referral Order (ECF 273), given its unjustified refusal to produce

---

[1] Emphasis added, internal citations and quotation marks omitted, and capitalizations conformed without brackets. Bright Data met and conferred in good faith, but was unsuccessful in resolving the dispute, as reflected in Exs. 2-9.

[2] X's statement that "it is not withholding any documents responsive to this request from its custodial searches," is meaningless unless it plans to search Mr. Musk's social media accounts as part of its custodial search, which X has not agreed to do. Ex. 9 at 4.

this information, and its improper withdrawal of its offer as retribution for being compelled to make the required targeted search and metadata disclosures.

Mr. Musk's public statements – including tweets, posts, interviews, and podcasts – are central to the issues in this litigation. A few of them feature prominently in the Counterclaim. As the CEO, Executive Chairman, and public face of X, Mr. Musk's statements reflect and often announce X's business strategies, policy changes, and positions on key issues such as data access, scraping, artificial intelligence, and competition. Numerous examples are included in Bright Data's pleadings. *See, e.g.*, ECF 168 ¶¶ 6, 11, 12, 31, 38, 39, 47, 50, 61, 65, 82, 110, 113, 129, and 139. *See Rhone v. Schneider Nat'l Carriers, Inc.*, 2016 WL 1594453, *2-3 (E.D. Mo. 2016) (requiring a plaintiff to provide a "Download Your Information" report from her Facebook account after the defendant discovered relevant information on public portions of her account page). X cannot seriously dispute the relevance of such information.

X's assertion that Mr. Musk is a "third party" and that his public statements are not within X's possession, custody, or control is also baseless. Ex. 1 at 55-56. Mr. Musk is the CEO, Executive Chairman, and Chief Technology Officer of X. His public statements about X, made in his official capacity or on behalf of the company, are within X's control for discovery purposes. X has not denied that it has access to Mr. Musk's tweets and public statements, nor has it identified any technical or legal impediment to collecting and producing these materials from X's own files.

Finally, there is no merit to X's argument that it need not produce this information because "Bright Data does not dispute that it publicly scrapes X's platform, including tweets and posts" and, thus, the information is "accessible to Bright Data." Ex. 9 at 4. Putting aside the irony of X telling Bright Data to use the very system it is suing to shut down to gather Mr. Musk's posts, X's objection is not a valid basis for refusing production.

As an initial matter, Bright Data is not asking X to conduct a public records search of third-party social media platforms, like Facebook. RFP 73 is asking X to search its *own* files and systems. Courts in this District have repeatedly held that the fact information is publicly available does not relieve a party of its obligation to produce responsive documents in its possession,

custody, or control. *See Todd v. Tempur-Sealy Int'l, Inc.*, 2014 U.S. Dist. LEXIS 161037, *5 (N.D. Cal. 2014) (ordering production of "all responsive documents in [defendants'] possession, custody, or exclusive control, regardless of whether they are publicly available"); *Lin v. Solta Med., Inc.*, 2024 WL 858750, *2 (N.D. Cal. 2024) (ordering production of "all responsive social media posts"); *see also McFadden v. City of Bakersfield*, 2025 WL 35933, *3 (E.D. Cal. 2025) ("Plaintiff is wrong in arguing that the mere availability of documents to a requesting party [ – ] because the documents are publicly available – relieves the producing party of its disclosure obligations.").

Nor has X claimed that ***all*** responsive documents are publicly available. Some responsive documents may never have been public, or may no longer be. People take down or modify their tweets all the time, and not every public statement is preserved in perpetuity. X, for example, may have put some information behind a log-in. Or Mr. Musk may have commented or replied to someone else's tweets. X can simply search its systems and central files for this information. Bright Data, in contrast, would have to rely on the vagaries of Google search to try to hunt these statements down, and it could never be confident that it successfully located all of them. And even for the information it can locate, Bright Data will lack the metadata that may be needed to authenticate the documents and establish their admissibility.

For these reasons, Bright Data respectfully requests an order directing X to produce all documents responsive to RFP 73, and that costs of resolving this issue be re-allocated to X.

Dated: June 17, 2025                                     Respectfully submitted,

                                                          */s/ Colin R. Kass*

| | |
|---|---|
| Robert C. Goodman (Bar No. 111554) | Colin R. Kass* |
| Lauren Kramer Sujeeth (Bar No. 259821) | Erica T. Jones* |
| ROGERS JOSEPH O'DONNELL, PC | Timothy E. Burroughs* |
| 311 California Street, 10th Floor | KaDee L. Ru* |
| San Francisco, CA 94104 | PROSKAUER ROSE LLP |
| (415) 956-2828 | 1001 Pennsylvania Ave., N.W. |
| rgoodman@rjo.com | Washington, D.C. 20004 |
| lsujeeth@rjo.com | (202) 416-6890 |
| | ckass@proskauer.com |
| Sehreen Ladak (Bar No. 307895) | ejones@proskauer.com |
| PROSKAUER ROSE LLP | tburroughs@proskauer.com |
| 2029 Century Park East, Suite 2400 | kru@proskauer.com |
| Los Angeles, CA 90067-3010 | |
| (310) 284-5652 | David A. Munkittrick* |
| sladak@proskauer.com | Reut N. Samuels* |
| | Nicole O. Swanson* |
| Adam L. Deming | Michael R. Clifford Beckwith* |
| Genesis Sanchez Tavarez* | Peter C. Angelica* |
| PROSKAUER ROSE LLP | PROSKAUER ROSE LLP |
| One International Place | Eleven Times Square |
| Boston, MA 02110 | New York, New York 10036 |
| (617) 526-9675 | (212) 969-3000 |
| ademing@proskauer.com | dmunkittrick@proskauer.com |
| gsancheztavarez@proskauer.com | rsamuels@proskauer.com |
| | nswanson@proskauer.com |
| | mbeckwith@proskauer.com |
| | pangelica@proskauer.com |

*Attorneys for Defendant Bright Data, Ltd.*
*\*Admitted pro hac vice*

*X Corp. v. Bright Data Ltd., 23-cv-03698 (N.D. Cal.)*
***Bright Data's Letter Motion Seeking Musk's Tweets and Public Statements***

**EXHIBIT APPENDIX**

| *Exhibit* | *Exhibit Title* |
|---|---|
| 1. | X's Response and Objections to Bright Data's Third Set of RFPs |
| 2. | Bright Data's Feb. 10th, 2025 Letter Regarding X's Responses and Objections |
| 3. | X's Mar. 21st, 2025 Response Letter |
| 4. | Bright Data's Apr. 25th, 2025 Letter Regarding Counterclaim Discovery |
| 5. | X's Apr. 29th, 2025 Response Letter |
| 6. | Bright Data's May 9th, 2025 Letter Regarding Outstanding Discovery Issues Discussed at Apr. 30th Meet and Confer |
| 7. | X's May 14th, 2025 Response Letter |
| 8. | Bright Data's June 2nd, 2025 Letter Regarding Outstanding Discovery Issues Discussed at May 16th and May 29th Meet and Confers |
| 9. | X's June 6th, 2025 Response Letter |